GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone 725-777-3000
*[Proposed] Attorneys for Debtor*

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-18-10453-LED |
| U.S.A. DAWGS, INC., | Chapter 11 |
| Debtor. | Date: February 8, 2018<br>Time: 11:00 a.m. |

### SUPPLEMENT TO OMNIBUS DECLARATION OF STEVEN MANN IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION, FIRST DAY MOTIONS, AND EMPLOYMENT APPLICATION

I, Steven Mann, hereby declare as follows:

1. I am over the age of 18 and mentally competent and I make this supplemental declaration in support of U.S.A. Dawgs, Inc.'s ("Debtor") *Emergency Motion For Entry of Interim Approval Order Pursuant to Bankruptcy Rule 4001(b) and LR 4001(b); (1) Preliminarily Determining Extent of Cash Collateral and Authorizing Use of Cash Collateral By Debtor; and (2) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral by Debtor* [ECF No. 6] (the "Cash Collateral Motion") and *Debtor's Emergency Motion for Order: (I) Authorizing Debtor to Pay Wages, Salaries, Benefits, and Other Employee Obligations; and (II) Authorizing and Directing Financial Institutions to Honor and Process*

*Checks and Transfers Related to Such Obligations* [ECF No. 9] (the "Employee Wage Motion," and together with the Cash Collateral Motion, the "Motions").[1]

2. I have reviewed the *United States Trustee's Omnibus Objection to Debtor's First Day Motions [ECF Nos. 6 & 9]* [ECF No. 25].

3. In response to the United States' Trustee's request for additional information regarding the Wage Obligations and Employee Benefit Contributions, attached hereto as **Exhibit "1"** is a true and correct redacted[2] summary of the employees and contractors and their requested pre-petition wages (the "Wage Chart"). The Wage Chart shows the total amounts to be paid to each employee or contractor, as well as the associated tax and payroll obligations.

4. Furthermore, the total amount of Employee Benefits Contributions to be paid is $17,461.88, which is comprised of the employees' health insurance. $8,402.52 of the $17,461.88 is for pre-petition health insurance for the employees. The remaining amount, $9,059.36, is for health insurance coverage that was billed pre-petition, but covers the post-petition period of February 1, 2018 through March 1, 2018. While these amounts are for post-petition health insurance benefits, because the amounts due were invoiced prior to the Petition Date, they are included in the Wage Motion.

5. None of the proposed Wage Obligations payments are being paid to insiders. To be clear, I and the other insiders have not sought payment on our pre-petition wages that are outstanding. As the employee health insurance is a singular plan, employee insiders will also receive the benefit of maintaining the Debtor's employee health insurance plan as insider benefits cannot be separated for purposes of payment of the insurance premiums.

6. I have also reviewed the *Secured Creditor GemCap Lending I, LLC'S Opposition to Emergency Motion for Entry of Interim Approval Order Pursuant to Bankruptcy Rule 4001(b) and*

---

[1] All capitalized, undefined terms shall have the meaning ascribed to them in the applicable Motion.

[2] Debtor will have available at the hearing on the Motions an unredacted version of the Wage Chart for review. However, in order to protect sensitive employee information, the employee names have been redacted in the filed version.

*LR 4001(b); (1) Preliminarily Determining Extent of Cash Collateral and Authorizing Use of Cash Collateral By Debtor; and (2) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral by Debtor; and (3) GemCap's Request for Adequate Protection* [ECF No. 28] (the "GemCap Opposition") and the *Declaration of Richard Ellis in Support of Emergency Motion for Entry of Interim Approval Order Pursuant to Bankruptcy Rule 4001(b) and LR 4001(b); (1) Preliminarily Determining Extent of Cash Collateral and Authorizing Use of Cash Collateral By Debtor; and (2) Scheduling a Final Hearing to Determine Extent of Cash Collateral and Authorizing Use of Cash Collateral by Debtor; and (3) GemCap's Request for Adequate Protection* [ECF No. 30] (the "Ellis Declaration").

7. Although Debtor disputes many statements made in the GemCap Objection and Ellis Declaration, and will address each appropriately in connection with the final cash collateral hearing, Debtor feels it necessary to address certain of the misstatement immediately.

8. First, Lender contends that Debtor has failed to demonstrate an ability to fund the Crocs Litigation and that Debtor's litigation counsel was owed $109,755.65. See GemCap Objection, at p. 16, ll. 7-10. This statement is misleading. Debtor reached agreements with its litigation counsel well in advance of the Petition Date regarding the payment of amounts due, and has remained current on obligations since that agreement. With regard to the $109,755.65 cited by GemCap, Debtor and its litigation counsel have agreed that such amount will be paid upon the earlier of the conclusion of the litigation or upon obtaining additional funding for the litigation.

9. Second, the Budget attached as Exhibit 2 to the Motion is a true and correct copy of the Budget I prepared in connection with Debtor's management and accounting personnel.

10. Lender contends that a thirty percent dilution must be used for sales. See GemCap Objection at p. 16, l. 25- p. 17, l. 10. Lender further contends that the failure to include such dilution rate "renders Debtor's Budget a fiction." Lender ignores that the Budget is a cash budget, reflecting amounts received, for which any dilution has already been taken into account. Stated otherwise, Debtor's Budget reflects the net revenue after taking into consideration costs of goods sold.

11. Third, Lender claims that "Debtor has failed to sell any substantial portion of its inventory in the last two (2) years and has no funds to buy any new inventory." See GemCap Objection at pp. 17, ll. 11-12; Ellis Decl. ¶ 21. Quite to the contrary, Debtor has sold inventory of $3,271,000, which translated into cash sales of over $9,000,000 over the past twelve-months.

12. Fourth, Lender contends that "[s]ince the Default, no payment has been received by GemCap—from either the Guarantors *or* Debtor. See GemCap Objection at pp. 6, l. 8-9. Lender defines the date of Default as December 31, 2017. See id. p. 5, l. 7-8. This statement is directly contrary to GemCap's own records which reflect that GemCap has been paid over $363,000 since January 1, 2018.

13. Fifth, Richard Ellis represents in the Ellis Decl. that "My concern only heightened when I reviewed the new forecast, a ***true and correct cop of which is attached to this Declaration as Exhibit "M."*** See Ellis Decl. ¶ 33 (emphasis added). A true and correct copy of the actual forecast that I provided to Mr. Ellis is attached hereto as Exhibit "2." As can be noted, the document that Mr. Ellis represents as a "true and correct copy" of the forecast has been manipulated and materially altered to omit income, add additional line items, and manufacture a negative balance.

14. Further, since January 23, 2018, between the date that the Lender sent the Notice of Default and the Petition Date (a period of 8 days), based on Lender's own records, Lender has received payments of over $23,589 from Debtor's account receivables.

15. *Despite the automatic stay, since the Petition Date*, based on Lender's own records, Lender has collected over $29,400 of Debtor's funds, which Lender has not turned over to Debtor.

16. Lender contends that all of Debtor's cash and assets are its collateral. Until this is determined, Debtor cannot pay its payroll, its rent, its suppliers, its taxes, or any of its other of its necessary operating costs if the Cash Collateral Motion is not granted.

17. Therefore, if the Cash Collateral Motion is not granted, Debtor will be forced to stop operating. Debtor's employees will quit (several have already refused to work pending payment of the outstanding pre-petition payroll), it will lose its customers, and its on-line service providers

and vendors will terminate their relationships, which several have already threatened if operations do not normalize.

    I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

    DATED this 8th day of February, 2018.

*/s/ Steven Mann*
STEVEN MANN

Garman Turner Gordon LLP
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000