**§ 362 INFORMATION SHEET**

| U.S.A. DAWGS, INC. | BK – 18-10453-LED | |
|---|---|---|
| DEBTOR | BANKRUPTCY # | MOTION # |

| GEMCAP LENDING I, LLC | 11 | |
|---|---|---|
| MOVANT | CHAPTER | |

***Certification of Attempt to Resolve the Matter Without Court Action***

*Moving counsel hereby certifies that pursuant to the requirement of LR 4001(a)(5) , an attempt has Been made to resolve the matter without court action, but movant has been unable to do so.*

Date: February 8, 2018          Signature _Joanne Brown_

Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: TO PROCEED WITH CALIFORNIA LITIGATION, as PER the Motion

NOTICE SERVED ON:

DEBTOR(S)          ☒          DEBTOR(S)' COUNSEL          ☒          TRUSTEE          ☒

DATE OF SERVICE: 2/8/2018

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| THE EXTENT and PRIORTY of LIENS: | THE EXTENT and PRIORTY of LIENS: |
| 1ST N/A | 1ST |
| 2ND N/A | 2ND |
| 3RD N/A | 3RD |
| 4TH N/A | 4TH |
| OTHER   As set forth in Motion, cause is established for Debtor's bad faith | OTHER |
| TOTAL ENCUMBRANCES:          N/A | TOTAL ENCUMBRANCES: |
| APPRAISAL or OPINION as to VALUE: N/A | APPRAISAL or OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER OF "ADEQUATE PROTECTION" for MOVANT:: |
|---|---|
| AMOUNT OF NOTE: N/A | |
| INTEREST RATE: N/A | |
| DURATION: N/A | |
| PAYMENT PER MONTH: N/A | SPECIAL CIRCUMSTANCES: |
| DATE OF DEFAULT: N/A | |
| AMOUNT IN ARREARS: N/A | SUBMITTED BY: |
| DATE OF NOTICE OF DEFAULT: N/A | Signature: |
| SPECIAL CIRCUMSTANCES | |

11933-02/2002702

Ogonna M. Brown, Esq. (NV Bar No. 7589)
Email: obrown@nevadafirm.com
F. Thomas Edwards, Esq. (NV Bar No. 9549)
Email: tedwards@nevadafirm.com
Mary Langsner, Esq. (NV Bar NO. 13707)
Email: mlangsner@nevadafirm.com
HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:    702/791-0308
Facsimile:    702/791-1912
*Attorney for GemCap Lending I, LLC*

E-filed on:  February 8, 2018
Todd M. Lander, Esq. (CA Bar No. 17031)
Email: todd.lander@ffslaw.com
*Pro Hac Pending*
Arash Beral, Esq. (CA Bar No. 245219)
Email: arash.beral@ffslaw.com
*Pro Hac Pending*
FREEMAN, FREEMAN & SMILEY, LLP
1888 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

U.S.A. DAWGS, INC.,

                    Debtor.

Case No.  18-10453-LED
Chapter 11

**MOTION TO DISMISS OR APPOINT A
TRUSTEE FOR BAD FAITH OR, IN THE
ALTERNATIVE, MOTION FOR RELIEF
FROM THE AUTOMATIC STAY OR
FOR ABSTENTION**

Date of Hearing: *Shortened Time Requested*
Time of Hearing: *Shortened Time Requested*
Place:  Foley Federal Building
           300 Las Vegas Blvd. S.
           Las Vegas, NV 89101

GemCap Lending I, LLC ("GemCap"), by and through its undersigned counsel, hereby

files its Motion to Dismiss or Appoint a Trustee For Bad Faith or, In the Alternative, Motion For

Relief From the Automatic Stay Or For Abstention ("Motion"), pursuant to 11 U.S.C. §§ 1112,

362, and 305 of the Bankruptcy Code.[1]  Through the Motion, GemCap seeks dismissal of the

chapter 11 bankruptcy case of Debtor U.S.A. Dawgs, Inc. ("Debtor") or appointment of a chapter

11 trustee or examiner; or, in the alternative, that GemCap be afforded relief from the automatic

stay to pursue the pending California Litigation or that this Court abstain until resolution of the

California Litigation.

---

[1] 11 U.S.C. §§ 101 – 1532.

11933-02/2002033.docx

This Motion is supported by the Declaration of Richard Ellis (ECF No. 30)[2] (the "Ellis Decl.")[3], on file separately in this Case pursuant to Rule 9014(c) of the Local Rule of Bankruptcy Practice of the United States District Court for the District of Nevada[4]. This Motion is also supported by the Declaration of Ogonna M. Brown (ECF No. 31) ("Brown Declaration"); the papers and pleadings on file in this Case[5]; the GemCap Lending I, LLC's Request for Judicial Notice filed separately and concurrently herewith ("Request for Judicial Notice"); and any oral argument the Court entertains at hearing on this Motion.

Dated this _____ day of _____, 2018.

HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON

Ogonna M. Brown, Esq. (NV Bar No. 7589)
F. Thomas Edwards, Esq. (NV Bar No. 9549)
Mary Langsner, Esq. (NV Bar No. 13707)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
*Attorneys for GemCap*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. §§ 157(a) and (b)(1), and LR 1001(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O) and is a contested matter under Rule 9014 of the Federal Rules of Bankruptcy Procedure. Venue in the District of Nevada is appropriate pursuant to 28 U.S.C. § 1408.

---

[2] All references to "ECF No." are to the numbers assigned to the documents filed in the bankruptcy case identified in the caption above ("Case"), as they appear on the docket ("Docket") maintained by the Clerk of the Court of the United States Bankruptcy Court for the District of Nevada.

[3] Richard Ellis is the co-President of GemCap.

[4] Hereafter, "LR".

[5] Judicial notice of which GemCap respectfully requests this Court take, pursuant to FED. R. EVID. 201(b) and (c)(2), and FED. R. EVID. 1101(a) and (b).

11933-02/2002033.docx

## II.    **INTRODUCTION**

Section 1112(b) of the Bankruptcy Code provides that a debtor's bankruptcy case shall be dismissed or converted to a case under chapter 7, or the Court shall appoint a chapter 11 trustee or examiner, for cause, unless Debtor can demonstrate, on the record, an exception to the statutory mandate of 11 U.S.C. § 1112(b)—which, as set forth herein, Debtor in this Case is not able to do.

GemCap respectfully requests that the Court dismiss Debtor's bankruptcy case pursuant to 11 U.S.C. § 1112 for the following reasons:  (1)  the Debtor's bankruptcy filing is nothing more than a two-party dispute that was commenced immediately after mediation failed and after GemCap refused to subordinate its first position properly perfected security in the Collateral for Debtor to collateralize its Crocs Litigation fund  in bad faith to avoid a pre-judgment writ of attachment in the California Litigation; (2) Debtor committed gross mismanagement of the Debtor's assets, in that Debtor diverted significant cash funds away from GemCap and went so far as to open a new bank account in the last few weeks, behind GemCap's back, to further divert and mis-manage funds which are GemCap's Cash Collateral, and Debtor is now trying to hide in the bankruptcy process to continue its blatant disregard for Debtor's Cash Collateral; (3) Debtor submitted a budget to GemCap ten days ago reflecting negative projections, which wholly contradicts Debtor's "new" cash positive projections submitted to the Bankruptcy Court reflecting a wildly successful business operation, new projections which are unsupported by the historical projections Debtor submitted only a short time ago; and (4) Debtor has no reasonable likelihood of reorganizing within a reasonable time based upon Debtor's projection, warranting dismissal of the bad faith filing.

In the alternative, in the event this Court does not dismiss the bankruptcy case, GemCap requests relief from the automatic stay under 11 U.S.C. § 362 based upon Debtor's bad faith filing to allow GemCap to proceed with the litigation pending in California relating to the Debtor and its guarantors. Last, in the alternative, GemCap requests that the Court abstain from holding further proceedings in this case under 11 U.S.C. § 305, as the interests of creditors and of the estate would be best served by the timely prosecution of the pending California Litigation, which determines

- 3 -

11933-02/2002033.docx

the extent, if any, of Debtor's property, including cash, is not subject to GemCap's first priority security interest.

Based upon the record currently before the Court, GemCap respectfully requests its Motion should be granted and Debtor's bankruptcy Case dismissed; however in the instance the Court does not find cause under 11 U.S.C. § 1112(b) or finds that Debtor has met its burden of demonstrating one of the statutory exceptions to Section 1112(b) relief, GemCap respectfully requests it be afforded relief from the automatic stay to proceed with the California Litigation, or that this Court abstain Debtor's bankruptcy Case until a determination of rights is had by the Court in the California Litigation.

