Brian E. Holthus, Esq.
Nevada Bar No. 2720
Email: beh@juwlaw.com
JOLLEY URGA WOODBURY HOLTHUS & ROSE
330 S. Rampart Blvd., Ste. 380
Las Vegas, Nevada 89145
Telephone:    (702) 699-7500
Facsimile:    (702) 699-7555
*Attorneys for Crocs, Inc.*

Efiled: 2/16/18

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF NEVADA

In re:

U.S.A. DAWGS INC.,

Debtor.

Case No.: BK-S-18-10453-LED

Chapter 11

Date: March 20, 2018
Time: 9:30 a.m.

**MOTION OF CROCS, INC. FOR (I) A DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO ADJUDICATION OF PENDING SANCTIONS MOTIONS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA OR, IN THE ALTERNATIVE, (II) RELIEF FROM THE AUTOMATIC STAY TO PERMIT THE DISTRICT COURT TO RESOLVE MOTIONS FOR SANCTIONS**

Creditor Crocs, Inc. ("**Crocs**") respectfully moves the Court for entry of an order determining that the automatic stay does not apply to the resolution of two motions for sanctions filed by Crocs (the "**Sanctions Motions**"). Crocs filed the first motion against U.S.A. Dawgs, Inc. ("**Dawgs**" or the "**Debtor**") and the Debtor's non-debtor Canadian affiliate Double Diamond Distribution, Ltd. ("**Double Diamond**"). Crocs filed the second motion against Debtor and the Debtor's prior litigation counsel, Christopher C. Hellmich, Joel Z. Schwartz, and Mr. Schwartz's firm, Dickinson Wright PLLC. Both of the Sanctions Motions currently are pending – fully briefed and ripe for decision – in the United States District Court for the District of Nevada, one motion in *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:16-cv-1694 (D. Nev.) (the "**2016 Nevada Litigation**") and the other motion in *U.S.A. Dawgs, Inc. v. Crocs, Inc. et al.*, No. 2:17-cv-02054 (D. Nev.) (the "**2017 Nevada Litigation**").

As set forth below, a court's award of sanctions is an exercise of a governmental unit's police and regulatory power and, pursuant to 11 U.S.C. § 362(b)(4), is not subject to the automatic stay. Accordingly, Crocs seeks entry of an order determining that the Nevada District Court may decide both Sanctions Motions, notwithstanding the automatic stay.

Alternatively, Crocs seeks relief from the automatic stay to permit the Nevada District Court to decide the Sanctions Motions. The Nevada District Court has the inherent authority, and is best-positioned, to police conduct in cases filed before it. Further, the Nevada District Court is well-versed in the history of the 2016 and 2017 Nevada Litigations, the Sanctions Motions are ripe for determination in that Court, and granting relief from the stay will promote judicial efficiency and will not prejudice the Debtor or its creditors.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION

On January 31, 2018, the Debtor commenced this chapter 11 case by filing a voluntary petition in this Court. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue in this District is proper pursuant to 28 U.S.C. § 1409(a). Pursuant to Local Rule 9014.2, Crocs does not consent to entry of a final order or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

### II. BACKGROUND: THE COLORADO LITIGATION, THE NEVADA LITIGATIONS, AND CROCS' MOTIONS FOR SANCTIONS

For over a decade, Crocs has been pursuing patent infringement claims against Dawgs or its Canadian affiliate Double Diamond in the U.S. District Court for the District of Colorado. *Crocs, Inc. v. Effervescent, Inc., et al.*, No. 06-cv-00605-PAB-KMT (D. Colo.) (the "**Colorado Litigation**").[1] In 2012, Dawgs asserted against Crocs counterclaims alleging violation of the antitrust laws and other state-law torts. Shortly thereafter, the Colorado Litigation was stayed until 2016 at the request of Dawgs and Double Diamond.

---

[1] Dawgs was officially added as a party to the Colorado Litigation in mid-2012, at which time the amendment was deemed to relate-back to the filing of the original Complaint in 2006.

