GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
E-mail:  tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail:  tpilatowicz@gtg.legal
650 White Drive, Ste. 100
Las Vegas, Nevada 89119
Telephone 725-777-3000
*[Proposed] Attorneys for Debtor*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-18-10453-LED |
| U.S.A. DAWGS, INC., | Chapter 11 |
| Debtor. | Date:   March 20, 2018<br>Time:  9:30 a.m. |

**DEBTOR'S OPPOSITION TO CROCS, INC.'S MOTION FOR (I) A DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO ADJUDICATION OF PENDING SANCTIONS MOTIONS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA OR, IN THE ALTERNATIVE, (II) RELIEF FROM THE AUTOMATIC STAY TO PERMIT THE DISTRICT COURT TO RESOLVE MOTIONS FOR SANCTIONS**

U.S.A. Dawgs, Inc., debtor and debtor-in-possession ("Debtor"), by and through its undersigned proposed counsel, submits its opposition to Crocs, Inc.'s ("Crocs") motion (the "Motion") for *(I) A Determination That the Automatic Stay Does Not Apply to Adjudication of Pending Sanctions Motions in the United States District Court for the District of Nevada or, in the Alternative, (II) Relief from the Automatic Stay to Permit the District Court to Resolve Motions for Sanctions* [EFC No. 80]. This Opposition is based on the following memorandum of points and authorities, the record in the above-captioned case, the record in *U.S.A. Dawgs, Inc. et al. v. Crocs, Inc.*, No. 2:16-cv-1694 (D. Nev.) (the "2016 Nevada Litigation") and *U.S.A. Dawgs, Inc. v. Crocs, Inc. et al.*, No. 2:17-cv-02054 (D. Nev.) (the "2017 Nevada Litigation"), judicial notice of which is hereby requested, and any argument by counsel at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTORY STATEMENT

Crocs' Motion is based on a false factual premise. It states on its first page that sanctions motions filed by Crocs against Debtor are "currently pending" and "fully briefed and ripe for decision." Crocs follows this incorrect premise to seek relief from this Court in the form of a "determination that the automatic stay does not apply," or in the alternative "relief from the automatic stay." In its effort to tell its side of the story and paint Debtor in a bad light – that is, that Crocs believes that Debtor's conduct in a fiercely contested litigation dispute warrants sanctions – Crocs all but ignores critical facts, including that (i) the District Judge in Nevada already determined that the automatic stay does in fact apply to Crocs' sanctions motions, and (ii) the District Judge denied Crocs' motions (without prejudice), so none are currently "fully briefed" or "pending."

That is, Crocs' first request for relief pertaining to whether its sanctions motions fall within the scope of the automatic stay amounts to a request for this Court to substitute its judgment for that of the District Judge's. In doing so, Crocs presents no argument or precedent as to how this would be procedurally proper. Under Ninth Circuit law, the District Court has jurisdiction to decide whether the automatic stay applies to a proceeding before it. Because the District Court properly exercised its authority, this Court should deny Crocs' first request on this basis alone. Even ignoring that, Crocs misstates the law on this issue in arguing that its sanctions motions are not subject to the automatic stay. There is no precedent in the Ninth Circuit supporting a determination that Crocs' sanctions motions should be excluded from the purview of the automatic stay because they are actions by a "governmental unit." Indeed, a decision on Crocs' sanctions motions serves absolutely no benefit to any governmental unit.

As to Crocs' request for alternative relief, Crocs ignores that its motions are not pending and that allowing it to proceed now has only predictable downsides for Debtor and the other creditors. There can be no question that allowing Crocs to file new sanctions motions will require both time and money for Debtor to respond, and ultimately provide no real benefit to Crocs. There is also no doubt that secured creditor GemCap Lending I ("GemCap") will attempt to use

any unnecessary motion practice on the part of Debtor to the detriment of Debtor and other creditors. Among other things, GemCap has already argued that Debtor should not be entitled to use any of its cash collateral and objected specifically to any use of funds towards litigation with Crocs. At the same time, GemCap asserts that if it were to have its way and Debtor were forced to liquidate, there would not be sufficient funds to pay any creditor other than GemCap. As a result, any unnecessary expenditure of cash by Debtor will only serve as fodder for GemCap to effectively seek to shut down Debtor and obtain a portion of its debt to the detriment of Debtor and all other creditors.