### III.    PROCEDURAL HISTORY

1.    On January 31, 2018 (the "Petition Date"), Debtor filed for Chapter 11 relief and filed a bare-bones Petition. *See* ECF No. 1.

2.    Debtor is delinquent on its attorneys' fees in connection with the Crocs Litigation,[6] and as of the Petition Date, Debtor owes the Hellmich Law Group $109,755.65 in connection with its representation of Debtor in the Crocs Litigation. *See* Petition, ECF No. 1 at p. 8 of 19.

3.    Initially, Debtor did not list GemCap in the verified creditor matrix appended to Debtor's Petition. *See* Petition, ECF No. 1 at pp. 11-18 of 19.

4.    As of the Petition Date, the Debtor owes FedEx $300,029.62 [ECF No. 1, p. 7 of 19].

5.    As of the Petition Date, Debtor is delinquent on it lease in the amount of $216,604.87 [ECF No. 1, p. 7 of 19].

6.    As of the Petition Date, Debtor is delinquent in payroll taxes in the amount $18,605.36 [ECF No. 1, p. 9 of 19].

7.    As of the Petition Date, Debtor owes the IRS $446,662.63 [ECF No. 1, p. 7 of 19].

---

[6] D. Nev. Case No. 2:17-cv-02054-JCM-NJK and D. Colo. Case No. 1:06-cv-00605-PAB-KMT (lead, consolidated with 16-cv-02004-PAB-KMT) (collectively, the "Crocs Litigation"). *See* ECF No. 1 p. 8 of 19 (identifying among Debtor's 20 largest unsecured non-insider claims Hellmich Law Group P.C. in the amount of $109,755.65. Pursuant to FED. R. EVID. 201(b) and (c)(2), and FED. R. EVID. 1101(a) and (b), the Court may take judicial notice of this fact.

11933-02/2002033.docx

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

8.      Debtor's Schedules and Statements have not been filed as of the date of this Motion. *See generally* Case Docket.[7]

9.      On February 1, 2018, the day after the Petition Date, Debtor filed the Motion for Use of Cash Collateral seeking authority to use and determine the rights attendant to GemCap's Collateral [ECF No. 10].

10.     On February 6, 2018, the United States Trustee for Region 17 filed an Objection to the Motion for Use of Cash Collateral [ECF No. 25].

11.     On February 7, 2018, GemCap filed an Objection to the Motion for Use of Cash Collateral [ECF No. 28], with supporting declarations [ECF Nos. 30-31].

12.     On February 7, 2018, Pacifica Blue Diamond V, LLC as successor in interest of Blue Diamond Business Center Building 5 LLC, the Debtor's landlord, filed a Joinder to the Debtor's Motion for Use of Cash Collateral [ECF No. 29].

13.     On February 7, 2018, GemCap filed a Joinder to the Office of the US Trustee's Objection [ECF No. 38].

## IV.    STATEMENT OF RELEVANT FACTS

1.      On October 24, 2012, GemCap and Debtor entered into a Loan and Security Agreement, Promissory Note, and a Loan Agreement Schedule (among other agreements), which were subsequently amended eight (8) times over the next five years.[8]

2.      Concurrent with the Loan Documents, Barrie Mann and Debtor's President Steven Mann (collectively, the "Guarantors") executed Continuing Guarantees (the "Guarantees"),

---

[7] Pursuant to FED. R. EVID. 201(b) and (c)(2), and FED. R. EVID. 1101(a) and (b), the Court may take judicial notice of this fact.

[8] A true and correct copy of the Loan and Security Agreement with all eight amendments is attached as Ex. A to Ellis Decl., ECF No. 30-1. A true and correct copy of the Promissory Note with all seven of its amendments is attached as Ex. B to Ellis Decl., ECF No. 30-2 pp. 1-49 of 75. A true and correct copy of the Loan Agreement Schedule (the "Schedule") is attached as Ex. C to Ellis Decl., ECF No. 30-2 pp. 50-60 of 75. (Exs. A, B, and C to Ellis Decl. are collectively the "Loan Documents"). For a standalone copy of Amendment No. 8 to the Loan and Security Agreement, *see* ECF No. 30-2 pp. 61-69 of 75.

11933-02/2002033.docx

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

pursuant to which they were personally and individually responsible for all of Debtor's "Indebtedness" (including all debts, duties, obligations, and liabilities).[9]

3.    Section 5.1 of the Loan and Security Agreement describes the collateral security for the payment and performance of obligations thereunder (collectively, the "Collateral"). *See* ECF No. 30-1 at pp. 18-20 of 136.

4.    GemCap received, as a condition to the loan, a first priority security interest in all of Debtor's assets (*i.e.*, "Collateral" as that term is defined in Section 5.1 of the Loan and Security Agreement), and GemCap perfected that security interest by filing UCC Financing Statements in Nevada.[10]

5.    Under the construct of the Loan Documents, as evolved over time, GemCap agreed to provide a revolving credit facility to Debtor which, at its highest point, equaled the maximum principal amount of $7,500,000.00. GemCap later agreed, at Debtor's request, to reduce that maximum to $5,500,000.00 in light of a continuing decrease in Debtor's funding eligibility. *See* Ellis Decl.

6.    Since October 24, 2012, GemCap has continuously loaned funds to Debtor; the total amount of advances to Debtor over the life of the debt facility is approximately $50,000,000.00, although the loan balance itself never rose above $7.5 million at any one time. *See* Ellis Decl.

7.    Section 1(c)(v) of the Schedule prescribed the specific manner in which Debtor could request funding and required the submission of a borrowing base certificate substantiating each request and demonstrating Debtor's entitlement to the amount sought (the "Borrowing Base Certificates"). *See* Ex. C to Ellis Decl., ECF No. 30-2 at pp. 50-60 of 75; *see also* Ellis Decl. at ¶¶ 13-17.

---

[9] The Guarantees and the eight reaffirmations thereto are attached as Ex. F to Ellis Decl., ECF Nos. 30-3 and 30-4.

[10] A true and correct copy of GemCap's UCC-1 Financing Statements are attached as Exhibit E to Ellis Decl., ECF No. 30-2 at pp. 70-75 of 75.

11933-02/2002033.docx

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

8.    Beyond the Borrowing Base Certificates, the Schedule requires that remittances from Account Debtors and all other proceeds of Accounts and other Collateral "shall be directed to Lender and deposited in an account at a financial institution selected by Lender (the "Collection Account"). Borrower shall cause all Collections with respect to all Accounts to be sent directly to Lender's address . . . Any collections or other Collateral proceeds received by Borrower from any source whatsoever shall be held in trust for the benefit of Lender and immediately remitted to Lender in kind." *See* Schedule, Ex. C to Ellis Decl.1(c)(vi); *see also* Ellis Decl.17.

9.    GemCap is an asset-based lender advancing against collateral alone and thus bears higher risk than larger regulated lenders and must charge higher interest rates to sustain its business model. Notwithstanding this, from the time of execution of the Loan and Security Agreement GemCap repeatedly made efforts to assist Debtor in response to its several requests for accommodation. *See* Ellis Decl.

10.    By way of example of such accommodations, GemCap agreed to increase the maximum available principal of the loan from $2 million to $2.5 million based on Debtor's representations regarding seasonal line increase; later agreed to another substantial increase to $3 million; and eventually acquiesced to Debtor's further request that GemCap reduce the prevailing interest rate on the loan, from 17% to 13%. *See* Ellis Decl.; *see also* ECF No. 30-1 at Amendment Nos. 1, 2, and 3 to Loan and Security Agreement.

11.    As a result, ***Debtor received among the lowest interest rates GemCap has ever provided in more than a decade in business***. *See* Ellis Decl.

12.    On August 17, 2017, Debtor induced GemCap to furnish a $240,000.00 protective over-advance to enable Debtor to pay its outstanding payroll taxes (the "Over-advance"), which was to be repaid by Debtor on or before December 31, 2017. *See, e.g.*, Ex. D to Ellis Decl., ECF No. 30-2 pp. 61-69 of 75.

13.    Only recently has GemCap learned Debtor had ***grossly understated*** the delinquent payroll tax liabilities, as GemCap has recently learned that, from third quarter 2016 to third quarter 2017, Debtor's delinquent taxes and penalties totaled $501,809.00—much more than the Over-advance. *See* Ellis Decl.

- 7 -

14.    According to Debtor's bankruptcy schedules, Debtor still owes $446,662.63 to the IRS. *See* ECF No. 1 p. 7 of 19. Given the amount of Debtor's current outstanding IRS debt, *id.*, whether Debtor used the Over-advance to pay down tax debt is in serious doubt.

15.    The Over-advance was not repaid; Debtor defaulted on the Over-advance and interest payment obligations (collectively, "Default"). *See* Ellis Decl.