In 2014, with the stay still in place in the Colorado Litigation, Dawgs filed an antitrust lawsuit against Crocs in this District. *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 2:14-cv-1461 (D. Nev.) (the "2014 Nevada Litigation"). Judge Boulware found the 2014 Nevada Litigation to be duplicative of claims Dawgs had filed against Crocs in the Colorado Litigation, ECF No. 51, and ordered the 2014 Nevada Litigation transferred to Colorado. Dawgs thereafter abandoned the 2014 Nevada Litigation. *Id.*; *U.S.A. Dawgs, Inc. v. Crocs, Inc.*, No. 1:15-cv-02185 (D. Colo.), ECF No. 36 (Dawgs dismissing transferred 2014 Nevada Litigation without prejudice).

### A. The 2016 Nevada Litigation

In 2016, Dawgs filed the 2016 Nevada Litigation, an anticipatory declaratory judgment lawsuit, against Crocs. Dawgs filed the 2016 Nevada Litigation mere weeks after Crocs sought to assert an additional claim of patent infringement against Dawgs in the Colorado Litigation. Dawgs maintained the 2016 Nevada Litigation for several months – necessitating a motion to dismiss and request for a stay of discovery – but then dismissed the lawsuit without prejudice, before the Court could rule on Crocs' motion to dismiss. *Id.* ECF Nos. 22, 26, 27.

Following Dawgs' dismissal of the 2016 Nevada Litigation, Crocs moved for sanctions in the Nevada District Court against Dawgs and Double Diamond, on the grounds that the lawsuit was an anticipatory declaratory judgment action which Dawgs brought and maintained in order to deprive Crocs of its choice of forum in Colorado. Judge Mahan agreed, finding that Dawgs had acted in bad faith because it maintained the 2016 Nevada Litigation as a "bargaining chip" to obtain leverage over Crocs in the Colorado Litigation. *Id.* ECF No. 41, at 5–6. Judge Mahan initially denied the Sanctions Motion without prejudice, stating that further factual information was needed from Crocs concerning prevailing rates for attorney's fees within this District. Crocs renewed the Sanctions Motion and supplied the additional information requested by the Court, and the Sanctions Motion is now ripe for decision in the 2016 Nevada Litigation.[2]

---

[2] In correspondence between the parties prior to the filing of this Motion, Dawgs' counsel noted that Dawgs filed requests to submit sur-replies in connection with both Sanctions Motions, and on that basis stated that it "would require Dawgs' resources and attention to address" the two Sanctions Motions, and divert Dawgs' attention from this case. However, in his February 7, 2018 orders, Judge Mahan denied Dawgs' requests to file sur-replies, making that a non-issue. Even were that not the case, filing a sur-reply to a sanctions motion would be a very discrete task undertaken by a litigation attorney, and not the sort of thing that would distract a debtor from its chapter 11 efforts in
(Footnote Cont'd on Following Page)

### B. The 2017 Nevada Litigation

Apparently undaunted by the dismissal of the 2014 Nevada Litigation and its failure to materially advance the 2016 Nevada Litigation, on July 27, 2017, Dawgs filed the 2017 Nevada Litigation against Crocs and three of its current and former employees. The gravamen of Dawgs' complaint in the 2017 Nevada Litigation was that several of Crocs' employees had allegedly engaged in hacking and corporate espionage of Dawgs' confidential information in November 2016, and thereafter caused flash retailer Zulily to pull certain of Dawgs' products from forthcoming sales events. *Id.* ECF No. 1. In addition to its hacking claims, Dawgs alleged that Crocs engaged in further corporate espionage by purportedly "stealing" Dawgs' trade dress for a "Z-shaped upper" design on a sandal during a 2013 meeting, and released an infringing product several years later, in 2017. On September 9, 2017, Crocs and its co-defendants filed a motion for sanctions under Rule 11 and the Court's inherent powers against Dawgs and its litigation counsel, on the basis that the entire 2017 Nevada litigation was factually baseless and brought in bad faith. *Id.* ECF No. 15.

After several months of litigation, including discovery of Crocs and its co-defendants, on November 15, 2017 Dawgs abruptly abandoned and dismissed its claims in the 2017 Nevada Litigation without prejudice, having never provided any factual substantiation for its allegations.