On the other hand, allowing Crocs to pursue sanctions now would serve no purpose and provide no benefit to Crocs or to the estate. Whether Crocs files its motions now or in a few months after Debtor exits bankruptcy will have no bearing on Crocs. Any requested relief therein could not be used against Debtor except upon further order of this Court. Therefore, there is no legitimate basis for Crocs to be permitted to proceed now. Because this weighs heavily in favor of maintaining the automatic stay, Crocs cannot meet its burden to show that the relevant factors weigh in favor of modifying it.

## II.  FACTUAL BACKGROUND

1.     As Debtor has previously explained, the legal dispute between Debtor and Crocs, whom have been direct competitors since Debtor's formation, stems from litigation that Crocs initiated in Colorado in 2006. See ECF No. 10, ¶¶ 10–16 (discussing background of litigation between Crocs and Debtor).

2.     In addition to suing Debtor, Crocs' litigation tactics also included suing Debtor's once largest customer, CVS, for infringement in both 2012 (*Crocs Inc. v. CVS Caremark Corp.*, No. 1:12-cv-02096 (D. Colo.)), and then, when CVS moved to dismiss the 2012 suit, in another district in June 2016 (*Crocs Inc. v. CVS Health Corp.*, No. 9:16-cv-80964 (S.D. Fla.) ("Florida Litigation").

3.     Up until then, Crocs' claims against Debtor related to two patents that it asserted. However, Crocs asserted a third patent, referred to as the '465 patent, for the first time against CVS. See Florida Litigation, ECF No. 1, ¶ 14.

4.     A few weeks later, Crocs moved for leave to amend its complaint in the ten-year-old litigation against Debtor to add the same patent to that case. See *Crocs Inc. v. Effervescent Inc. et al.*, No. 06-cv-605 (D. Colo), ECF No. 229.

5.     Because Debtor believed that Crocs' actions were intended to drain Debtor's funds by forcing it to litigate the '465 patent around the country (both on behalf of its customer CVS, whom Debtor indemnified, and on behalf of itself), and because Debtor believed it was improper for Crocs to add a new patent claim to a complaint it filed ten years prior,[1] Debtor filed a lawsuit in its home district of Nevada seeking a declaratory judgment concerning the patent.

6.     While Crocs has since claimed that this lawsuit was filed for an improper purpose, as it turns out, the U.S. Supreme Court issued a decision in *TC Heartland LLC v. Kraft Foods Group* in June 2017 holding that a seller of goods can only be sued for patent infringement where it has a physical presence, meaning that Crocs could only sue Debtor for infringing the '465 patent in Nevada, and Debtor's lawsuit could not possibly be "anticipatory" as Crocs claims. See *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct. 1514 (2017).[2]

7.     The 2017 Nevada Litigation was initiated by Debtor after it obtained emails indicating that Crocs had likely utilized its confidential information, hosted by a third party, to harm Debtor's business. Debtors initially pursued every means possible to keep the matter out of litigation, but Crocs and the third party refused to cooperate, necessitating the initiation of a lawsuit by Debtor.

8.     When Debtor later dismissed the 2017 Nevada Litigation, Crocs moved for sanctions. As Debtor explained in its opposition to Crocs' motion, Debtor diligently investigated its claims prior to filing suit and had a reasonable basis to initiate the lawsuit. Moreover, the entire litigation could have been avoided if Crocs would have turned over the discovery it was

[1] Indeed, the Magistrate Judge ultimately denied Crocs' motion seeking leave to amend its complaint on this very basis.