16.    As a result of Default—and compounded by the discovery of Debtor's malfeasance to induce GemCap to extend the Over-advance—GemCap issued a Notice of Default on January 23, 2018, accelerating and demanding Debtor make payment of the total amount of the then-outstanding indebtedness[11] of $3,895,104.83, plus interest, costs, and expenses including attorney fees (the "Notice of Default"). *See* Ex. L to Ellis Decl., ECF No. 30-5 pp. 11-18 of 48.

17.    Concurrent with the Notice of Default, GemCap made demand upon each of the Guarantors. *Id.* Both the Notice of Default and the demands to Guarantors required payment be made to GemCap on or before 5:00 p.m. Eastern Standard Time on **January 26, 2018** (the "Cure Deadline"). *Id.*

18.    To date, neither Debtor nor the Guarantors has issued payment to GemCap or cured Default. *See* Ellis Decl.

19.    Rather, Debtor's President Steven Mann ("Mr. Mann") hired counsel, ceased communication with GemCap, *refused GemCap access to Debtor's premises*, and instructed GemCap to engage in communication only with Debtor's counsel. *See* Ex. N to Ellis Decl., ECF No. 30-5 pp. 21-23 of 48.

20.    To date Debtor has refused GemCap's demands for an accounting and for information relating to the PayPal transfers. *See* Ellis Decl.

21.    GemCap has recently learned that Debtor (and those complicit with it) have been and are actively and deliberately diverting funds away from GemCap's Collection Account and instead funneling funds to themselves through the third party online payment system PayPal (the "Paypal Transfers"). *See* Ellis Decl.

---

[11] "Indebtedness" is a defined term in Paragraph 2(a) of each of the Guarantees. *See, e.g.*, Ex. F to Ellis Decl., ECF No. 30-3 at p. 2 of 23 and ECF No. 30-4 at p. 1 of 25.

- 8 -

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

22.    GemCap has since learned Debtor is violating the Loan Documents by diverting GemCap's collateral *without GemCap's consent* as follows: failing to direct all sales income to GemCap's Collection Account (the Paypal Transfers), and habitually not forwarding payments to GemCap that were received into Debtor's bank account. *See* Ellis Decl.; *see also* Ellis Decl. at Section VII, ECF No. 30 at pp. 18-23 of 30; *see also* Exs. P and Q to Ellis Decl., ECF No. 30-5 pp. 29-33 of 48.

23.    On January 29, 2018, GemCap and Debtor, and their respective counsel, met and conferred in an informal mediation at the Las Vegas office of undersigned counsel in an attempt to reach resolution, but no resolution was reached. *See* Ellis Decl.

24.    Thereafter, GemCap commenced litigation against Debtor in California on January 31, 2018, out of significant and escalating concerns regarding breach of the Loan Documents, Debtor's mistreatment of GemCap's Cash Collateral, and other serious financial malfeasances. The California State Court litigation involves (i) action against Debtor and the Guarantors for Debtor's bad acts and the Guarantors' fraud; (ii) action against Guarantor Mr. Mann; (iii) action against Guarantor Barrie Mann (collectively, the "California Litigation"[12]). *See* Request for Judicial Notice filed concurrently and separately herewith.

25.    GemCap was in the process of procuring prejudgment writs of attachment in the California Litigation. *See* Request for Judicial Notice filed concurrently and separately herewith.

26.    On *that very same day*, January 31, 2018 (the "Petition Date"), Debtor commenced this chapter 11 bankruptcy Case with the filing of a skeletal petition. *See* ECF No. 1.

27.    GemCap was not listed in the verified creditor matrix appended to Debtor's Petition. *Id.* at pp. 11-18 of 19.

28.    After GemCap's counsel entered appearance in the Case, ECF No. 4, an amended verified creditor matrix was then filed which included GemCap, ECF No. 5.

---

[12] C.D. Cal. Case No. 2:18-cv-00797-PSG-RAO; C.D. Cal. Case No. 2:18-cv-00798-CAS-GJS; and C.D. Cal. Case No. 2:18-cv-00799-GW-MRW (collectively, the California Litigation, as defined herein).

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

- 9 -

11933-02/2002033.docx

29.    Debtor's Schedules and Statements have not been filed as of the filing of this Motion. *See generally* Case Docket.[13]

30.    Between January 22, 2018, and the Petition Date Debtor **paid $19,801.97 for legal services to its bankruptcy counsel**. *See* Declaration of Talitha Gray Kozlowski ("Kozlowski Decl."), ECF No. 17[14]; *see also* Brown Declaration (indicating different information concerning the source of Debtor's initial $20,000.00 retainer to bankruptcy counsel has been conveyed).

31.    As of the Petition Date Debtor owes UPS $128,755.62. *See* ECF No. 1 p. 8 of 19.

32.    As of the Petition Date, Debtor owes FedEx $300,029.62 (ECF No. 1, p. 7 of 19); is delinquent on its lease in the amount of $216,604.87 (*id.*), which must be cured if assumed; owes the IRS $446,662.63 (*id.*); and is delinquent in payroll taxes in the amount $18,605.36 (*id.* at p. 9 of 19).

## V.    ARGUMENT

### A.    Legal Standard for Dismissal.

Section 1112(b)(1) provides in pertinent part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

However, if, under 11 U.S.C. § 1112(b)(2), the Court finds an identifies "unusual circumstances" and Debtor, or another party in interest, establishes the elements of 11 U.S.C. §§ 1112(b)(1)(A) and (B) have been met, the bankruptcy court "may not" convert or dismiss a debtor's bankruptcy case. As established herein, GemCap will demonstrate that "cause" sufficient to convert or dismiss Debtor's bankruptcy Case is established, and no "unusual circumstances" are present on this record to otherwise rescue Debtor's Case from conversion, dismissal, or

---

[13] Pursuant to FED. R. EVID. 201(b) and (c)(2), and FED. R. EVID. 1101(a) and (b), the Court may take judicial notice of this fact.

[14] Kozlowski Decl. at p. 2 of 5, ¶ 4 ("GTG has represented Debtor in connection with its Chapter 11 Case since on or about January 22, 2018."); *id.* at p. 4 of 5, ¶ 11 ("Prior to the Petition Date, Debtor paid GTG the sum of $19,801.97 for legal services rendered in connection with its restructuring.").

11933-02/2002033.docx

1    appointment of a trustee or examiner—whichever fate this Court determines is in the best interests

2    of Debtor's creditors and of the estate.

**B.**    **Cause Is Present On This Record Based on Debtor's Unauthorized Use of Cash Collateral.**

This Court has broad discretion to determine what constitutes "cause" for dismissal under Section 1112(b)(1) of the Bankruptcy Code. *See Sanders v. U.S. Trustee (In re Sanders)*, 2013 WL 1490971, *6 (B.A.P. 9th Cir. Apr. 11, 2013). Section 1112(b)(4)(D) of the Bankruptcy Code provides that cause for conversion or dismissal of a debtor's bankruptcy case occurs when there is unauthorized use of cash collateral substantially harmful to 1 or more creditor. 11 U.S.C. § 1112(b)(4)(D) reads:

> (4) For purposes of this subsection, the term "cause" includes— . . .
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors[.]

As set forth in the Ellis Decl. and Exhibits A through F thereto,[15] GemCap is Debtor's secured creditor. As set forth herein, Debtor has been not paying and is not currently paying GemCap has engaged in (i) intentionally diverting cash away from GemCap, (ii) contacting account debtors and instructing them to redirect cash to Debtor, (iii) opening a new bank account and receiving funds into that account which are not being directed to GemCap, and (iv) violating an immediately prepetition standstill agreement with GemCap where Debtor agreed to halt diverting funds and Collateral.

**a.    Debtor Intentionally Diverting Cash Away From GemCap.**

Prepetition, Debtor intentionally diverted cash away from GemCap in contravention of the Loan Documents and has failed to account for or provide an accounting of same[16]; to GemCap's knowledge and understanding ***none of this has been cured or halted, and indeed continues to date***. *See* Ellis Decl.

Under the Loan and Security Agreement, Debtor was required to direct all sales income to GemCap's Collection Account in order to protect GemCap's Cash Collateral. However, GemCap

---

[15] *See* ECF Nos. 30 and 30-1 through 30-4.

[16] *See* Ellis Decl.

- 11 -

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

discovered evidence that Debtor was and is actively and deliberately diverting funds away from GemCap's Collection Account via the PayPal Transfers. *See* Ellis Decl. This intentional diversion transpired certainly without GemCap's knowledge or consent and is a breach of the Loan Documents. GemCap has also recently learned Debtor is violating the Loan Documents by diverting GemCap's collateral without GemCap's consent by habitually not forwarding payments to GemCap that were received into Debtor's bank account. *See* Ellis Decl. at Section VII, ECF No. 30 at pp. 18-23 of 30; *see also* Exs. P and Q to Ellis Decl., ECF No. 30-5 pp. 29-33 of 48. GemCap's demands for an accounting of and information related to these wrongful transfers have not been met. *See* Ellis Decl.