On December 1, 2017, Crocs and its co-defendants filed a renewed motion for sanctions in the 2017 Nevada Litigation against Dawgs and its litigation counsel under Rule 11, the Court's inherent powers, and 28 U.S.C. § 1927, as Dawgs' claims remained factually baseless and legally frivolous, and Dawgs had unreasonably and vexatiously multiplied proceedings. The motion sought (a) costs and attorneys' fees, (b) Dawgs' issuance of a retraction and apology for allegations it made against individuals in the 2017 Nevada Litigation and (c) an order requiring prior court approval for Dawgs to re-file the 2017 Nevada Litigation or bring other claims against Crocs or persons

---

(Footnote Cont'd From Previous Page)

any material way. It is thus unlikely that allowing Judge Mahan to decide the two pending and fully-briefed motions would occupy any of Dawgs' resources or attention. Dawgs also noted that Judge Mahan previously denied without prejudice the 2016 Litigation Sanctions Motion on the basis that he required additional information from Crocs regarding attorneys' fees. However, that information was filed prepetition by Crocs. As a result, there is nothing more that Crocs or the Debtor need to do in order for Judge Mahan to be in a position to rule on the Sanctions Motions – other than to advise him that this Court has held that the automatic stay does not preclude him from doing so.

affiliated with it in the District of Nevada. ECF No. 44. The Sanctions Motion in the 2017 Nevada Litigation is fully briefed before Judge Mahan, and is ripe for adjudication.

### C. The Nevada District Court Stays The Nevada Litigation

On February 1, 2018, the Debtor filed notices of bankruptcy in the 2016 and 2017 Nevada Litigations. 2:16-cv-1694 (D. Nev.) ECF No. 56; 2:17-cv-02054 (D. Nev.) ECF No. 50. As a result, on February 7, 2018, based on the Debtor's assertion that the automatic stay applied, the District Court entered orders staying proceedings on the Sanctions Motions in the 2016 and 2017 Nevada Litigations pending "termination" of the Debtor's bankruptcy case. 2:16-cv-1694 (D. Nev.) ECF No. 57; 2:17-cv-02054 (D. Nev.) ECF No. 51.

Under settled law, however, the automatic stay does not apply to the imposition of sanctions by a court, and accordingly it is not necessary for the Nevada District Court to stay proceedings on the Sanctions Motions. Bankruptcy Code § 362(b)(4), which provides an exception to the automatic stay for a governmental unit's exercise of its police and regulatory powers, permits the Nevada District Court to adjudicate the Sanctions Motions notwithstanding the Debtor's bankruptcy filing. In addition to being permissible under § 362(b)(4), adjudication of the Sanctions Motions by the Nevada District Court is the most efficient and expedient way to resolve these matters given the Nevada District Court's extensive experience and familiarity with the 2016 and 2017 Nevada Litigations.

Accordingly, Crocs seeks an order determining that the automatic stay does not preclude the Nevada District Court's adjudication of the Sanctions Motions or, in the alternative, relief from the stay.

## III. THE AUTOMATIC STAY DOES NOT APPLY TO THE NEVADA DISTRICT COURT'S DETERMINATION OF THE SANCTIONS MOTIONS.

Bankruptcy Code § 362(b)(4) provides that the filing of a bankruptcy petition does not operate as a stay of "the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's … police and regulatory power …." Courts have held that adjudication of a motion for sanctions constitutes an action or proceeding by a governmental unit, *i.e.*, the court, to enforce its police and regulatory power, and therefore such

judicial actions are excepted from the automatic stay under § 362(b)(4). *See, e.g., Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) (award of sanctions under Fed. R. Civ. P. 11 not stayed); *Berg v. Good Samaritan Hospital*, 198 B.R. 557, 560 (B.A.P. 9th Cir. 1996) (award of sanctions under Fed. R. App. P. 38 not subject to automatic stay); *In re Miller*, 2011 WL 6736070 at *3 (Bankr. D. Colo. Dec. 20, 2011) (creditor's action to collect attorneys' fees pursuant to 28 U.S.C. § 1927 for filing "multiple proceedings" not stayed).