[2] A full explanation of the genesis of the 2016 Nevada Litigation as well as the fact that the U.S. Supreme Court's decision in *TC Heartland* bars any possible sanctions by Crocs for the filing of the declaratory judgment lawsuit is provided in Debtor's motion papers which it submitted to the Nevada District Court. See, e.g., 2016 Nevada Litigation, ECF Nos. 38, 43, 48.

1   eventually compelled to produce in the litigation anyway.[3]

2       9.      Their lack of merit notwithstanding, Debtor vigorously opposes the motions that

3   Crocs filed and will continue to do so in the future.

4       10.     As of January 31, 2018, the date that Debtor filed its voluntary petition, Crocs'

5   motions for sanctions were pending in both the 2016 Nevada Litigation and the 2017 Nevada

6   Litigation.

7       11.     The day after it filed its petition, Debtor filed notices of bankruptcy with the

8   Nevada District Court informing the Court that it had filed a petition for bankruptcy. See 2016

9   Nevada Litigation, ECF No. 56; 2017 Nevada Litigation, ECF No. 50.

10      12.     One week later, the Nevada District Court *sua sponte* issued an order in each case

11  denying the pending motions without prejudice and staying the proceedings until the instant

12  bankruptcy proceedings are concluded. In particular, on February 7, 2018, the District Judge in

13  the 2016 Nevada Litigation noted that Debtor filed a notice of bankruptcy on February 1, 2018,

14  and that the outstanding motions in the case, which related only to Crocs' motion for sanctions,

15  were all within the purview of the automatic stay. See Exhibit 1. The Court then ordered the

16  action stayed "pending termination plaintiff's bankruptcy proceeding," and denied Crocs' motion

17  for sanctions without prejudice.[4] *Id.* That same day, the District Judge issued a similar order in

18  the 2017 Nevada Litigation. See Exhibit 2.

19      13.     Thus, in both instances, the District Court was well aware that the only matter in

20  front of it related to Crocs' sanctions motions, and in each instance, the District Court ruled that

21  the automatic stay was applicable and denied the motion for sanctions without prejudice. As a

---

[3] A summary of the 2017 Nevada Litigation and the objective lack of any factual or legal basis for Crocs' sanctions motion is set forth in Debtor's briefing submitted to the Court in that case. See, e.g., 2017 Nevada Litigation, ECF No. 47.

[4] In its Motion, beyond incorrectly asserting that its sanctions motions remain pending and are "fully briefed" Crocs refers to the denial of Debtor's supplementation of its prior briefing. This is of no moment. The only reason that debtor sought to supplement its briefing was because facts and law became available to it that did not exist when it filed its briefing in the first instance. If and when Crocs refiles its motions for sanctions, Debtor will include all of these points in its pertinent responses. However, this will require additional preparation effort by Debtor, and will not allow Debtor to simply resubmit its previous papers, even if that is what Crocs chooses to do.

result, there are no motions currently pending before the District Court and both cases are currently stayed by order of that court.

## III.  ARGUMENT

**A.      The District Judge's Ruling that the Automatic Stay Is Applicable to Crocs' Sanctions Motions Should Not Be Disturbed.**

With respect to Crocs' first request for relief, Crocs argues that case law indicates that 11 U.S.C. § 362(b)(4) should be interpreted such that the automatic stay does not apply to the sanctions motions it previously filed in the Nevada District Court. See Motion at 5–9. While Crocs' analysis of the law is at best incomplete, as explained below, Crocs ignores a fundamental flaw with its request: the Nevada District Court already ruled on this issue. Because the Nevada District Court was within its power to do so, this Court need not determine whether the automatic stay is applicable.