> **b. Prepetition Debtor Contacted Account Debtors and Instructed to Redirect Cash to Debtor; GemCap Is Unaware That This Has Discontinued Postpetition.**

Concerned about Debtor's diversion of funds and Collateral, on or about January 24 and 25, 2018, GemCap executed its rights under the Loan Documents and California Commercial Code § 9-607 and sent notices to certain of Debtor's account debtors to direct all sums (payable by those account debtors to Debtor) directly to GemCap instead. Ellis Decl. ¶ 37. Clearly and irrefutably demonstrating Debtor's wrongdoing, one such account debtor contacted GemCap's counsel January 25, 2018, indicating Debtor had directed it just the day before to ***stop paying GemCap and direct all payments to Debtor itself***. Ellis Decl. ¶¶ 37-38.

> **c. Debtor Has Opened a New Bank Account and Receives Funds Into That Account Which Are Not Being Directed to GemCap.**

GemCap recently discovered that, on or about January 23, 2018, Debtor opened a new bank account at Nevada State Bank ***without a GemCap Collection Account*** and ***is receiving funds to that account that are not being directed to GemCap***.[17] Specifically, the opening of this Nevada State Bank account is a clear violation of the Loan Documents and constitutes, from GemCap's perspective, an intentional diversion of Collateral because cash is Collateral under GemCap's Loan Documents. Lastly, but not least, GemCap's continuing review of the account records

---

[17] *See* Ellis Decl. at ¶¶ 39-40; *see also* Ex. P to Ellis Decl. ECF No. 30-5 pp. 29-30 of 48.

demonstrates that, in recent days, Debtor has continued to receive funds from the sale of inventory *but has directed those funds to itself and not to the GemCap Collection Account* as required under the Loan Documents. *See* Ellis Decl; *see, e.g.* Ex. P to Ellis Decl., ECF No. 30-5 pp. 29-30 of 48.

### d. Debtor Violated an Immediately Prepetition Standstill Agreement With GemCap Where It Agreed to Halt Diverting Funds and Collateral.

The most recent and further diversion of Gem Cap's Collateral is particularly egregious because Debtor and GemCap entered into a temporary "standstill agreement" on Friday, January 26, 2018, by which neither GemCap nor Debtor or its related companies would file litigation and Debtor *would neither divert funds or collateral*, including proceeds from sales, in contravention of the Loan Documents. *See* Ellis Decl. at ¶ 40. That standstill, which was set to expire on January 30, 2018 at 12:00 noon, was extended by written agreement to January 31, 2018, on the same terms. *Id.* These records demonstrate that Debtor has breached even that limited standstill.

### e. Cause is Established under 11 U.S.C. § 1112(b)(4)(D).

This record establishes that 11 U.S.C. § 1112(b)(1) "cause" for conversion or dismissal of Debtor's bankruptcy Case has been established pursuant to 11 U.S.C. § 1112(b)(4)(D) for Debtor's unauthorized use of cash collateral. As demonstrated by this record, Debtor has been not paying and is not currently paying GemCap has engaged in (i) intentionally diverting cash away from GemCap, (ii) contacting account debtors and instructing them to redirect cash to Debtor, (iii) opening a new bank account and receiving funds into that account which are not being directed to GemCap, and (iv) violating an immediately prepetition standstill agreement with GemCap where Debtor agreed to halt diverting funds and Collateral. GemCap therefore respectfully requests this Court dismiss Debtor's bankruptcy Case.

### C.  Cause is Established by Debtor's Bad Faith Bankruptcy Filing.

GemCap also moves to dismiss the Debtor's bankruptcy case for bad faith pursuant to 11 U.S.C. § 1112(b). "A challenge to the validity of a bankruptcy petition is normally brought before the court in the form of a Motion to Dismiss or to Vacate Order for Relief." *See In re Haw. Times*

- 13 -

*Ltd.*, 53 B.R. 560, 561 (Bankr. D. Haw. 1985). Section 1112(b) of the Bankruptcy Code allows

the court to dismiss a bankruptcy case for cause, and provides in pertinent part:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, **the court shall** convert a case under this chapter to a case under chapter 7 or **dismiss a case** under this chapter, whichever is in the best interests of creditors and the estate, **if the movant establishes cause**.

See 11 U.S.C. § 1112(b)(1).

Section 1112(b)(4) provides a nonexclusive list of sixteen circumstances constituting

"cause," including gross mismanagement of the bankruptcy estate. *See* 11 U.S.C. § 1112(b)(4)(B).

Although not specifically identified in 11 U.S.C. § 1112(b)(4), cause for dismissal has been found

when there was a lack of good faith in filing the petition. *See Marsch v. Marsch (In re Marsch)*,

36 F.3d 825, 828 (9th Cir. 1994). Dismissal is also appropriate in instances where the bankruptcy

petition was filed without proper authority. *See Price v. Gurney*, 324 U.S. 100, 106, 65 S. Ct. 513,

516, 89 L. Ed. 776 (1945).

Generally, the movant bears the burden of establishing by a preponderance of the evidence

that cause exists to dismiss a chapter 11 case, and upon the requisite showing of cause, the burden

shifts to the opposing party. *Labankoff v. U.S. Trustee (In re Labankoff)*, BAP No. NC-09-1300-

PaJuKw, 2010 WL 6259969, at *3 (B.A.P. 9th Cir. June 14, 2010),[18] *see also In re Mense*, 509

B.R. 269, 277 (Bankr. C.D. Cal. 2014) (citing *In re Avalon Hotel Partners, LLC*, 302 B.R. 377,

384 (Bankr. D. Or. 2003)). However, the debtor bears the burden of proving that the petition was

filed in good faith once genuine issues are presented by the movant, and that the debtor had

authority to file the petition in the first instance. *See Oasis at Wild Horse Ranch, LLC v. Sholes*

*(In re Oasis at Wild Horse Ranch, LLC)*, 2011 WL 4502102, at *9 (B.A.P. 9th Cir. Aug. 26, 2011)

---

[18] This and other unpublished cases referred to in this Motion are not precedential, however, pursuant to 9th Cir. R. 36-3(b) and FED. R. APP. P. 32.1(a), are cited for the persuasive value they may have.

- 14 -

11933-02/2002033.docx

1  (citing *In re Real Homes, LLC*, 352 B.R. 221, 227-28 (Bankr. D. Idaho 2005)); *see also Marshall*

2  *v. Marshall (In re Marshall)*, 721 F.3d 1032, 1048 (9th Cir. 2013).

3        **a.  Filing a Bankruptcy Petition in Bad Faith to Unreasonably Delay Resolution of a Two-Party Dispute Constitutes Cause for Dismissal**

4           **Under 11 U.S.C. § 1112(b)(1)**

5        Although section 1112(b) does not explicitly require that cases be filed in "good faith,"

6  courts overwhelmingly hold that a lack of good faith in filing a Chapter 11 petition is cause for

7  dismissal.  *See Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (citations

8  omitted).  Good faith does not refer to the debtor's subjective intent.  Rather, the good faith filing

9  requirement encompasses distinct equitable limitations to deter filings that seek to achieve

10  objectives outside the legitimate scope of the bankruptcy laws:

11        Pursuant to 11 U.S.C. § 1112(b), courts have dismissed cases filed
         for a variety of tactical reasons unrelated to reorganization. While

12        the case law refers to these dismissals as dismissals for "bad faith"
         filing, it is probably more accurate in light of the precise language

13        of section 1112(b) to call them dismissals "for cause."

14  *See In re Marsch*, 36 F.3d at 828.

15        Findings of a lack of good faith have been predicated upon certain reoccurring but non-

16  exclusive patterns, and they are based upon a conglomerate of factors rather than on any single

17  datum. *See Can-Alta Props., Ltd. v. State Sav. Mortg. Co.*, 87 B.R. 89, 91 (B.A.P. 9th Cir. 1988);

18  *see also In re Marsch*, 36 F.3d at 828 (stating that the existence of good faith depends on an

19  amalgam of factors and not upon a specific fact). Dismissals based upon bad faith are intended to

20  protect the inherent jurisdiction of courts from abuses of the legal system. *See In re Stober*, 193

21  B.R. 5, 11 (Bankr. D. Ariz. 1996).

22        Courts have weighed a variety of circumstantial factors to determine whether a debtor has

23  filed a petition in bad faith that warrants dismissal of a Chapter 11 petition for cause including

24  whether:

25      (1)    the debtor has only one asset;
       (2)    the debtor has an ongoing business to reorganize;

26      (3)    there are any unsecured creditors;
       (4)    the debtor has any cash flow or sources of income to sustain

27          a plan of reorganization or to make adequate protection
           payments; and

28

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

HDW

11933-02/2002033.docx

(5)     the case is essentially a two party dispute capable of prompt adjudication in state court.