In *Alpern*, the plaintiff filed a civil action in federal district court. *Alpern*, 689 F.3d at 689. The plaintiff's case was dismissed as frivolous and the defendant filed a motion for sanctions, which the district court granted. *Id.* The plaintiff appealed both the dismissal of its action and the award of sanctions to the defendant, and then filed bankruptcy while the appeals were pending. *Id.* On appeal, the plaintiff-debtor asserted that the appeal of the sanctions decision could not proceed because it was subject to the automatic stay. *Id.* The Seventh Circuit rejected his argument, observing that even if "the Rule 11 motion and resulting appeal ...were a separate action against the debtor ... a proceeding to impose sanctions under Rule 11 is exempt from the automatic stay pursuant to 11 U.S.C. § 362(b)(4)." *Id.* at 690.

In reaching this decision, Judge Posner explained that:

> Rule 11 is not a simple fee-shifting provision ... [i]t directs the imposition of sanctions for unprofessional conduct in litigation, and while the form of sanction is often and was here an order to pay attorney's fees to the opponent in the litigation, it is still a sanction, just as an order of restitution in a criminal case is a sanction even when it directs that payment be made to a private person rather than to the government ... [a] litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy. Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by firms or individuals teetering on the edge of the bankruptcy abyss.

*Id.*

In *Berg v. Good Samaritan Hospital*, the Bankruptcy Appellate Panel for the Ninth Circuit addressed the question of whether an award of sanctions by an appellate court under Fed. R. App. P. 38 – permitting sanctions for a frivolous appeal – was subject to the automatic stay when the appellant filed bankruptcy during the pendency of the appeal. 198 B.R. at 560. In *Berg*, sanctions

were awarded against an attorney, Jerome Berg, who was counsel to the plaintiff in an antitrust action. *Id.* at 559. Berg appealed from the sanctions award and, shortly after taking the appeal, he filed bankruptcy. *Id.* On appeal, the Ninth Circuit affirmed the district court's sanctions award and imposed additional sanctions against Berg under Fed. R. App. P. 38 for taking a frivolous appeal. *Id.*

Berg then challenged the sanctions award in his bankruptcy case, arguing that the appeal and sanctions award were stayed. The bankruptcy court rejected that position and held, *inter alia*, that the Ninth Circuit's award of sanctions was exempt from the automatic stay pursuant to § 362(b)(4). *Id.* at 561. Berg appealed to the Ninth Circuit B.A.P., which affirmed the bankruptcy court's decision, adopting the Seventh Circuit's reasoning in *Alpern*. *Id.* at 562.

The B.A.P. went on to explain that, in determining "whether a particular action falls within the government police or regulatory power exception" courts look to (1) the "public policy test," which asks whether a court is effectuating public policy rather than adjudicating private rights and (2) the "pecuniary purpose test," which asks whether the governmental unit is acting in relation to public policy or to protect the government's pecuniary interest in the debtor's property. *Id.* In *Berg*, the B.A.P. held that an award of sanctions by a court satisfies both the public policy and pecuniary purpose tests for application of the police and regulatory exception under § 362(b)(4). Sanctions satisfy the public policy test because they are "meted out by a government unit for the purpose of combating attorney misconduct and [do] not serve to adjudicate private rights." *Id.* Likewise, a sanctions award satisfies the pecuniary purpose test because sanctions do not serve a private pecuniary purpose, but rather are "a means of reprimanding ... attorney misconduct in an effort to uphold the integrity of the judicial system." *Id.* at 563. Thus, an award of sanctions falls "squarely within the police or regulatory function of the Court and, therefore, is not subject to the stay." *Id.*

Similarly, in *Petrano v. Nationwide Mut. Fire Ins. Co.*, 2013 WL 811876 at *2 (N.D. Fla. Mar. 4, 2013), the Northern District of Florida dismissed plaintiffs' complaint as frivolous, and the defendants sought sanctions pursuant to Rule 11. *Petrano*, 2013 WL 811876 at *1. The Magistrate Judge for the Northern District of Florida granted the defendants' motion and entered a Report and

Recommendation for sanctions against the plaintiffs as a result of "utterly frivolous filings." *Id.* Following entry of the court's Report and Recommendation, and while certain other motions for sanctions remained pending, the plaintiffs filed bankruptcy. *Id.* The plaintiff-debtors then argued that proceedings on the sanctions motion were stayed but, citing *Alpern*, the court rejected that position and held that "sanctions proceedings against Plaintiffs in this case are not subject to the automatic bankruptcy stay" because such proceedings constituted the exercise of police and regulatory powers by a governmental unit pursuant to § 362(b)(4). *Id.* at *3. Accordingly, the court held that all of the pending sanctions proceedings could continue notwithstanding the plaintiff-debtors' bankruptcy filing, and that the plaintiff-debtors' suggestion of bankruptcy should be stricken from the record. *Id.*