1.      **A District Court Has Jurisdiction to Determine Whether the Automatic Stay Applies to Proceedings Before It.**

The Ninth Circuit has examined on whether it is proper for a district court to determine whether the automatic stay applies to a proceeding over which the district court otherwise has jurisdiction, and opined that it is. For example, this precise issue was before the Ninth Circuit in *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005). In that case, the Ninth Circuit specifically reviewed the issue because the district court had "believed that its jurisdiction to determine whether the automatic stay applied to the suit before it was questionable." Id. at 1105.

In doing so, the Ninth Circuit analyzed the two previous decisions that caused the district court to express concern that it did not have jurisdiction to determine the applicability of the automatic stay and determined that the district court's concern was "unfounded." Id. (reviewing *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) and *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000)). The Court noted that "[n]either case casts doubt on a district court's ability to decide for itself whether proceedings pending before it are subject to an automatic stay" and held "in accordance with established law, that a district court has jurisdiction to decide whether the

automatic stay applies to a proceeding pending before it, over which it would otherwise have jurisdiction." [5] Id. at 1106–07.

Here, the District Court has already made its determination. In both the 2016 Nevada Case and the 2017 Nevada Case, the District Court issued an order noting that the only outstanding motions in each respective case were related to Crocs' motions for sanctions. See Exhibit 1; Exhibit 2. In both instances the Court found that "[Debtor]'s bankruptcy petition operates as an automatic stay on the instant action" and ordered the respective actions stayed "pending termination of [Debtor]'s bankruptcy proceeding." Id.

As the District Court had proper jurisdiction to issue its orders, a motion to this Court is not the proper vehicle for Crocs to seek relief. Crocs' first request for relief should be denied on this basis alone.

2.    **Crocs Incorrectly Asserts that the Automatic Stay Is Inapplicable to Sanctions Motions**

Crocs argues that 11 U.S.C. § 362(b)(4) provides a carveout of the automatic stay for the adjudication of a motion for sanctions under the rationale that a sanctions motion is "an action or proceeding by a governmental unit … to enforce such governmental unit's … police and regulatory power …". Motion at 5–6. In support of its argument, Crocs refers to and relies on *Alpern v. Lieb*, 11 F.3d 689 690 (7th Cir. 1993) and *Berg v. Good Samaritan Hospital*, 198 B.R. 557, 560 (B.A.P. 9th Cir. 1996). See Motion at 6–7. But more recent cases that have considered the rationale in *Alpern* and the circumstances of *Berg* indicate that any shield of sanctions proceedings from the automatic stay should be limited to those involving public policy and should not extend to those that adjudicate private rights, including instances where one litigant moves for sanctions against another.

---

[5] The Ninth Circuit referred to a number of cases where a federal court decided the applicability of the automatic stay, including *NLRB v. Continental Hagen Corp.*, 932 F.2d 828 (9th Cir. 1991), *NLRB v. Twin Cities Elec.*, 908 F.2d 108 (9th Cir. 1990), *Commodity Futures Trading Comm'n v. Co Petro Marketing Group, Inc.*, 700 F.2d 1279 (9th Cir. 1983), *Chao v. Hospital Staffing Servs., Inc.*, 270 F.3d 374, 384–85 (6th Cir. 2001), *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir. 1986), *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986), *In re Baldwin-United Corp.*, 765 F.2d 343, 347 (2d Cir. 1985), and *SEC v. First Fin. Group of Texas*, 645 F.2d 429 (5th Cir. 1981). Id. at 1106–07. The Court further noted that it was "aware of no case holding to the contrary." Id. at 1107.

For example, in 2014 the Northern District of Georgia was faced with the same argument that Crocs presents here. That Court considered *Alpern* and *Berg* in detail and determined that they should not be applied to exclude sanctions motions filed by one litigant against another from an automatic stay. See *In re Chintella*, No. 13-73481, 2014 WL 3672882, at *5–8 (N.D. Ga. June 20, 2014). With respect to *Alpern*, the Court drew a distinction between the cases cited in *Alpern* as involving "actions either initiated or continued by a court or a state bar association, both of which satisfy the definition of governmental unit in 11 U.S.C. § 101(27)." Id. at *5. The Court further noted that "many of the cases later relying on the rationale in *Alpern* involve courts acting sua sponte, not on the motion of an individual," and specifically cited *Berg* as one such case. *Id.* (citing *Berg*, 230 F.3d at 1167). The Court concluded that "[i]t is less clear that a private party asking a court to award sanctions is acting as a governmental unit, rather than a private party seeking to vindicate private rights." Id.