*See St. Paul Self Storage Ltd. P'ship v. Port Authority of St. Paul (In re St. Paul Self Storage Ltd. P'ship)*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995) (citing *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 171 (B.A.P. 9th Cir. 1988), *Trident Ass'n. Ltd. P'ship v. Metro. Life Ins. Co. (In re Trident Ass'n Ltd.)*, 52 F.3d 127, 131 (6th Cir. 1995), *and Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir. 1988)).

Other persuasive circumstances to consider in determining whether a chapter 11 petition was filed with the intention of abusing the judicial process and the purposes of reorganization include "the timing of the filing of the petition; whether the debtor is 'financially distressed,'; whether the petition was filed strictly to circumvent pending litigation; and whether the petition was filed solely to reject an unprofitable contract." *Barclays-Am./Bus. Credit Inc. v. Radio WBHP, Inc. (In re Dixie Broad., Inc.)*, 871 F.2d 1023, 1027 (11th Cir. 1989).

Numerous bankruptcy courts recognize that two-party disputes in state or federal district courts should be resolved through the normal litigation process in those forums, and that it is bad faith to file bankruptcy instead of continuing with the normal litigation process in the nonbankruptcy forums. *See In re Silberkraus*, 253 B.R. 890, 906 (Bankr. C.D. Cal. 2000). In the two-party dispute context, where a debtor is unreasonably deterring or harassing creditors, rather than attempting a speedy and feasible reorganization, the court may conclude that the petition has been filed in bad faith and dismiss the case. *See In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. at 583 (citing *In re Marsch*, 36 F.3d at 828).

In *In re St. Paul*, the Bankruptcy Appellate Panel affirmed the bankruptcy court's finding of a bad faith filing when the debtor's purpose in filing its petition was not to effectuate a reorganization of its business, but to "remove a two-party dispute to bankruptcy court to delay and frustrate a creditor." *See In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. at 584. The filing of the petition one day before a hearing on a motion to compel the debtor's general partner to appear and after losses in the state court litigation strongly suggested to the Panel that the debtor intended to use the Bankruptcy Code as a means to escape to a forum that it perceived to be friendlier. Id. at

- 16 -

582, 583-84 (citing *In re Marsch*, 36 F.3d at 829 (holding that filing a petition to delay collection of a judgment the debtor could afford to pay was in bad faith); *In re Van Owen Car Wash, Inc.*, 82 B.R. 671, 673 (Bankr. C.D. Cal. 1988) (holding that a chapter 11 petition in a case involving a two-party lawsuit was not filed in good faith); *Donuts of Seekonk, Inc. v. Panagakos (In re Donuts of Seekonk, Inc.)*, 122 B.R. 172, 173 (Bankr. D.R.I. 1990) (dismissing debtor's bankruptcy because it appeared to be nothing more than an attempt to resurrect prior unsuccessful litigation in another forum); *In re Wally Findlay Galleries (N.Y.), Inc.*, 36 B.R. 849 (Bankr. S.D.N.Y. 1984) (finding it evident that the debtor sought not to reorganize, but to relitigate, where debtor was unable to propose a meaningful plan of reorganization until its state court litigation was resolved)).

In addition, the debtor in *St. Paul* had not conducted business for years and the debtor's schedules and statements reflected that its only significant asset was a claim against the opposing party, which was set to be tried in state court soon after the bankruptcy petition was filed, and that it lacked creditors, other than the opposing party in the state court litigation, insiders and its own professionals. 185 B.R. at 583. These facts were indicia that protection under the Bankruptcy Code was not necessary to a serious and legitimate reorganization. *Id.* at 582-83. The bankruptcy court also noted that given the facts of the case, it did not appear that the bankruptcy court's supervision of the debtor's liquidation was necessary. *Id.* Prior to the bankruptcy, the debtor was being pursued by no creditors other than the opponent, and its assets had already been seized. Id. The court found that to the extent other tangible assets remain to be liquidated, there is no impediment to liquidation outside of bankruptcy. *Id.* These facts were sufficient to establish cause for dismissal under section 1112(b).

The Panel focused on the two-party dispute as the basis of dismissal for bad faith under section 1112(b), finding as follows:

> The filing of the bankruptcy petition has delayed, not hastened, completion of the litigation. This tactic belies the stated intention of Debtor's proposed plan to promptly pursue its claims against [the opposing party] for the benefit of its creditors. Debtor was poised to do just this in state court yet sought the unneeded refuge of the bankruptcy court. The circumstances support [the opposing party]'s contention on appeal that the sole purpose of the bankruptcy was to delay the day of reckoning on [the opposing party]'s counterclaim against Debtor and its general partner . . . .

1    *See In re St. Paul Self Storage Ltd. Partnership*, 185 B.R. at 583-84.

2         Another bankruptcy court dismissed a chapter 11 case for bad faith when it was filed after

3    a state court had appointed a receiver for the debtor. *In re Ofty Corp.*, 44 B.R. 479, 482 (Bankr.

4    D. Del. 1984). The receiver had been appointed to liquidate the debtor because two out of three

5    of the shareholders, acting as majority directors and sole officers of the corporation, had breached

6    their fiduciary duties to the minority shareholder and the corporation, wasted corporate assets,

7    mismanaged the corporation, and engaged in wrongdoing. *Id.* at 481, 483. Moreover, when the

8    case was filed, the debtor's schedules and statements reflected that its assets greatly exceeded its

9    liabilities, that most of its creditors were not outsiders, and that the sole purpose of the filing was

10   to circumvent the effect of the state court order resolving the shareholders' longstanding dispute.

11   *Id.* at 483.

12         Finally, in *Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch,*

13   *LLC)*, the Bankruptcy Appellate Panel of the Ninth Circuit affirmed bankruptcy court's dismissal

14   based on bad faith constituting cause under section 1112(b). 2011 WL 4502102, at *1 (B.A.P. 9th

15   Cir. Aug. 26, 2011). The *Oasis* court-pointed out that a debtor's financial condition, motives, and

16   local financial realities are relevant considerations in evaluating whether a petition was filed in

17   good faith and. 2011 WL 4502102, at *10 (citing *Little Creek Dev. Co. v. Commonwealth Mortg.*

18   *Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)). It was significant that

19   the debtor's schedules revealed debts primarily consisting of an allegedly invalid promissory note

20   and deed of trust, priority wage claims, customer deposits, and a tax debt. *Id.* at *10. After the

21   bankruptcy filing, the priority wage claim had been paid through court order, customer deposits

22   had been or would be satisfied through continued operations, and that the debtor had paid its

23   bankruptcy counsel a retainer that was nearly equal to the amount of the tax debt. *Id.* In addition,

24   the bankruptcy filing was triggered by a pending foreclosure on the disputed deed of trust, but the

25   *debtor had a state law remedy through which it could challenge the deed's enforceability.* *Id.*

26   Moreover, there had been years of litigation between the company's members as to ownership and

27   management. *Id.* The BAP agreed with the bankruptcy court that issues surrounding the deed of

28   trust and the bankruptcy filing "reflect[ed] the persistent [company] governance issues with which

- 18 -

the State Court is familiar . . . " and "[a]s such it is an 'apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction.'" *Id.*

### b. Debtor's Bankruptcy Petition Filed in Bad Faith to Unreasonably Delay Resolution of a Two-Party Dispute

In the present case before the Court, under the Ninth Circuit's lack of good faith standard, there is cause under section 1112(b)(1) to dismiss Debtor's chapter 11 petition for bad faith with prejudice. *See* 11 U.S.C. § 1112(b); *see also In re Marsch*, 36 F.3d at 828; *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. at 583-84.

Here, the record shows Debtor commenced its bankruptcy Case in bad faith. The bankruptcy is nothing more than Debtor's attempt to avoid a pre-judgment writ in the California Litigation that would divest the Debtor of any control over Debtor's bank accounts. <u>See</u> Request for Judicial Notice, filed concurrently herewith.

The bankruptcy filing has resulted in the delay of the resolution of the two-party dispute pending in California, and as a result, the bankruptcy case should be dismissed. Importantly, once GemCap sets forth cause to dismiss for bad faith, the burden shifts to the Debtor to demonstrate that its bankruptcy petition was filed in good faith. *See Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996) (stating that once a prima facie case is established, the burden shifts to the debtor to demonstrate a good faith business reason for the filing); *see also In re Syndicom Corp.*, 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) (stating that with respect to motions seeking a finding of cause based on bad faith, or a lack of good faith, once the good faith of a debtor is called into question, the burden shifts to the debtor to demonstrate that the petition was filed in good faith).