Other courts have reached the same conclusion with respect to:

(1) Rule 11 sanctions, *see Maritan v. Todd*, 203 B.R. 740, 744 (N.D. Okla. 1996) (holding that sanctions were not subject to the automatic stay because "the imposition of Rule 11 sanctions is aimed at effectuating public policy, not at adjudicating private rights … imposition of Rule 11 sanctions is aimed at effectuating the federal judiciary's policy of purging needless, harassing, and abusive litigation from the federal court system"); *O'Brien v. Fischel*, 74 B.R. 546, 552 (D. Haw. 1987) (Rule 11 sanctions against debtor-attorney were not subject to automatic stay by application of § 362(b)(4));

(2) motions to impose sanctions under 28 U.S.C. § 1927, *see In re Miller*, 2011 WL 6736070 at *3  (the reasoning in *Alpern, Maritan* and *Berg* "is applicable to sanctions under 28 U.S.C. § 1927 with equal force as to sanctions under Rule 11"); and

(3) sanctions imposed under Fed. R. Civ. P. 16(f), *see Sabre Group, Inc. v. European Am. Travel, Inc.*, 192 F.3d 126 at *2 (5th Cir. Aug. 9, 1999) ("district court's sanctions order pursuant to Rule 16(f) was 'the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power'"); *In re Leonard*, 2014 WL 1025823 at *7 (Bankr. E.D. Tenn. Mar. 4, 2014) (award of sanctions under Rule 16(f) satisfies public policy and pecuniary purpose tests and is exempt from the automatic stay pursuant to § 362(b)(4)).

Here, the same considerations apply. Adjudication of the Sanctions Motions, which are based on the same statutory predicates and provisions of the Federal Rules cited in several of the cases discussed above, is an exercise of the Nevada District Court's police and regulatory power, and therefore is exempt from the automatic stay pursuant to § 362(b)(4). The Debtor has been engaged in frivolous litigation in the District of Nevada since 2014, with the 2016 and 2017 Nevada Litigations still pending. An order by this Court determining that the automatic stay does not apply to the Sanctions Motions, in accordance with applicable precedent, will enable the Nevada District Court to adjudicate the Sanctions Motions and take such steps as are necessary to address litigation misconduct by a party and its counsel, curb abusive tactics, and uphold the integrity of the judicial system.

### IV. IF THE AUTOMATIC STAY APPLIED TO THE SANCTIONS MOTION, CAUSE WOULD EXIST TO GRANT RELIEF TO PERMIT THE NEVADA DISTRICT COURT TO DETERMINE THE AMOUNT AND NATURE OF SANCTIONS.

If this Court were to determine that the automatic stay applies to the Nevada District Court's adjudication of the Sanctions Motions, notwithstanding § 362(b)(4) and the precedent discussed above, cause would exist to grant relief from the automatic stay to permit the District Court's adjudication of the Sanctions Motions.

In the Ninth Circuit, courts consider twelve non-exclusive factors in determining whether to grant relief from the stay to allow litigation to proceed in another forum. *In re Kronemeyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (citing *Truebro v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 559-60 (Bankr. C.D. Cal. 2004)). These factors are: (1) whether relief form the stay will result in partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether the foreign proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) whether the action essentially involves third parties and the debtor functions only as a bailee or conduit; (7) whether the litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the foreign action is subject

to equitable subordination under § 510(c); (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f); (10) the interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) whether foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) the impact of the stay on the parties and the "balance of hurt." *Id.* at 559.

Each factor applicable to this case supports granting relief from the stay to allow the Nevada District Court to decide the Sanctions Motions.[3]

### A. The Sanctions Motions Are Fully Briefed And Ripe For Adjudication, Accordingly, Factors (1), (10), (11) and (12) Support Relief From The Stay.

Allowing the Nevada District Court to resolve the Sanctions Motions will satisfy the first, tenth, eleventh and twelfth factors because it will (a) fully resolve the Sanctions Motion, (b) further the interests of judicial economy and the expeditious resolution of litigation, (c) conclude a discrete proceeding in the District Court that has been fully briefed and is ripe for determination, and (d) not impose undue harm on the Debtor.