A similar analysis was set forth in *In re Banalcazar*, 283 B.R. 514, 532 (Bankr. N.D. Ill. 2002). In that case, the Court, referring to *Alpern* and *Berg* noted that "courts are not required to act through agents in enforcing Rule 11" and that "a private individual or organization pursuing Rule 11 sanctions cannot be an 'agent' of the court according to the usual understanding of agency, since that understanding requires the agent to act at the direction of its principal." *Id.* (citing *Restatement (Second) of Agency* § 1 (1958)). The Court therefore concluded that "the *Alpern* holding that privately initiated Rule 11 proceedings are within the scope of § 362(b)(4) may be subject to question." Id.

Crocs presents *Berg* as the case that extended the questionable ruling in *Alpern* into the Ninth Circuit. Motion at 7. But this misrepresents *Berg*. While Crocs asserts that "[i]n *Berg*, sanctions were awarded against an attorney" (id. at 6–7), this fails to mention the key fact that *Berg* was an instance of *sua sponte* sanctions. See *Berg*, 230 F.3d at 1167 (noting that sanctions were previously assessed against attorney Berg by the same Court during the earlier appeal of the underlying case).

In contrast to Crocs' argument, the legislative history of § 362(b)(4) indicates that it was "intended to be given a narrow construction in order to permit governmental units to continue to

pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 CONG. REC. H 11,089 (1978). The Ninth Circuit has implemented this by applying the "public policy test," which is not satisfied if an action "is brought primarily to advantage discrete and identifiable individuals or entities rather than some broader segment of the public." *Lockyer*, 398 F.3d at 1109. Because the sanctions motions would be brought by Crocs, not a governmental unit, there is no basis for excluding them from the automatic stay.

While Crocs lacks supporting applicable law, the facts here weigh even more in favor of a determination that the automatic stay applies to sanctions motions brought by Crocs. That is because here, the question is not whether Crocs' motions will be in front of the Nevada District Court but when. If the instant motion is denied Crocs can bring its sanctions motions when the stay is otherwise lifted in a few months. As long as the motions will eventually be heard, there is no public policy benefit to allowing Crocs to bring the motions now as opposed to a few months from now. It is clear why Crocs prefers to go forward now. It knows that the amount of money and time that Debtor will be able to allocate to its litigation against Crocs is necessarily limited as Debtor is currently primarily focused on its reorganization efforts. The best way for Crocs to gain a tactical advantage in its litigation with Debtor is for it to force Debtor to expend its presently very limited resources doing anything except ensuring that it can successfully exit bankruptcy, or to a lesser extent, prosecuting its own claims against Crocs. Further, it is evident that the Nevada District Court does not see an exigent need to enforce public policy via Crocs' sanctions motions, otherwise it would not have issued the stay orders. All of these facts can only lead to one conclusion: Crocs' motion, and its underlying sanctions motions, have nothing to do with public policy. They are for Crocs' own litigation advantage. As a result, Crocs' pursuit of sanctions falls squarely within the purview of the automatic stay.

. . .

. . .

. . .

. . .

**B.    The Automatic Stay Should Not Be Modified.**

    1.    **Under the Applicable Legal Standard for Modification of the Automatic Stay, Crocs Bears the Burden to Establish Cause.**

Section 362(d)(1) only authorizes relief from the automatic stay upon the movant's establishment of "cause." 11 U.S.C. § 362(d)(1). "'Cause' has no clear definition and is determined on a case-by-case basis." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985). As this Court has previously explained, "courts in the Ninth Circuit have granted relief from the stay under §362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the nonbankruptcy suit involves multiple parties or is ready for trial." *Adelson v. Smith (In re Smith)*, 389 B.R. 902, 918-19 (Bankr. D. Nev. 2008).