It is evident that this bankruptcy is nothing more than an improper attempt to manipulate the Bankruptcy Code for Debtor from losing control of the Debtor's bank account. **First**, the contentious and complex nature of the disputes in the California Litigation, which involves diversion of funds. **Second**, the bankruptcy filing undermines the progress GemCap has made in the California litigation that has been unfavorable to the Debtor, including control of the Debtor's bank accounts. *See* Request for Judicial Notice, filed concurrently herewith. **Third**, the timing of

- 19 -

the filing of the petition on the same date that the Complaint was filed to commence the California Litigation was unequivocally to avoid GemCap's motion for a pre-judgment writ. **Fourth**, Debtor's activity in the bankruptcy case, such as the submission of false, incomplete and inaccurate budget projections warrants dismissal. All of the evidence before this Court supports a finding of a bad faith filing warranting dismissal. *See St. Paul Storage Ltd. P'ship*, 185 B.R. at 582-83; *see also Barclays-Am./Bus. Credit Inc.*, 871 F.2d at 1027.

As found under similar circumstances in *In re St. Paul*, Debtor's case is nothing more than a two-party dispute best resolved in the pending California proceeding, and not the bankruptcy courts. *See In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. at 583-84. As was the case in St. Paul, the bankruptcy petition here was filed immediately on the "day of reckoning" for the wrongdoers exerting control over the debtor. *See* Ellis Decl. The entry of a pre-judgment writ in the California Litigation would have put an end to the Debtor's business operations and efforts to waste GemCap's Collateral.

Based upon the foregoing, this Court should dismiss Debtor's bankruptcy Case as a bad faith filing involving what boils down to a two-party dispute in which Debtor tried to gain the upper hand in litigation advantage by filing this instant bankruptcy Case.

**D. Debtor Cannot Show Any of the Statutory Exceptions to Section 1112(b) Relief Are Present On This Record.**

Although the phrase "unusual circumstances" is not defined in the Bankruptcy Code, Courts addressing the issue have determined that this phrase contemplates conditions which are not common to chapter 11 cases. *See, e.g.*, 7 COLLIER ON BANKRUPTCY ¶ 1112.05[2], 1112–43 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) ("Although a finding of unusual circumstances is within the court's discretion, the word 'unusual' contemplates facts that are not common to chapter 11 cases generally."

The record does not demonstrate that unusual circumstances are present, and even in opposing this Motion Debtor will not be able to demonstrate unusual circumstances particular to this chapter 11 Case which involve facts "not common" generally to chapter 11 cases. Debtor is a business which misled its lender to obtain additional loan advances under an existing debt

- 20 -

1  facility, thereafter defaulted on the Over-advance and on payments regarding the underlying debt

2  facility while meantime diverting its lender's Collateral and misdirecting its lender's Cash

3  Collateral, who, after Default, opened a new bank account to further divert and misdirect lender's

4  Cash Collateral and—on the eve of being sued by its lender for Default and breach of the Loan

5  Documents—filed bankruptcy. *See generally* Ellis Decl. Such are not unusual circumstances, and

6  Debtor will be unable to prove otherwise.

### a. Even if unusual circumstances were present Debtor cannot show that 1112(b) Relief is not in the best interests of its creditors and of the estate.

9  Debtor's record of mismanaged finances and financial malfeasances are extensive and are

10  established on the record proffered by Gem Cap. *See generally* Ellis Decl. and accompanying

11  Exhibits thereto. Debtor's own motion for use of GemCap's Cash Collateral (ECF No. 6) and

12  accompanying Mann Declaration (ECF No. 10) make much of that ***Debtor cannot survive unless***

13  ***it further depletes GemCap's Cash Collateral***. Thus, permitting Debtor's case to proceed would

14  (in the absence of astonishingly different and surprising new facts) be essentially tantamount to

15  permitting Debtor to use and deplete GemCap's collateral to fund Debtor's reorganization effort.

16  Although GemCap can certainly show it is in GemCap's best interest that Debtor's Case

17  be dismissed, the record supports a finding that dismissal is in the best interests of all Debtor's

18  creditors and in the best interests of Debtor's estate. Given Debtor's established record of financial

19  malfeasance proffered by GemCap in support of this Motion and given that, pursuant to 11 U.S.C.

20  § 1107, the chapter 11 debtor-in-possession has all the rights and powers and duties of a trustee,

21  leaving Debtor and its current management in the "driver's seat" of this chapter 11 case, so to

22  speak, cannot be shown to be in the best interests of any of Debtor's creditors. For example, even

23  under GemCap's scrutiny and ***after*** Debtor's Default under the Loan Documents, Debtor

24  established a new bank account at Bank of Nevada—behind GemCap's back—while, to GemCap's

25  face, Debtor met at informal mediation and agreed to a standstill, as established by the timeline of

26

27

28

- 21 -

events[19] leading up to the Petition Date. *See* Ellis Decl.; *see also* Request for Judicial Notice, filed concurrently herewith.

As alternative relief, to dismissal, available to GemCap and the Court upon the establishment of cause under 11 U.S.C. § 1112(b), appointment of a chapter 11 trustee to administer the Debtor's case and prosecute actions against the Guarantors for, at a minimum, their actions in causing Debtor to divert funds, refusing to pay GemCap monies it is owed, and establishing new bank accounts behind GemCap's back.  Such an appointment would permit investigation into the gross mismanagement of the Debtor's assets.

      **b.**  **Debtor has not, and will not be able to, establish a reasonable likelihood of plan confirmation within the timeframes established by 11 U.S.C. §§ 1121(e) and 1129(e)**

Moreover, as of the Petition Date, Debtor owes FedEx $300,029.62 (ECF No. 1, p. 7 of 19); is delinquent on its lease in the amount of $216,604.87 (*id.*), which must be cured if assumed; owes the IRS $446,662.63 (*id.*); and is delinquent in payroll taxes in the amount $18,605.36 (*id.* at p. 9 of 19). As of the Petition Date, the Debtor is delinquent on paying its litigation fees in connection with the ongoing Crocs Litigation, which is in the midst of discovery and future trial. Debtor owes the Hellmich Law Group $109,755.65 in connection with its representation of Debtor in the Crocs Litigation. *See* Petition, ECF No. 1 at p. 8 of 19. Debtor is significantly, irretrievably in debt and without prospect of a successful reorganization within a reasonable time.

Further, the Petition indicates Debtor also owes money to UPS in the amount of $128,755.62 (although Debtor identifies this as a disputed debt). *See* ECF No. 1 p. 8 of 19. Debtor has burned bridges now with UPS and with FedEx, it is not able to use their services unless and until a significant prepayment is made; without the ability to use two of the major worldwide shipping carriers Debtor will be unable to proceed with running a business.  Together the amounts

---

[19] 12/31 – Debtor misses repayment of Over-advance; 1/22 – Debtor hires GTG for bankruptcy counsel; 1/23 – Notice of Default sent by GemCap; 1/23 – Debtor opens a new bank account at Nevada State Bank without a GemCap Collection Account ¶ 39, Exhibit P; 1/24 – Debtor tells at least one account debtor to stop paying GemCap and direct all payments to Debtor ¶ 38; 1/25 – GemCap counsel is informed of Debtor's interaction with the outspoken account debtor ¶ 38; 1/26 – Cure Deadline; passes, no cure; 1/26 – litigation standstill agreement. ¶ 40; 1/29 – informal mediation at GemCap Las Vegas counsel office; no resolution; 1/31 – Petition.

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

owed UPS and FedEx amount to $428,785.24. *See* ECF No. 1 pp. 7-8 of 19. Under current and the foreseeable continuing circumstances of this Case, Debtor is unable to show a reasonable likelihood of reorganization because it is not going to be able to run its business and ship inventory to customers without some form of cure to the major shipping carriers—who, if paid in full on the debts owed as of January 31, 2018, would call for over four-hundred twenty thousand dollars immediately required to put Debtor back in a position of being able to use their services. Clearly Debtor cannot now and will not be able to in the future demonstrate a reasonable likelihood of plan confirmation within the timeframes established by the Bankruptcy Code.