The Sanctions Motions have been fully briefed and ready for decision by the Nevada District Court. Judge Mahan has presided over the 2016 and 2017 Nevada Litigations since their inception and is familiar with all of the issues relevant to Crocs' requests for sanctions. Indeed, Judge Mahan already has made findings as to the Debtor's bad faith in the 2016 Nevada Litigation, and the parties were only waiting for a final decision concerning the proper amount of attorneys' fees to be awarded to Crocs at the time that the Debtor commenced this bankruptcy case. Briefing also is complete in connection with the Sanctions Motion in the 2017 Nevada Litigation. Lifting the stay would allow the Nevada District Court to promptly liquidate the amount of sanctions and fully and finally resolve the Sanctions Motions in a single forum.

Moreover, the involvement of several third parties as "sanctions defendants" further supports granting stay relief under *Plumberex* factors (1) and (10). As noted above, in the Sanctions Motions Crocs seeks sanctions against not only the Debtor, but also the Debtor's past litigation counsel, Christopher Hellmich, Joel Schwartz and Dickinson Wright PLLC, as well as against the

---

[3] Factors (3), (4), (5), (8) and (9) are not applicable in this case.

Debtor's non-debtor affiliate, Double Diamond. Double Diamond, Messrs. Hellmich and Schwartz, and Dickinson Wright PLLC are not debtors and are not entitled to the protection of the automatic stay.

Thus, even if this Court were to hold that the stay applies to the Nevada District Court's determination of sanctions against the Debtor, and were to deny relief from the stay, Crocs could (a) file a proof of claim on account of the Sanctions Motions in the Debtor's bankruptcy case and (b) seek to proceed separately, in the Nevada District Court, with respect to sanctions against Double Diamond and against the prior litigation counsel, who are not debtors and therefore are not protected by the automatic stay.[4] That would result in parallel proceedings in two federal courts to decide the same issue, based on the same factual record. It would cause duplication of effort, be contrary to the principle of judicial economy, and create a potential for inconsistent findings by this Court and the Nevada District Court. This would be inefficient for the courts and the parties, and it would be contrary to the policies expressed in *Plumberex* factors (1) and (10), which promote complete – rather than piecemeal – resolution of disputes.

Accordingly, factors (1), (10), (11) and (12) support granting relief from the stay.

**B.    Any Connection Between The Sanctions Motions And This Chapter 11 Case Is Remote, And Lifting The Stay Would Not Interfere With The Administration Of This Case.**

With respect to the second factor, any connection between the Sanctions Motions and this chapter 11 case is minimal, and adjudication of the Sanctions Motions in the District Court would not hinder the administration of this case. An award of sanctions against the Debtor would simply give rise to a claim by Crocs in this chapter 11 case, subject to the same procedures for claims treatment and distribution that are applicable to all of the Debtor's other creditors.

Liquidation of a claim against a debtor in a forum other than the bankruptcy court is common where, as in this case, the matter giving rise to such claim has been pending in the other forum and, as a result, that forum possesses the relevant context, factual background and/or

---

[4] It appears that this Court would not have jurisdiction to decide the Sanctions Motions against the non-debtor "sanctions defendants." That is a matter between non-debtor parties, and apparently beyond the scope of this Court's related-to jurisdiction. Thus, the Sanctions Motions against those parties would have to be decided in the District Court even if the same Sanctions Motion, as against the Debtor, were decided in this Court.

expertise that puts it in the best position to decide the matter. *See, e.g., In re Shaffer*, 563 B.R. 301, 307 (Bankr. D. Ariz. 2016) (bankruptcy court granted relief from stay to permit litigation to continue in Arizona state court, where it had been pending for four years); *In re Am. Spectrum Realty, Inc.*, 540 B.R. 730, 740-41 (Bankr. C.D. Cal. 2015) (bankruptcy court granted relief from stay to permit litigation to continue before Texas state court, because litigation had been pending before Texas court for two-and-a-half years, extensive proceedings had taken place before Texas court, and case was ready for trial). Permitting the District Court to do so here would not interfere with the administration of this case.