The burden of proof on a motion to modify the automatic stay is shifting, and first rests on the moving party, which must establish a prima facie case that cause exists. Id. (citing *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990)); *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d. Cir. 1999). If and only if a prima facie case is established, the burden shifts to the debtor to show that relief from the stay is unwarranted; however, if the movant fails to meet its initial burden, relief should be denied. Id.

This Court has previously adopted twelve non-exclusive factors for determining whether the stay should be lifted to allow a creditor to continue pending litigation in a nonbankruptcy forum. Id. (citing *Sonnax*, 907 F.2d at 1286; *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)). The factors are as follows:

1.  Whether the relief will result in a partial or complete resolution of the issues;

2.  The lack of any connection with or interference with the bankruptcy case;

3.  Whether the foreign proceeding involves the debtor as a fiduciary;

4.  Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5.  Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(F);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay on the parties and the "balance of hurt."

*Smith*, 389 B.R. at 918-19. Each factor is not relevant in every case, nor must each factor be given equal weight. Id. at 919.

## 2. **Crocs Has Not Carried Its Burden.**

As set forth in *Curtis*, "[t]he most important factor in determining whether to grant relief from the automatic stay to permit litigation against the debtor in another forum is the effect of such litigation on the administration of the estate. Even slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *Curtis*, 40 B.R. at 806. Here, Crocs asserts that factor 12 (the impact of the stay on the parties and the "balance of hurt") supports relief from the stay but does not explain how. Motion at 10–11. Even a cursory examination of this factor indicates that it weighs heavily against the relief that Crocs seeks.

The potential harm to Debtor is readily apparent. Responding to motions that Crocs will file if the stay is modified will cost Debtor both time and money as, among other things, Debtor will need to reengage its counsel of record in the two litigations to respond to any motions Crocs files. First, and critically, Debtor needs to focus its attention right now on reorganizing so that Debtor may obtain the greatest benefit for all of its creditors and its estate. Meanwhile, GemCap, a secured creditor, continues to oppose Debtor's course of action in this bankruptcy proceeding.

Notably, GemCap asserts that Debtor should not be entitled to use any of its cash collateral and will undoubtedly oppose any reorganization plan that Debtor presents.[6] Based on GemCap's actions to date, it is clear that any unnecessary expenditure of funds by Debtor, including on legal fees expended in responding to motions filed by Crocs, will simply serve as additional fodder for GemCap to use against Debtor. If GemCap gains an advantage in this proceeding, it may affect all creditors.

GemCap's efforts against Debtor have also required Debtor to use its available efforts in moving this proceeding forward, including expediting its efforts to formulate a plan to exit bankruptcy. As the Court is aware, Debtor has already started working with a private investment bank and advisory firm that specializes in bankruptcy proceedings to make this happen. See, e.g., ECF No. 118. Debtors resources are clearly best used right now serving to benefit its creditors.

In contrast, there is no potential harm to Crocs if the stay is not modified now. If the stay remains in place, Crocs can file motions for sanctions in a few months when this proceeding concludes, or when additional time and resources are available to address the same. At that time, Crocs will be in no worse position than if it files the motions today.

As a result, factor 12 weighs heavily in favor of a stay, and this factor alone can and should be dispositive. See, e.g., *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836 (Bankr. S.D.N.Y. 1980). In *Penn-Dixie*, the Court considered whether to grant relief from the automatic stay in order to allow the movant to obtain the debtor's customer lists. *Id.* Even in an instance where the Court acknowledged that the relief sought was limited in scope, the Court denied the motion, emphasizing that furnishing the lists would:

> necessitate a deviation from the Debtor's duties and responsibilities in this reorganization, (not to mention the costs of compliance). That consideration cannot be shrugged off as de minimis. Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is

---

[6] Indeed, GemCap has argued repeatedly to this Court that Debtor should liquidate now, even while it asserts at the same time that no creditor other than GemCap will get paid. Compare ECF No. 105, ¶ 37 (GemCap's asserted liquidation value of Debtor's inventory) with ECF No. 30, ¶ 30 (GemCap's assertion as to the amount Debtor owed it just before this proceeding was initiated).

prohibited. In short, the Debtor should not be required to devote energy to this collateral matter at this juncture.