Although the Mann Declaration (ECF No. 10) speculates that Debtor will come into a windfall as a result of the Crocs Litigation,[20] such speculation is spurious and insufficient to carry Debtor's burden of showing that it has "as reasonable likelihood of plan confirmation". Moreover, in Debtor's own Budget,[21] proffered in support of its Motion for Use of Cash Collateral (ECF No. 6) Debtor failed to demonstrate an ability to fund the Crocs Litigation—alarming, given that Debtor's litigation counsel was owed $109,755.65 as of the Petition Date.[22] GemCap is likewise concerned with the basis of Debtor's Motion for Use of Cash Collateral (ECF No. 6) and the rosy budget appended thereto[23] which expressly contradicts the projections Debtor presented to GemCap less than ten days prepetition, showing Debtor's finances in the red.[24] Achieving plan confirmation translates to timely compliance with the Code and Rules, complete and honest and accurate disclosure of the Debtor's financial condition to the Court, and conforming with applicable Code provisions governing case administration. Under the statute and prevailing case law, it is the Debtor's burden to establish a reasonable likelihood of plan confirmation, but the record in this Case does not, and cannot, support such a finding.

---

[20] *See* Mann Declaration ECF No. 10.

[21] ECF No. 6-2.

[22] *See* ECF No. 1 p. 8 of 19.

[23] ECF No. 6-2 p. 2 of 2.

[24] *Compare* Budget ECF No. 6-2, *with* Ex. G to Ellis Decl. ECF No. 30-5 pp. 1-2 of 48, *and with* Ex. M to Ellis Decl., ECF No. 30-5 pp. 19-20 of 48. *See also* Ellis Decl., ECF No. 30.

11933-02/2002033.docx

### c. Grounds for converting or dismissing include an act or omission of Debtor other than under 1112(b)(4)(A).

This factor is met, as GemCap is not alleging that cause for dismissal exists pursuant to 11 U.S.C. § 1112(b)(4)(A). However, the statutory exception to the Section 1112(b)(2) mandate to convert or dismiss requires that Debtor must also prove a reasonable likelihood of plan confirmation within a reasonable time, *and* that the "cause" for dismissal can be cured within a reasonable time *and* that the Court can find and identify unusual circumstances showing that conversion or dismissal or appointment of a trustee or examiner is not in the best interests of Debtor's creditors. Debtor cannot proffer a record that establishes the Section 1112(b)(2) statutory exceptions to dismissal or appointment of a chapter 11 trustee are appropriate here.

### d. Debtor's acts and omissions are unlikely to be cured within a reasonable period of time.

Debtor's acts and omissions, as set forth herein and on the evidentiary record proffered in support of this Motion, evince a pattern of misconduct that began prepetition and as to which there is no indication the bad acts discontinued once Debtor entered bankruptcy. *See generally* Ellis Decl. To the contrary; by all accounts Debtor's malfeasance continues. *Id.*

Moreover, even if Debtor were to cease these bad acts, the damage caused cannot be cured by simply giving Debtor more time: untold amounts of money have already been diverted away from GemCap, and GemCap's Collateral remains in danger of further misappropriation because Debtor is, pursuant to 11 U.S.C. § 1107, the trustee of its bankruptcy estate. Problematically, this is a trustee with a history of immediate prepetition malfeasance such that, even if Debtor (i) stops intentionally diverting cash away from GemCap, (ii) ceases contacting account debtors and instructing them to redirect cash to Debtor, (iii) abstains from opening more new bank accounts and receiving funds into those accounts instead of to GemCap, and (iv) stops violating the terms of its Loan Documents, none of these actions cure the damage caused by Debtor's bad acts occurring at this instant. GemCap herein incorporates the arguments regarding bad faith, *supra*, which also demonstrate Debtor's bad acts and the bad acts Debtor performed at Guarantors behest.

- 24 -

11933-02/2002033.docx

E.    **As an Alternative to Dismissal, Appointment of a Trustee for Cause Should Be Granted**.

GemCap requests appointment of a trustee if the Court is not inclined to grant dismissal. Section 1112(b)(1) expressly contemplates appointment of a chapter 11 trustee or examiner if the Court finds appointment of an estate professional would be in the best interests of Debtor's creditors and of the estate. *See* 11 U.S.C. § 1112(b)(1). The bankruptcy court has discretion to appoint a trustee. *See In re North*, 212 F. App'x 626, 626 (9th Cir. 2006). Whether cause exists for trustee appointment is not limited to the enumerated list of fraud, dishonesty, incompetency or gross mismanagement. *In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000). Relevant factors in making a determination as to whether appoint a trustee include:

> 1) Materiality of the misconduct;
> 2) Evenhandedness or lack of same in dealings with insiders or affiliated entities vis-a-vis other creditors or customers;
> 3) The existence of pre-petition voidable preferences or fraudulent transfers;
> 4) Unwillingness or inability of management to pursue estate causes of action;
> 5) Conflicts of interest on the part of management interfering with its ability to fulfill fiduciary duties to the debtor;
> 6) Self-dealing by management or waste or squandering of corporate assets.

*Id.* at 920-21 (citing *Comm. of Dalkon Shield Claimants v. A.H. Robins Company, Inc.*, 828 F.2d 239 (4th Cir. 1987)).

Bankruptcy courts have set the burden of proof for appointment of a trustee ranging from preponderance of the evidence to clear and convincing evidence. *See Tradex Corp. v. Morse*, 339 B.R. 823 (Bankr. D. Mass. 2006) (canvassing cases addressing standard of proof for appointment of trustee and concluding that the burden is a preponderance of the evidence). There is no consistent standard within courts in the Ninth Circuit. *Compare In re Corona Care Convalescent Corp.*, No. 2:13-BK-28497-RK, 2015 WL 1058733, at *2 (Bankr. C.D. Cal. Mar. 6, 2015) (preponderance standard), *with In re Sonicblue Inc.*, No. 03-51775, 2007 WL 926871, at *12 (Bankr. N.D. Cal. Mar. 26, 2007) (clear and convincing standard). However, at a minimum where clear and convincing evidence is offered to prove that cause exists, including fraud, dishonesty, incompetence or gross mismanagement of affairs of debtor by current management, either before

- 25 -

11933-02/2002033.docx

or after commencement of Chapter 11 case, the court must appoint a trustee. *See In re St. Louis Globe-Democrat, Inc.*, 63 B.R. 131 (Bankr. E.D. Mo. 1985).

> **a. In the event the Court does not find that the record supports relief under 11 U.S.C. § 1112(b), GemCap respectfully proffers that relief under Section 1104 for the appointment of a chapter 11 trustee or examiner is available.**

In *In re Lowenschuss*, 171 F.3d 673, 685 (9th Cir. 1999), the Ninth Circuit affirmed a Nevada Bankruptcy Court's decision to grant a motion for the appointment of a trustee for cause under 11 U.S.C. § 1104(a)(1) and in the best interests of creditors under 11 U.S.C. § 1104(a)(2). On appeal, the Ninth Circuit held that either one of those two, independent grounds were sufficient to justify appointment of the trustee. *Id.* Prior to Lowenschuss' bankruptcy filing, he had been ordered by divorce decree to transfer his ex-wife a portion of his pension plan assets, but instead he transferred $8 million in pension plan assets out of state and to Nevada. *Id.* at 676-77. The debtor then moved to Nevada and filed for bankruptcy but omitted his beneficial interest in the pension plan from his schedules. *Id.* at 677. The Ninth Circuit agreed with the bankruptcy court that the debtor's prepetition transfer of pension plan assets out of state, his flight to Nevada to avoid the jurisdiction of another state's court, and the debtor's control of the pension plan assets amounted to cause to appoint a trustee. *Id.* The Ninth Circuit also found the debtor's history of manipulating the pension plan and his control over his son, who was the pension's nominal trustee, supported the bankruptcy court's finding that it would be in the best interests of the creditors to have an independent and disinterested trustee administer the estate and to pursue the debtor's unauthorized transfers of assets. *Id.*

> **b. A Trustee Should Be Appointed to Investigate Current Management's Fraud Dishonesty, Incompetence, and Gross Mismanagement.**

Debtor's pre- and post-petition conduct warrants appointment of a trustee under section 1104. First, the materiality of Debtor's misconduct of diverting funds in the amount of thousands of dollars in GemCap's Collateral was so substantial that it is essential for the California Court to issue a pre-judgment writ. *See* Request for Judicial Notice, filed concurrently herewith. Moreover, Debtor has improperly made preferential payments to entities that are not GemCap. *See* Ellis Decl. and Exhibits thereto. These improper acts also support appointing a trustee to investigate pre-

- 26 -

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

HDW

petition diversion, particularly in light of the Debtor's unwillingness to pursue those causes of action, including pursuit against the Guarantors (who are Debtor's principals), despite GemCap's entitlement that Debtor do so. This failure clearly manifests the self-dealing by Debtor who has and continues to squander corporate assets that constitute GemCap's cash collateral. Further, just like the debtor in *Lowenschuss*, Debtor has made a transparent attempt to avoid the jurisdiction of the California Court by commencing the Debtor's bankruptcy case in Nevada, where the Debtor has not a single asset. This is exact kind of conduct that is frowned upon and supports GemCap's request for the appointment of a trustee to recover diverted funds and ensure disinterested administration of the bankruptcy estate.