Indeed, rather than interfere with the administration of this case, resolution of the Sanctions Motions in the District Court would enhance the efficient administration of this bankruptcy case by eliminating the need for the Debtor, the Debtor's counsel, and Crocs to devote additional time and resources to re-litigating the Sanctions Motions in this Court. Although this Court certainly could familiarize itself with the record from the 2016 Nevada Litigation and the 2017 Nevada Litigation, review the briefing on the Sanctions Motions, and decide those motions – at least with respect to the Debtor – Crocs respectfully submits that it would be more efficient for the Nevada District Court to do so, since it has presided over those litigations since their inception, and is the court that would decide the Sanctions Motion with respect to the non-debtor parties. Accordingly, factor (2) supports granting relief from the stay.

### C. Resolution Of The Sanctions Motion In Nevada District Court Will Not Prejudice The Debtor's Creditors.

Finally, lifting the stay to allow the Nevada District Court to decide the Sanctions Motions will not prejudice creditors in this chapter 11 case. The Sanctions Motions relate to a discrete and long-running dispute among Crocs, the Debtor, Double Diamond and the Debtor's prior litigation counsel that does not implicate the rights of the Debtor's other creditors. Potential sanctions against the Debtor's prior litigation counsel and Double Diamond have no apparent relevance to the interests of creditors in this case and, although a sanctions award against the Debtor would create a claim in this chapter 11 case, the same result would follow whether the Sanctions Motions are adjudicated in this Court or in the Nevada District Court. And the burden and costs associated with

allowing the Nevada District Court to decide the Sanctions Motions will be materially lower than requiring the matter to be re-litigated in this Court. Thus, to the extent that factor (7) applies, weighs in favor of granting relief from the stay.

Accordingly, each of the relevant *Plumberex* factors would favor granting relief from the stay to allow the Nevada District Court to decide the Sanctions Motions, if the Court were to hold – contrary to the precedents cited above – that the stay applies.

## CONCLUSION

Under § 362(b)(4), the Nevada District Court may resolve the Sanctions Motions without regard to the automatic stay. Even if that were not the case, cause exists to grant stay relief to permit the Nevada District Court to decide the Sanctions Motions. Accordingly, Crocs respectfully requests entry of an order (i) determining that the automatic stay does not apply to the Nevada District Court's adjudication of the Sanctions Motions, or, in the alternative, (ii) granting relief from the automatic stay to permit the Nevada District Court to resolve the Sanctions Motions and (iii) granting such other relief as the Court deems just and appropriate.

Respectfully submitted,

DATED this 15 day of February, 2018.

JOLLEY URGA WOODBURY HOLTHUS & ROSE

By: _____
Brian E. Holthus, Esq.
330 S. Rampart Blvd., Ste. 380
Las Vegas, Nevada 89145
*Attorneys for Crocs, Inc.*

NVB 4001 (Rev. 12/15)

# * * § 362 INFORMATION SHEET * *

U.S.A. DAWGS, INC.
**DEBTOR**
Crocs, Inc.
**MOVANT**

18-10453-LED
BK-
CHAPTER: 11

MOTION #:

### Certification of Attempt to Resolve the Matter Without Court Action:
Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(2), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.
Date: 2-09-18
Signature: _[signed]_
Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: _____
NOTICE SERVED ON: Debtor(s) [✓]; Debtor's counsel [✓]; Trustee [✓];
DATE OF SERVICE: 2-16-18

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st N/A | 1st _____ |
| 2nd N/A | 2nd _____ |
| 3rd N/A | 3rd _____ |
| 4th N/A | 4th _____ |
| Other: As set forth in motion, no stay exists | Other: _____ |
| Total Encumbrances: $ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: $ | APPRAISAL of OPINION as to VALUE: |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT : |
|---|---|
| Amount of Note: N/A | |
| Interest Rate: N/A | |
| Duration: N/A | |
| Payment per Month: N/A | |
| Date of Default: N/A | |
| Amount in Arrears: N/A | |
| Date of Notice of Default: N/A | |
| SPECIAL CIRCUMSTANCES: | SPECIAL CIRCUMSTANCES: |
| SUBMITTED BY: Jolley Urga Woodbury Holthus & Rose | SUBMITTED BY: _____ |
| | SIGNATURE: _____ |