Id. at 836 (parenthetical in original).

For the same reasons, the second factor (lack of any connection with or interference with the bankruptcy case) and the seventh factor (whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties) also weigh in favor of denying the Motion. In summary, any funds or time that Debtor spends in opposing motions for sanctions that Crocs files will be time and money not spent on successfully reorganizing.

As to the remaining factors:

- The first factor (whether the relief will result in a partial or complete resolution of the issues) weighs against stay relief. As an initial matter, there are no issues presently pending in either Nevada action as all pending motions were denied by the Court. Moreover, even if Crocs is successful in either of its motions, all issues would still not be resolved as any proof of claim that Crocs would thereafter file would be subject to this Court's jurisdiction. See In re Sasson, 424 F.3d 864, 869–70 (9th Cir. 2005).

- The third factor (whether the foreign proceeding involves the debtor as a fiduciary) is neutral.

- The fourth factor (whether a specialized tribunal has been established) is neutral or weighs against stay relief as no such special tribunal has been established for the motions Crocs seeks the instant relief to bring.

- The fifth factor (whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation) weighs against stay relief as Debtor does not have insurance that has financial responsibility for claims Crocs has brought against it, including Crocs' sanctions motions.

- The sixth factor (whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question) weighs

against stay relief as Debtor does not function only as a bailee or conduit for the goods or proceeds in question.

- The eighth factor (whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c) and the ninth factor (whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(F)) do not weigh in favor of stay relief. Any sanctions imposed as a result of motions by Crocs – of which Debtor believes there would be none – would ultimately be subject to treatment through this Court.

- The tenth factor (the interests of judicial economy and the expeditious and economical determination of litigation for the parties) is neutral because there is currently no motion pending in front of the District Court, and the District Court will expend similar effort in deciding the motions on the merits regardless of whether they are brought now or a few months from now. Further, as the District Court noted in its orders, there are no other motions that were pending in either case so any delay in refiling the motions will not affect any issues other than the contemplated motions themselves.

- The eleventh factor (whether the foreign proceedings have progressed to the point where the parties are prepared for trial) weighs against stay relief as the District Court denied Crocs' motions for sanctions without prejudice. Notwithstanding Crocs' repeated assertion to the contrary, no motions are currently before the District Court and any motion (and the associated briefing schedule) would start from the beginning of the process.

. . .

. . .

. . .

GARMAN TURNER GORDON
650 White Drive, Ste. 100
Las Vegas, NV 89119
725-777-3000

14

## IV. <u>CONCLUSION</u>

Based on the forgoing, Debtor respectfully requests that this Court deny Crocs' Motion. In particular, this Court should (i) decline to disturb or, in the alternative, confirm the District Judge's ruling that the automatic stay applies to Crocs' sanctions motions; and (ii) decline to modify the automatic stay.

DATED this 6th day of March, 2018.

GARMAN TURNER GORDON LLP


By: */s/ Teresa Pilatowicz*
     TALITHA GRAY KOZLOWSKI, ESQ.
     TERESA M PILATOWICZ, ESQ.
     650 White Drive, Suite 100
     Las Vegas, Nevada 89119
     *[Proposed] Attorneys for Debtor*

# EXHIBIT 1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

U.S.A. DAWGS, INC., et al.,

Plaintiff(s),

v.

CROCS, INC.,

Defendant(s).