Based on the foregoing, it would be in the best interest of creditors and the estate for a trustee to be appointed for the protection of the Debtor's estate.

### c. Appointment of an Examiner Would Also Serve the Interests of the Estate.

In the alternative, an examiner should be appointed for Debtor in the event a trustee is not appointed, as an examiner is in the interests of equity holders, and the estate.

### i. An Examiner Could Investigate Debtor's Fraud, Dishonesty, Incompetence, Misconduct, Mismanagement, and Irregularities.

If the Court does not conclude that a trustee should be appointed, then an examiner should be put in place to serve the best interests of creditors, equity holders, and the estate by investigating the irregularities with which the Debtor conducted pre- and post-petition business affairs and the fraud and mismanagement associated the Debtor's operations. An examiner should investigate why the Debtor has been diverting significant funds, opening new bank accounts, mis-segregating GemCap's cash and collateral, as established in the Ellis Decl.

**F.** **As Alternative to Section 1112(b) Relief, In the Event the Court finds no 11 U.S.C. § 1112(b) "cause", GemCap Respectfully Requests the Court Terminate the Automatic Stay.**

In the event the Court is not inclined to grant dismissal or appointment of a chapter 11 trustee, GemCap requests relief from the automatic stay pursuant to Section 362(d), which allows this Court to grant stay relief for cause:

- 27 -

1   (d) On request of a party in interest and after notice and a hearing,
2   the court shall grant relief from the stay provided under
   subsection(a) of this section, such as by terminating, annulling,
3   modifying, or conditioning such stay—
   (1) for cause, including the lack of adequate protection of an interest
4   in property of such party in interest;
   (2) with respect to a stay of an act against property under subsection
5   (a) of this section, if—
    (A) the debtor does not have an equity in such property; and
6    (B) such property is not necessary to an effective
    reorganization[.]

7 11 U.S.C. § 362(d)(1) and (2).  As set forth herein, GemCap has established "cause" on this record.

8  **1. Cause exists under 11 U.S.C. § 362(d) and Stay Relief Should Be Granted GemCap.**

9    "The existence of bad faith in commencing a bankruptcy case constitutes cause for granting

10 relief from the stay pursuant to § 362(d)." *See Duvar Apt., Inc. v. FDIC (In re Duvar Apt., Inc.)*,

11 205 B.R. 196, 200 (B.A.P. 9th Cir. 1996).  As established *supra* and in the Ellis Decl. and the

12 Request for Judicial Notice filed concurrently herewith, the Debtor has filed this bankruptcy Case

13 in bad faith.  Moreover, even if Debtor had not committed bad faith, Debtor has burned bridges

14 with UPS and with FedEx, it is not able to use their services unless and until a significant

15 prepayment is made; without the ability to use two of the major worldwide shipping carriers Debtor

16 will be unable to proceed with running a business.  Together the amounts owed UPS and FedEx

17 amount to $428,785.24. *See* ECF No. 1 pp. 7-8 of 19.  Under current and the foreseeable continuing

18 circumstances of this Case, Debtor is unable to show a reasonable likelihood of reorganization *or*

19 *that GemCap's collateral or a stay of the California Litigation are necessary for an effective*

20 *reorganization of the Debtor* because Debtor is not going to be able to run its business and ship

21 inventory to customers without some form of cure to the major shipping carriers—who, if cured,

22 would require $428,785.24 immediately, to put Debtor back in a position of being able to use

23 their services.  Clearly Debtor cannot demonstrate GemCap's collateral or a stay of the California

24 Litigation are necessary for an effective reorganization of the Debtor.

25    Debtor is wholly unable on this record to demonstrate a reasonable likelihood of

26 reorganization in this chapter 11 bankruptcy Case.  Therefore GemCap should be granted relief

27 from the automatic stay to proceed with the California Litigation.

28

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

- 28 -

11933-02/2002033.docx

G.     **Alternatively, This Court Should Abstain Until Resolution of the California Litigation.**

In the alternative, GemCap requests that this Court abstain from Debtor's bankruptcy Case if the other requested forms of relief are not afforded.  Section 305 of the Bankruptcy Code provides for abstention by dismissal of a bankruptcy case if:

> (1) **the interests of creditors and the debtor would be better served by such dismissal** or suspension; or
> (2)(A) a petition under section 1515 for recognition of a foreign proceeding has been granted; and
>     (B) the purposes of chapter 15 of this title would be best served by such dismissal or suspension.

11 U.S.C. § 305 (a)(1) & (2) (emphasis added).   A court should consider the following factors when deciding whether to abstain under Section 305(a):

> (1) the economy and efficiency of administration;
> (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
> (3) whether federal proceedings are necessary to reach a just and equitable solution;
> (4) whether there is an alternative means of achieving an equitable distribution of assets;
> (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
> (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
> (7) the purpose for which bankruptcy jurisdiction has been sought.

*Marciano v. Fahs (In re Marciano),* 459 B.R. 27, 46-47 (B.A.P. 9th Cir. 2011), *aff'd* 708 F.3d 1123 (9th Cir. 2013) (citation omitted).

   a.  **Abstention Allow Timely, Effective, and Consistent Resolution of the Pending California Litigation.**

Abstention from Debtor's bankruptcy Case is appropriate for several reasons.  First, the Debtor has failed to promote the economy or efficiency of this case by submitting false and inaccurate Budget projections.  *Compare* Budget ECF No. 6-2, *with* Ex. G to Ellis Decl. ECF No. 30-5 pp. 1-2 of 48, *and with* Ex. M to Ellis Decl., ECF No. 30-5 pp. 19-20 of 48.  *See also* Ellis Decl., ECF No. 30.  It would be more efficient to have the disputes heard by the California Court as that litigation commenced prepetition. Second, the California Court is an available alternative

- 29 -

forum in which the California Litigation was pending immediately before the bankruptcy filing. Third, a federal proceeding is not necessary because the parties' disputes can be resolved on state law claims of diversion of funds and other financial malfeasance claims, and the remedy of pre-judgment writ is also available in the California Litigation. Fourth, while the California Litigation is before a court, continuance of the California Litigation would eliminate the need for administrative expense and professional fees associated.

Thus, this Court should abstain from exercising jurisdiction over this case pursuant to 11 U.S.C. § 305(a) because the California Court is familiar with the parties, the litigation history, and the past conduct of the parties, and is in the best position to enforce judgments consistently, expeditiously, and efficiently, which would be beneficial for the parties.

## VI.    CONCLUSION

Based upon the record currently before the Court, GemCap respectfully requests its Motion should be granted and Debtor's bankruptcy Case dismissed or a chapter 11 trustee or examiner be appointed; however in the instance the Court does not find cause under 11 U.S.C. § 1112(b) or finds that Debtor has met its burden of demonstrating one of the statutory exceptions to Section 1112(b) relief, GemCap respectfully requests it be afforded relief from the automatic stay to proceed with the California Litigation, or that this Court abstain Debtor's bankruptcy Case until a determination of rights is had by the Court in the California Litigation.

HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON


Ogonna M. Brown, Esq. (NV Bar No. 7589)
F. Thomas Edwards, Esq. (NV Bar No. 9549)
Mary Langsner (NV Bar No. 13707)
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:702/791-0308
*Attorneys for GemCap*

HOLLEY·DRIGGS·WALCH
FINE·WRAY·PUZEY·THOMPSON

- 30 -

**CERTIFICATE OF SERVICE**

     I hereby certify that I am an employee of Holley Driggs Walch Fine Wray Puzey & Thompson, and that on the 8th day of February, 2018, I caused to be served a true and correct copy of MOTION TO DISMISS OR APPOINT A TRUSTEE FOR BAD FAITH OR, IN THE ALTERNATIVE, MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ABSTENTION in the following manner:

     ☒     (ELECTRONIC SERVICE)  Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

     ☐     (UNITED STATES MAIL)  By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed on the attached service list, at their last known mailing addresses, on the date above written.

     ☐     (OVERNIGHT COURIER)  By depositing a true and correct copy of the above-referenced document for overnight delivery via Federal Express, at a collection facility maintained for such purpose, addressed to the parties on the attached service list, at their last known delivery address, on the date above written.

     ☐     (FACSIMILE)  That I served a true and correct copy of the above-referenced document via facsimile, to the facsimile numbers indicated, to those persons listed on the attached service list, on the date above written.

                             An employee of Holley Driggs Walch
                             Fine Wray Puzey & Thompson

- 31 -

11933-02/2002033.docx