Case No. 2:16-CV-1694 JCM (PAL)

ORDER

Presently before the court is *U.S.A. Dawgs, Inc. v. Crocs Inc.*, case number 2:16-cv-01694-JCM-PAL.

On February 1, 2018, plaintiff U.S.A. Dawgs, Inc., filed a notice of bankruptcy. (ECF No. 56). The outstanding substantive motions in the case relate to defendant Crocs, Inc.'s motion for sanctions against plaintiff.[1]  *See* (ECF No. 42) (defendant's motion for leave to supplement its motion for sanctions); (ECF No. 43) (plaintiff's motion to reconsider the courts order on defendant's motion for sanctions). Therefore, pursuant to 11 U.S.C. § 362, plaintiff's bankruptcy petition operates as an automatic stay on the instant action. *See* 11 U.S.C. § 362(a).

Accordingly,

IT IS HEREBY ORDERED that this action is STAYED pending termination of plaintiff's bankruptcy proceeding.

IT IS FURTHER ORDERED that plaintiff shall notify the court of the termination of its bankruptcy proceeding within fourteen (14) days following termination thereof.

---

[1] Plaintiff also filed a motion for leave to file supplemental authority related to its motion to reconsider. (ECF No. 52).

James C. Mahan
U.S. District Judge

1    IT IS FURTHER ORDERED that defendant's motion for leave to supplement its motion

2    for sanctions (ECF No. 42) be, and the same hereby is, DENIED WITHOUT PREJUDICE.

3    IT IS FURTHER ORDERED that plaintiff's motion for reconsideration (ECF No. 43) be,

4    and the same hereby is, DENIED WITHOUT PREJUDICE.

5    IT IS FURTHER ORDERED that plaintiff's motion for leave to supplement (ECF No. 52)

6    be, and the same hereby is, DENIED.

7    IT IS FURTHER ORDERED that following notification of termination of plaintiff's

8    bankruptcy proceeding, the parties may renew their respective motions.

9    Accordingly,

10    IT IS SO ORDERED.

11    DATED February 7, 2018.

13    UNITED STATES DISTRICT JUDGE

# EXHIBIT 2

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

U.S.A. DAWGS, INC.,

                              Plaintiff(s),

        v.

CROCS, INC., et al.,

                              Defendant(s).

Case No. 2:17-CV-2054 JCM (NJK)

ORDER

Presently before the court is *U.S.A. Dawgs, Inc. v. Crocs Inc.*, case number 2:17-cv-02054-JCM-PAL.

On February 1, 2018, plaintiff U.S.A. Dawgs, Inc., filed a notice of bankruptcy. (ECF No. 50). The only outstanding substantive motion in the case is defendant Crocs, Inc.'s motion for sanctions against plaintiff.[1] Therefore, pursuant to 11 U.S.C. § 362, plaintiff's bankruptcy petition operates as an automatic stay on the instant action. *See* 11 U.S.C. § 362(a).

Accordingly,

IT IS HEREBY ORDERED that this action is STAYED pending termination of plaintiff's bankruptcy proceeding.

IT IS FURTHER ORDERED that plaintiff shall notify the court of the termination of its bankruptcy proceeding within fourteen (14) days following termination thereof.

IT IS FURTHER ORDERED that defendant's motion for sanctions (ECF No. 44) be, and the same hereby is, DENIED WITHOUT PREJUDICE.

_____

[1] Plaintiff filed a motion for leave to file a surreply to defendant's motion for sanctions. (ECF No. 49).

James C. Mahan
U.S. District Judge

1    IT IS FURTHER ORDERED that plaintiff's motion for leave to file a sur-reply (ECF No.

2    49) be, and the same hereby is, DENIED.

3    IT IS FURTHER ORDERED that following notification of termination of plaintiff's

4    bankruptcy proceeding, defendant may renew its motion for sanctions.

5    Accordingly,

6    IT IS SO ORDERED.

7    DATED February 7, 2018.

8    _____

9    UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 2 -