Brian E. Holthus, Esq.                                    *E-filed:  6/28/18*
Nevada Bar No. 2720
Email:  beh@juwlaw.com
JOLLEY URGA WOODBURY HOLTHUS & ROSE
330 S. Rampart Blvd., Ste. 380
Las Vegas, Nevada  89145
Telephone:  (702) 699-7500
Facsimile:  (702) 699-7555

Michael L. Bernstein, Esq.
Email:  michael.bernstein@arnoldporter.com
Charles A. Malloy, Esq.
Email:  charles.malloy@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C.  20001
Telephone :  (202) 942-5000
Facsimile :  (202) 942-5999

Benjamin Mintz, Esq.
Email:  benjamin.mintz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York  10019
Telephone:  (212) 836-8000
Facsimile:  (212) 836-8689

*Attorneys for Crocs, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-S-18-10453-LEB |
| U.S.A. DAWGS INC., | Chapter 11 |
| Debtor. | Date:    June 28, 2018<br>Time:    1:30 p.m. |

**OBJECTION OF CROCS, INC. TO MOTION OF DOUBLE DIAMOND DISTRIBUTION, LTD. TO REMOVE CERTAIN LITIGATION CLAIMS FROM THE LIST OF ASSETS BEING SOLD AT THE JUNE 29, 2018 AUCTION OF DEBTOR'S ASSETS OR, IN THE ALTERNATIVE, FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE TO DETERMINE THE VALUES AND BEST USE OF DEBTOR'S LITIGATION CLAIMS**

1
2
3
4
5
6
7

The motion by Double Diamond Distribution Ltd. ("**Double Diamond**") to remove certain litigation claims from the assets to be sold at the June 29, 2018 auction or, in the alternative, for the appointment of a chapter 11 trustee [ECF 431] (the "**Motion**"),[1] is an eleventh-hour attempt by the Debtor's owners – who are the same individuals that control Double Diamond – to disrupt and delay the auction and sale process agreed to by the Debtor and those individuals, announced in open Court, and ordered by the Court.  Crocs, Inc. ("**Crocs**") objects to the Motion and urges the Court to reject this gamesmanship by the Debtor's owners and the Debtor's alter ego, Double Diamond.[2]

8
9
10
11
12
13
14
15
16
17
18

All parties in this case – including Double Diamond,[3] as an alleged (and disputed) creditor of the Debtor – received notice of, and an opportunity to object to, the Debtor's May 25, 2018 motion to approve bid procedures [ECF 314] (the "**Bid Procedures Motion**") for the sale (the "**Sale**") of all or substantially all of the Debtor's assets, which include the Debtor's claims against (a) Crocs, Inc. (the "**Crocs Litigation Claims**"), (b) GemCap Lending I, LLC ("**GemCap**") and (c) parties, including the Debtor's insiders and affiliates, who may have received transfers avoidable under chapter 5 of the Bankruptcy Code (the "**Avoidance Actions**," and together with the Crocs Litigation Claims and the Debtor's claims against GemCap, the "**Litigation Claims**").  Double Diamond did not object to, or appear at the hearing on, the Bid Procedures Motion, and the Motion does not adequately explain Double Diamond's failure to raise whatever concerns that it, and its insiders, had about the Sale process at the same time all other parties were required to do so – when

19
20
21

[1] Pursuant to Local Rules 7008 and 9014.2, Crocs consents to entry of a final order on the Motion by the Court if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

22
23
24
25
26
27

[2] Double Diamond also filed a Request for Judicial Notice under F.R.E. 201 in support of the Motion [ECF 432] (the "**Rule 201Request**").  While judicial notice of the docket in this case is appropriate under F.R.E. 201(b), the Rule 201 Request is inappropriate to the extent it contains arguments and characterizations that do not meet the requirement of F.R.E. 201 because they are not facts that are (1) not subject to reasonable dispute by virtue of being generally known in the court's territorial jurisdiction or (2) capable of being accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Specifically, Crocs objects to (a) Paragraph 16, which asserts that the Debtor filed the Bid Procedures Motion "under great pressure from Crocs and GemCap" and (b) Paragraph 22, which (i) characterizes the period of time between the Petition Date and the Motion as "short" and (ii) asserts that Crocs' discovery requests resulted in "placing additional undue pressure on and distracting efforts by the Debtor" and that the discovery requests were "aggressive litigation tactics."  These assertions are not proper requests for judicial notice under F.R.E. 201.

28

[3] Debtor's counsel certified that the Bid Procedures Motion was served by mail on May 25, 2018 on all creditors on the case mailing matrix, including Double Diamond.  See Certificate of Service at p. 13 of 16 [ECF 319].

the Bid Procedures Motion was before the Court. All of the arguments Double Diamond now advances in its Motion could have been raised in response to the Bid Procedures Motion and accordingly were waived by Double Diamond. Double Diamond is not permitted to ignore the objection deadline, ignore the hearing on the Bid Procedures Motion and the entry of the order approving the bid procedures [ECF 383] (the "**Bid Procedures Order**"), and seek to re-litigate the very issues that were already presented to and considered by the Court when it entered the Bid Procedures Order.

The relief that Double Diamond seeks conspicuously ignores the standard under F.R.C.P. 60, made applicable to this case by Rule 9024 of the Federal Rules of Bankruptcy Procedure, to justify relief from the Bid Procedures Order. Absent grounds under Rule 60(b), the Court should not revisit or modify its properly entered Bid Procedures Order, and Double Diamond has offered no argument to warrant relief under Rule 60(b), nor could it meet that standard. Rule 60(b) "has been used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005) (internal quotation marks omitted). There is no basis for Double Diamond to assert that it should be relieved from the Bid Procedures Order as a result of mistake, surprise or excusable neglect under Rule 60(b)(1), or as a result of fraud, under Rule 60(b)(3). Nor is there "any other reason that justifies relief" from the Bid Procedures Order under Rule 60(b)(6). "Civil Rule 60(b)(6) imposes a very high threshold of proof. Its 'catch-all' provisions are available rarely, are solely an equitable remedy to prevent manifest injustice, and should be invoked only where extraordinary circumstances prevented a party from taking timely action to correct an erroneous judgment." *Pryor v. B Squared, Inc. (In re B Squared, Inc.)*, Nos. CC–12–1059–PaMkTa, CC–12–1229– PaMkTa, CC–12–1410 PaMkTa, 2013 WL 2382390 at *11 (B.A.P. 9th Cir. May 31, 2013). Double Diamond ignores the applicable legal standard – presumably because it knows that standard cannot be satisfied in this case – and instead argues that the Court should revisit the Bid Procedures Order and strip out assets that all of the parties involved, including the Debtor, agreed to include in the Sale, based on Double Diamond's self-serving prediction that the process approved in the Bid

Procedures Order will not maximize the value of the Debtor's assets. Even if Double Diamond's speculation about value maximization were correct, that is not a sufficient basis for the Court to modify or revisit its properly entered Bid Procedures Order under Rule 60(b), or otherwise.

Double Diamond's Motion represents an astounding about-face by the Debtor's principals, who own and control both the Debtor and Double Diamond. First, the Motion is directly inconsistent with the position taken by the Debtor when it agreed to, and advocated in favor of, entry of the Bid Procedures Order, which included the Sale and set the auction (the "**Auction**") to take place on June 29, 2018. Second, Double Diamond's assertion that the Litigation Claims should be removed from the assets subject to the Sale process or that, alternatively, a chapter 11 trustee should be appointed to determine the value of the Debtor Litigation Claims, is inconsistent with the Debtor's prior opposition to the appointment of a chapter 11 trustee pursuant to GemCap's *Motion to Dismiss or Appoint a Trustee for Bad Faith or, in the Alternative, Motion for Relief from the Automatic Stay or for Abstention* [ECF 45] (the "**GemCap Trustee Motion**"), and the Debtor's position that the Litigation Claims would have value to creditors only in the context of a reorganization plan because it is unlikely a trustee would pursue them. Indeed, with respect to the Avoidance Actions, the Debtor argued as recently as June 5 that they have no value.[4] Similarly, the Debtor's plan placed no value on and effectively waived the estate's claims against GemCap. *See* Liquidation Analysis accompanying Debtor's Disclosure Statement [ECF 334] at Ex. 2. As discussed below, the Debtor and Double Diamond are the exact same people – simply wearing different hats. The Debtor's insiders are judicially estopped from taking one position in connection with their proposed plan, and asserting a directly contrary position in the Motion.[5]

---

[4] *See Debtor U.S.A. Dawg's Opposition to Amended Motion of Crocs, Inc. pursuant to 11 U.S.C. §§ 105(a) and 1109(b) for Entry of an Order Granting It Standing and Authority to Prosecute Avoidance [] Actions against Certain Insiders and Affiliates on Behalf of the Debtor's Estate or, in the Alternative, for Appointment of an Examiner pursuant to 11 U.S.C. § 1104(c)(1)* [ECF 344] at p. 12, 14-15 and *Declaration of Steven Mann in Support of Debtor U.S.A. Dawg's Opposition to Amended Motion of Crocs, Inc. pursuant to 11 U.S.C. §§ 105(a) and 1109(b) for Entry of an Order Granting It Standing and Authority to Prosecute Avoidance [] Actions against Certain Insiders and Affiliates on Behalf of the Debtor's Estate or, in the Alternative, for Appointment of an Examiner pursuant to 11 U.S.C. § 1104(c)(1)* [ECF 345] at ¶ 4.

[5] *See New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him' … This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a

(Footnote Cont'd on Following Page)

Double Diamond's effort to exclude the avoidance actions from the Sale and Auction highlights the insiders' bad faith and reflects that the Motion is a blatant attempt to benefit the insiders at the expense of creditors and the estate. The Motion offers no explanation at all why excluding the Avoidance Actions from the Sale and allowing the Debtor's insiders – the primary targets of the Avoidance Actions – to control those actions would realize greater value than the Sale and Auction, particularly when the Debtor has already stated its belief that the Avoidance Actions have no value. To the contrary, the sole reason that Double Diamond and the insiders want to control the Avoidance Actions and prevent them from being sold is because they want to bury them and protect themselves from having to return the millions of dollars in preferences and fraudulent transfers that they have taken from the estate, to the detriment of creditors.

For all of these reasons, Double Diamond's belated and bad faith attempt to derail the Court-approved sale process should be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

On January 31, 2018 (the "**Petition Date**"), the Debtor commenced this chapter 11 case by filing a voluntary petition in this Court. During the chapter 11 case, the Debtor through its investment banker, Three Twenty-One Capital Partners, "undertook wide-ranging efforts to market Debtor and its assets in various forms to maximize its value and the recovery for Debtor's creditors. Three Twenty-One Capital Partners thoroughly canvassed the market and made contact with all likely acquirers or partners for Debtor and/or its Assets. As a result of these efforts, Debtor entered into negotiations with a number of potential investors and purchasers who evaluated Debtor's Assets and its financial positions. The highest and best offer was made by [Optimal Investment Group]." *Disclosure Statement to Accompany Debtor's Plan of Reorganization* [ECF 334] ("**Disclosure Statement**") V.E.4 at p. 32. On May 8, 2018, the Debtor filed a proposed Letter of Intent [ECF 265] with Optimal Investment Group ("**OIG**"), which was subsequently amended by a

_____

(Footnote Cont'd From Previous Page)

case on an argument and then relying on a contradictory argument to prevail in another phase'"). The purpose of judicial estoppel is to protect the integrity of the judicial process. *Id.*

revised Letter of Intent, also with OIG, dated May 14, 2018 [ECF 277] (the "**LOI**").  The Debtor intended that the transaction described in the LOI would serve as the basis for a plan of reorganization described in the Disclosure Statement.

Shortly after the Debtor filed the LOI, it reached an agreement with GemCap, which was set forth on the record at a hearing before the Court on May 17, 2018.  Under that agreement, GemCap would adjourn the GemCap Trustee Motion, the Debtor would pursue confirmation of a plan based on the transaction described in the LOI and GemCap would support that plan.  Also under that agreement, as a back-up to the LOI, in the event that the Debtor and OIG did not consummate the transaction described therein, the Debtor would implement a bidding and sale process for all or substantially all of the its assets pursuant to 11 U.S.C. § 363 – with the Auction proceeding on June 29, 2018 in the event that OIG did not fund $4.95 million by June 15, 2018.  *See* Disclosure Statement V.E.2 at p. 29.  In its Motion, Double Diamond fails to acknowledge that the Debtor and its insiders – the same insiders who control Double Diamond – reached this consensual resolution with GemCap, and that the Court and all parties in this case proceeded on the basis of that agreement.

On May 25, 2018, the Debtor filed the Bid Procedures Motion, seeking approval of bid procedures (the "**Bid Procedures**") for the sale of all or substantially all of the Debtor's assets, including the Litigation Claims.  [ECF 314].  The deadline to object to the Bid Procedures Motion was June 4, 2018, and a hearing on the Bid Procedures Motion was scheduled for June 8, 2018. [ECF 316].  On May 29, 2018, the Debtor filed a Certificate of Service stating that the Bid Procedures Motion was served on Double Diamond by U.S. Mail.  [ECF 319].  (Of course, even without service Double Diamond knew about the Bid Procedures Motion because Double Diamond and the Debtor are the same people).  The Bid Procedures provided for a due diligence period, set forth bid deadlines together with the requirements for bids to be considered a "Qualified Bid," and described the process for the Auction and Sale.  The Bid Procedures Motion clearly and unambiguously stated that all of the Debtor's assets including the Litigation Claims would be the subject of the Sale and the Auction.  Crocs filed a limited objection to the Bid Procedures [ECF 332].  No other party, including Double Diamond, objected to the Bid Procedures.  In advance of

the hearing on the Bid Procedures Motion, Crocs and the Debtor conferred and consensually resolved Crocs' objections to the Bid Procedures. The Court conducted a hearing on the Bid Procedures Motion on June 8, 2018 and approved the relief requested. On June 18, 2018, the Court entered the Bid Procedures Order.

The LOI contemplated that OIG would make a $4.95 million payment into escrow to fund the Debtor's proposed plan of reorganization by June 15, 2018. *See* LOI dated May 14, 2018 [ECF 277-1]. Absent such funding, the Debtor agreed that it would proceed to sell substantially all of its assets pursuant to the Bid Procedures Order, with a credit bid by GemCap serving as the stalking horse bid. *See* Disclosure Statement V.E.2 at p. 29. OIG did not make the payment by June 15, 2018 and, on the same date, the Debtor filed a *Notice of Auction on June 29, 2018* [ECF 380] (the "**Auction Notice**"), pursuant to which the Debtor notified all parties in interest that, as set forth in the Bid Procedures Order, bids would be due by June 25, 2018 and the Auction would go forward in this Court on June 29, 2018.

On June 26, 2018, after the bid deadline had expired and bids had been made – and less than three days before the scheduled Auction  – Double Diamond filed the Motion, seeking to remove Litigation Claims from the list of assets to be sold at the Auction, or for the appointment of a chapter 11 trustee to analyze the Litigation Claims.

## II.    OBJECTION TO DOUBLE DIAMOND'S MOTION

### A.    Double Diamond's Motion Exposes A Blatant Conflict Of Interest By The Ownership Of Double Diamond And The Debtor

The Motion exposes a blatant conflict of interest resulting from an attempt by the individuals who own and control both Double Diamond and the Debtor to appropriate for themselves whatever value they believe the Litigation Claims hold, while at the same time shielding themselves from any potential liability associated with the Avoidance Actions against insiders that are included among the Litigation Claims they seek to exclude from the Auction and Sale. This conflict of interest is highlighted by the *Emergency Motion for Leave to Withdraw as Counsel for Debtor U.S.A. Dawgs, Inc.* [ECF 452] (the "**Withdrawal Motion**"), filed by Debtor's counsel,[6]

---

[6] Crocs does not intend to oppose the Withdrawal Motion to extent it does not have the effect of delaying the Auction or completion of the Sale.

which suggests that the Manns, who control the Debtor and Double Diamond, are seeking to direct the Debtor to take actions in furtherance of their own personal interests and inconsistent with the Debtor's fiduciary duties. *See* Withdrawal Motion at p. 4 (noting a lawyer may withdraw from representing a client under Nevada Rule of Professional Conduct 1.16(b) where, *inter alia*, a "client insists upon taking action that the lawyer considers repugnant or with which the lawyer has fundamental disagreement").

### 1.    Double Diamond Is The Debtor's Alter Ego

The connections between the Debtor and Double Diamond are so pervasive that Double Diamond is the Debtor's alter ego. According to the Disclosure Statement, Double Diamond is a "Canadian entity with substantially similar ownership as Debtor." *See* Disclosure Statement at V.B. But the overlapping ownership of the Debtor and Double Diamond goes beyond being substantially similar: Double Diamond and the Debtor have identical ownership. The four individuals (Steven Mann, Barrie Mann, Angie Friesen and Jody Veer) who indirectly own 100% of the equity interests of the Debtor are the same four individuals who indirectly hold 100% of the equity interests of Double Diamond, with Steven and Barrie Mann collectively controlling more than three-quarters of the equity of Double Diamond and 80.9% of the equity of the Debtor.[7] Moreover, the Manns are officers of the Debtor – Steven Mann holds the title of President-CEO and Barrie Mann is the Debtor's Secretary-Treasurer – and, upon information and belief, one or both of them also are the officers of Double Diamond. *See* Statement of Financial Affairs [ECF 77] ("**SOFA**") at Part 28. Thus, the Manns hold controlling equity interests in both the Debtor and Double Diamond, and they direct the Debtor's and Double Diamond's operations by virtue of that control and their management positions.

Double Diamond is not only under common control with the Debtor, but it is also listed by the Debtor as a creditor and contract counterparty in this chapter 11 case. Specifically, the Debtor's Amended Schedules state that Double Diamond holds a liquidated, contingent and undisputed

---

[7] The direct equity interests in the Debtor are owned by four separate corporate entities, each of which is owned by the four individual owners. The same structure (with different corporate entities) is used for Double Diamond, with the same four individual owners, albeit with modestly different ownership percentages for each.

general unsecured claim in the amount of $1,561,779.05, and also identify Double Diamond as a counterparty to an "Intercompany Services Agreement." *See* Amended Schedule E/F at p. 2 and Amended Schedule G at p. 1 [ECF 143]. As detailed in Crocs' Motion for Derivative Standing [ECF 287] (the "**Derivative Standing Motion**"), and as described further below, Double Diamond is the recipient of millions of dollars of avoidable preferences and fraudulent transfers. In addition to Double Diamond's status as an alleged creditor and recipient of prepetition payments, the Disclosure of Compensation of Attorney for Debtor(s) filed with the Debtor's SOFA states that the payment of fees to the Debtor's counsel, Garman Turner Gordon LLP, "has been guaranteed by Double Diamond Distribution Ltd." [ECF 77]. In other words, Double Diamond – an alleged creditor, and the recipient of substantial apparently avoidable transfers, and the party that is now seeking to derail the Auction and Sale that was agreed to by the Debtor – is paying the Debtor's counsel's fees, to the extent the Debtor is not able to do so. Finally, the Debtor disclosed that the accountants and bookkeepers who maintained the Debtor's books and records during the two years before the Petition Date are both located at or affiliated with Double Diamond. *See* SOFA and Amended SOFA at Part 26.a [ECF 77 and 145].

In summary, it is essentially impossible to untangle the ownership, management and control of the Debtor and Double Diamond. The two entities are owned by the same individuals, Double Diamond has guaranteed the payment of fees to the Debtor's bankruptcy counsel, Double Diamond is listed as a creditor and contract counterparty of the Debtor, and persons employed by or affiliated with Double Diamond are identified as the parties that maintain the Debtor's books and records.

**2.     Double Diamond Seeks To Exclude Avoidance Actions Against It And Its Owners From The Sale To Limit Its Own Liability**

With no explanation, Double Diamond's Motion asks the Court to exclude from the Assets subject to the Sale "any investigation and prosecution of possible avoidance claims." Motion at p. 2. This request highlights Double Diamond's and its insiders' bad faith in connection with the Motion. As Crocs explained in connection with its Derivative Standing Motion, the Debtor disclosed in its amended Statement of Financial Affairs [ECF 145] (the "**Amended SOFA**") that, among the payments made within one-year before the Petition Date that benefitted an insider were

one or more payments to Double Diamond, with a value of $225,000.  *See* Amended SOFA at Part 4.  And, in addition to the payment(s) disclosed in the Amended SOFA, in *Crocs, Inc. v. Effervescent, Inc, et al.*, No. 06-cv-00605-PAB-KMT (D. Colo.) (the "**Patent Litigation**"), the Debtor produced documents that reveal it made payments of many millions of dollars more to Double Diamond in the years prior to the Petition Date, purportedly for "Administrative Fees," as well as payments or "loans" to entities that hold shares in Double Diamond.  Further, the Amended SOFA discloses nearly $1 million in transfers to or for the benefit of Steven and Barrie Mann within one year prior to the Petition Date, and discovery in the Patent Litigation also indicates that additional transfers were made to or for the benefit of the Manns prior to the Petition Date.  Accordingly, the Avoidance Actions include millions of dollars of claims against Double Diamond and the Manns.

Double Diamond's request to exclude the Avoidance Actions from the Assets subject to the Sale is a blatant attempt to bury the Avoidance Actions and prevent them from ever being pursued.  In contrast to its assertions that the Crocs Litigation Claims have value, Double Diamond does not even attempt to speculate about the value of the Avoidance Actions or explain how excluding the Avoidance Actions from the assets subject to the Sale would benefit unsecured creditors.  Indeed, the Debtor and Steven Mann have already taken the position before the Court that the Avoidance Actions do not have value, thus demonstrating that Double Diamond's and the Manns' true intent underlying the Motion and the request to exclude the Avoidance Actions from the Auction and Sale is not to maximize value for the benefit of creditors, but to prevent the Avoidance Actions from being pursued.

Accordingly, the incurable conflicts of interest that result from Double Diamond being the Debtor's alter ego should preclude Double Diamond from attempting to disrupt the Sale process that the Debtor proposed, the Court approved and on which parties – both creditors and potential bidders – have relied.

### B.    Double Diamond Cannot Show Any Basis To Reconsider The Bid Procedures Order

The timing of Double Diamond's Motion reflects a bad faith effort by the Debtor's insiders to disrupt and derail the Sale and to retain control of the Litigation Claims – one of the assets to be sold under the Court-ordered Auction – for their own benefit.  Double Diamond sat on the sidelines, silent, while its alter ego, the Debtor, worked to obtain Court approval of the Bid Procedures, both as a critical element of GemCap's agreement to adjourn the GemCap Trustee Motion, and to address objections raised by Crocs.  The Debtor negotiated to resolve Crocs' objections, filed revised Bid Procedures, and then appeared at the June 8 hearing to ask the Court to enter the Bid Procedures Order.  Ten days later, after the Debtor filed the Auction Notice, the Court entered the Bid Procedures Order and it became immediately effective and enforceable on that date.  *See* Bid Procedures Order at ¶ 17.

It was not until the end of the day on June 22 – fourteen days after the Court held the hearing on the Bid Procedures Motion and approved the Bid Procedures, seven days after the filing of the Auction Notice, four days *after* the Court entered the Bid Procedures Order, and the Friday before the Monday deadline for parties to submit bids – that Double Diamond's counsel sent GemCap, Crocs and the Debtor an email, a copy of which is attached hereto as <u>Exhibit A</u>, seeking their agreement to adjourn the Auction and Sale or, alternatively, for consent to a hearing on the Motion on shortened notice.  Then, after waiting another four days from the date it sent the June 22 email, and just three days before the Auction, Double Diamond filed the Motion.  Double Diamond was served with the Bid Procedures Motion and did not object.  Accordingly, Double Diamond waived its rights to challenge the effects of the Bid Procedures Order, and the Motion, which seeks to undo the Bid Procedures Order, should be denied as a result of Double Diamond's waiver.

Because Double Diamond is seeking reconsideration of the Bid Procedures Order, the applicable standard is set forth in F.R.C.P. 60(b), made applicable to this case by Bankruptcy Rule 9024:

> Rule 60(b) permits a court to grant relief from a final order on a showing of mistake, surprise, or excusable neglect, Rule 60(b)(1); newly discovered evidence, Rule 60(b)(2); fraud, Rule 60(b)(3); a void judgment, Rule 60(b)(4); a satisfied or discharged judgment, Rule 60(b)(5); or other circumstances justifying relief, Rule 60(b)(6).

*In re Walker*, 332 B.R. 820, 829 (Bankr. D. Nev. 2005); *see also Sanders v. Progressive Cas. Ins. Co. (In re Sanders)*, 2007 Bankr. LEXIS 4269, *10 (BAP 9th Cir. Dec. 13, 2017).  None of the requirements for such relief are present.  Double Diamond ignores this standard and does not address Rule 60(b) in any respect in its Motion.  This is additional grounds for denial of the Motion.

### 1.    There Is No Mistake, Surprise, Excusable Neglect Or Fraud To Support Relief From The Bid Procedures Order

There is no basis for Double Diamond to assert mistake, surprise or excusable neglect under Rule 60(b)(1), or as a result of fraud, under Rule 60(b)(3), because the ***same individuals*** who, on behalf of the Debtor, (1) reached an agreement that absent plan funding by June 15, 2018, an auction and sale of the Debtor's assets would take place on June 29, 2018 and (2) authorized the Debtor to file the Bid Procedures Motion and pursue entry of the Bid Procedures Order, also own and control Double Diamond.  If Double Diamond's insiders were the victims of fraud, mistake, surprise or neglect – and they were not – it was caused entirely by their own actions, and they should not be permitted to seek relief from the Bid Procedures Order on that basis.  *See In re MSR Resort Golf Course, LLC*, No. 11-10372 (SHL), 2012 WL 3645328 at *4 (Bankr. S.D.N.Y. Aug. 23, 2012) ("ignorance or carelessness on the part of a litigant or an attorney will not provide grounds for Rule 60(b) relief"); *In re Devault Mfg. Co.*, 4 B.R. 382, 386 (Bankr. E.D. Pa. 1980) ("Rule 60(b)(1) is addressed to the discretion of the court and is based on the desire of equity to do justice, it is not meant to relieve a party of the consequences of his own mistake or ignorance").

### 2.    There Is No Newly Discovered Evidence To Support Relief From The Bid Procedures Order

Double Diamond does not identify any newly discovered evidence as a basis for reconsideration under Rule 60(b)(2).  First, the non-binding term sheet attached to Steven Mann's declaration in support of the Motion (the "**Bentham Term Sheet**") from Bentham IMF 1 LLC ("**Bentham**") is not "new."  It is dated December 5, 2017 – almost two months before the Petition Date.[8]

---

[8] Although Double Diamond asserts that Bentham "agreed to fund … litigation against Crocs" on January 23, 2018, *see* Motion at p. 15, Double Diamond provides no evidence of this alleged agreement, and instead only offers the non-binding and conditional Bentham Term Sheet that was executed more than a month earlier.  It appears the Bentham

(Footnote Cont'd on Following Page)

Second, the involvement of James Mann, whose Declaration states that he is the brother of Steven Mann[9] – and therefore is an "insider" of the Debtor[10] – as a potential bidder for the assets at the Auction, is certainly not "new evidence" that would justify relief under Rule 60(b).  Along with the other entities that submitted Qualified Bids, James Mann, or any entity that he is proposing to finance, presumably will be afforded a full and fair opportunity to submit a bid on assets at the Auction, including the Litigation Claims.

Moreover, James Mann's Declaration in support of the Motion states he has reviewed "a number of reports prepared by an accounting firm and law firms regarding the legal issues involved in the Crocs litigation actions, the potential damages that could be recovered by and against Crocs, and the risks involved with such litigation."  Mann Decl. at ¶ 8.  Notably, at a June 25 hearing before this Court, GemCap requested access to similar information.  The Debtor objected and GemCap's request was denied.[11]  These factors indicate that James Mann is a well-informed, and possibly unfairly advantaged, bidder who can adequately represent the interests of Double Diamond, with which he apparently is aligned.

Finally, contrary to Double Diamond's unsupported assertion that there is "a possible 'understanding'" between Crocs and GemCap regarding GemCap's use of its credit bid to acquire, and then settle, the Crocs Litigation Claims, *see* Motion at p. 4, Crocs responds unequivocally that no such discussions have occurred.

---

(Footnote Cont'd From Previous Page)

Term Sheet was intended only to provide Bentham with limited exclusivity to consider a funding commitment, and it states that it "reflects Bentham's continuing consulting review of the feasibility of such a transaction … this term sheet is not intended to be legally binding nor does it constitute a commitment or offer by any party to any possible funding transaction."  The Bentham Term Sheet was also subject to due diligence.  Bentham's agreement to fund is further conditioned on Bentham obtaining a lien senior to GemCap, which GemCap refused.  *See* Motion at p. 15-16.  The non-binding Bentham Term Sheet should be given minimal, if any, weight as an indication of value or strength of the Crocs Litigation Claims.

[9] *See* Declaration of James Mann filed in support of the Motion, [ECF 433] ("**James Mann Decl.**") at ¶ 5.  It is presumed that James Mann is also the brother of Barrie Mann, although James Mann's Declaration does not affirmatively state this.

[10] *See* 11 U.S.C. § 101(B)(vi) (defining "insider" to include a relative of an officer, director or person in control of a debtor corporation).

[11] The Court denied GemCap's request on the basis of the Debtor's assertion that the materials are protected by the attorney-client privilege.  If the Debtor or its representatives provided James Mann access to the same materials or information, it is unclear whether the Debtor may properly assert the attorney-client privilege.

Accordingly, there is no new evidence or changed circumstances that would support Double Diamond's extraordinary request for relief from the Bid Procedures Order.

### 3.    No Other Reason Justifies Relief From The Bid Procedures Order

Finally, there is no other reason that, under Rule 60(b)(6), would justify relief from the Bid Procedures Order.[12] "[U]nder Civil Rule 60(b)(6), a party seeking relief must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." *Pryor v. B Squared, Inc. (In re B Squared, Inc.)*, 2013 WL 2382390 at *11 (B.A.P. 9th Cir. May 31, 2013); *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 941 (9th Cir. 2007) ("a party who moves for relief under Rule 60(b)(6) "must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with . . . the action in a proper fashion."). Double Diamond cannot establish any circumstances beyond its control that prevented it from intervening with respect to the entry of the Bid Procedures Order in a timely manner. As set forth above, Double Diamond is the Debtor's alter ego, and its officers and shareholders had full knowledge of, and agreed to, the course of action that the Debtor was pursuing in connection with the Sale and Bid Procedures, the pursuit of the Bid Procedures Motion and the entry of the Bid Procedures Order. Double Diamond also received notice of the Bid Procedures Motion and elected not to object or take any other action in response.

In support of the Motion, Double Diamond argues that excluding the Litigation Claims from the Auction and Sale will benefit creditors. Even if Double Diamond were correct that excluding the Litigation Claims would achieve a better result for creditors (which is not true), that would not be a legitimate basis under Rule 60(b) or otherwise for the Court to modify the Bid Procedures Order. As Double Diamond acknowledges, the relevant standard for consideration of a sale is the Debtor's exercise of its business judgment. Here, the Debtor already exercised its business judgment when it determined to proceed with the Bid Procedures Motion and the Auction and Sale, and the Court approved that decision, after notice to parties-in-interest, when it entered the Bid

---

[12] The remaining grounds for relief under Rule 60 – a void judgment under Rule 60(b)(4) or a satisfied or discharged judgment under Rule 60(b)(5) – are inapplicable.

Procedures Order.  The Motion is not a proper vehicle to revisit the Debtor's exercise of its business judgment or the Court's approval thereof.

In addition, in considering a request for relief from an order under Rule 60(b)(6), courts weigh the potential for unfair prejudice to other parties that could result from granting Rule 60(b)(6) relief.  *See In re Teligent, Inc.*, 326 B.R. 219, 227 (S.D.N.Y. 2005) ("[i]n determining whether a movant has met its burden under Rule 60(b)(6), relevant considerations include … the absence of unfair prejudice to the opposing party if the requested relief is granted"); *In re Estillore*, Nos. EC-16-1147-JuTaB, EC-16-1151-JuTaB, 2017 WL 1371295 at *6 (B.A.P. 9th Cir. Apr. 12, 2017) (in considering a request for Rule 60(b)(6) relief, courts take into consideration "prejudice to other parties").  Here, parties other than Double Diamond have relied on Bid Procedures Order.  In particular, Crocs relied on the Bid Procedures Order when it agreed to adjourn an evidentiary hearing on the Derivative Standing Motion and related discovery requests – including document requests, three days' of depositions and an inspection of the Debtor's inventory – and to instead move forward with the Sale process.  Likewise, entry of the Bid Procedures Order was the cornerstone of the agreement by GemCap to adjourn the GemCap Trustee Motion.  Finally, parties interested in submitting a bid (including Crocs) relied on the Bid Procedures Order, and have been working over the past week, on an expedited basis, to conduct due diligence through the data room established by the Debtor's investment banker, to prepare their bid and the proposed asset purchase agreement, and have paid the deposit required by the Bid Procedures.  Under these circumstances, it is entirely inappropriate for Double Diamond to seek to delay the Auction and Sale.

### C.    The Relief Sought In Double Diamond's Motion Is Contradicted By The Debtor's Conduct And Assessment Of The Crocs Litigation Claims

In addition to contradicting the Sale process that the Debtor itself proposed and obtained Court approval of, and that other parties relied upon, the relief sought by Double Diamond is inconsistent with the position that the Debtor's (and Double Diamond's) insiders previously have taken in this case with respect to the Litigation Claims.  As noted above, as the Debtor's alter ego, Double Diamond is judicially estopped from adopting positions inconsistent with those taken by the Debtor.

From the beginning of this case, the Debtor has attributed "substantial value" to the Crocs Litigation Claims,[13] and in the Disclosure Statement the Debtor valued the Crocs Litigation Claims "in excess of $10,000,000." *See* Disclosure Statement V.A. at p. 21. However, the Debtor also asserted that, outside of a reorganization plan, the Crocs Litigation Claims would "have no value including because the pursuit of these litigation[s] would be time and costs [sic] intensive and would necessarily require the assistance of Debtor's principals, including Steven and Barrie Mann, who would no longer have an incentive to direct and pursue the litigation." *See* Disclosure Statement, Ex. 2 (Liquidation Analysis) at Note 2. Thus, in the Debtor's view, the value associated with the Crocs Litigation Claims would disappear if a trustee were appointed to pursue them. Yet, that is what Double Diamond appears to propose in the Motion, by seeking the appointment of a chapter 11 trustee to "determine the values of the Litigation Claims and their best use for the benefit of unsecured creditors." Motion at p. 3, 18.

The Court should be highly reluctant to credit the representations of Debtor's and Double Diamond's insiders, who are willing to make inconsistent statements to the Court depending on which of the entities they claim to be speaking for on a given day, and who are willing to adopt a different position from one they previously advanced to the Court when they believe it will serve their interests to do so. The Debtor's owners cannot, on the one hand, vigorously contest the GemCap Trustee Motion, *see* ECF 171 and 238, and claim that the Crocs Litigation Claims will have "no value" if a trustee were appointed to pursue them and, and then days later argue, through Double Diamond, for the appointment of a chapter 11 trustee to preserve the value of the Litigation Claims. Likewise, they cannot first take the position (in the Liquidation Analysis, and in their objection to the Derivative Standing Motion) that the Avoidance Actions have no merit, and no value, and then a couple of weeks later take the position that these same causes of action should be withdrawn from the Auction and Sale – after bids already have been made – so that they can generate more value for creditors.[14]

---

[13] *Omnibus Declaration of Steven Mann in Support of Debtor's Chapter 11 Petition, First Day Motions, and Employment Applications* [ECF 10] at ¶ 15.

[14] Further undermining their credibility, Double Diamond and the Manns now assert that the Debtor's claims against GemCap are credible and have value, Motion at p. 16-17, even though the Debtor was prepared to forego those claims

(Footnote Cont'd on Following Page)

Finally, Double Diamond's suggestion that the Debtor, Double Diamond and Crocs would, at this stage, conduct global mediation of their claims in the Patent Litigation, which has been pending for nearly twelve years, is ridiculous.  The characterization of the Patent Litigation that Double Diamond sets forth in the Motion is misleading and incomplete.  As Crocs has noted on several occasions in this case,[15] the facts belie Double Diamond's assertion that Crocs' claims against the Debtor and Double Diamond are "limited" and their claims against Crocs "far exceed" Crocs' claims.  *See* Motion at p. 15.  To the contrary, Crocs' claims against the Debtor exceed $76 million, and the Colorado District Court has dismissed all but one of the Debtor's and Double Diamond's affirmative claims against Crocs.  During the course of the Patent Litigation, the Debtor and Double Diamond have never made a serious proposal to settle the case, and as recently as one week ago the Debtor was pursuing a plan of reorganization predicated on resuming the Patent Litigation.  There is no credibility to the Double Diamond's suggestion that, after more than a decade, the Debtor and Double Diamond would now be willing to engage in good faith settlement negotiations, let alone be willing to make a significant payment to Crocs as would be required by Crocs to settle the matter.  At bottom, the Crocs Litigation Claims are a liability of the Debtor and Double Diamond and not an asset.  The very notion that Double Diamond and the Debtor could obtain a favorable settlement of the Crocs Litigation Claims is fundamentally misplaced.

## III.    CONCLUSION

Now that the LOI transaction has failed and parties have relied on the Bid Procedures that the Debtor proposed as an alternative, the Bid Procedures are the appropriate mechanism for the Debtor to use to sell their assets, including the Litigation Claims.  The notion that these claims would be worth more later than now is pure speculation.  One could say that in any section 363 sale.  There is always a possibility that if assets were removed from a court-approved sale and instead sold later, they could fetch more money.  Or less.  But court orders need to mean something.  If a

---

(Footnote Cont'd From Previous Page)

entirely and placed no value on them under its filed plan.  *See* Disclosure Statement Ex. 2 (Liquidation Analysis attributing no value to claims against GemCap).

[15] *See Motion of Crocs, Inc. for Relief from the Automatic Stay to Permit Continuation of Pending Litigation in the United States District Court for the District of Colorado* [ECF 99]; Proof of Claim No. 23-1.

court says "these assets will be sold on this date" then that should happen.  That is especially true where parties in interest and third parties relied on the court order by forbearing from other actions they could have taken, conducting due diligence, and making bids.  And surely the same people who asked the court to enter this order – in resolution of disputes with interested parties – should not, wearing a different hat, ask the same court to ignore its order.

For the foregoing reasons, the Double Diamond Motion should be denied.

Respectfully submitted,

DATED June 28, 2018

JOLLEY URGA WOODBURY HOLTHUS & ROSE

By: */s/Brian E. Holthus, Esq.*
Brian E. Holthus, Esq.
330 S. Rampart Blvd., Ste. 380
Las Vegas, Nevada  89145

-and-

ARNOLD & PORTER KAYE SCHOLER LLP
Michael L. Bernstein, Esq.
Charles A. Malloy, Esq.
601 Massachusetts Avenue, NW
Washington, D.C.  20001

Benjamin Mintz, Esq.
250 West 55th Street
New York, New York 10019

*Attorneys for Crocs, Inc.*

Exhibit A

**Malloy, Charles A.**

| | |
|---|---|
| **From:** | Zev Shechtman <ZShechtman@dgdk.com> |
| **Sent:** | Friday, June 22, 2018 8:29 PM |
| **To:** | 'beh@juwlaw.com'; Bernstein, Michael L.; Mintz, Benjamin; 'tpilatowicz@gtg.legal'; 'obrown@nevadafirm.com'; 'todd.lander@ffslaw.com'; 'arash.beral@ffslaw.com' |
| **Cc:** | Uzzi O. Raanan; John N. Tedford, IV |
| **Subject:** | U.S.A. DAWGS, INC., Bankr. Case No. 18-10453-leb (LR 9006/Shortened Time Request) |
| | |
| **Importance:** | High |

Counsel,

Our law firm has been retained by Double Diamond Distribution, Ltd. ("Double Diamond"), to represent its interests in the bankruptcy case of U.S.A. Dawgs, Inc. (the "Debtor")

We are writing to inquire, as follows:

A)  Whether Crocs, Inc. and GemCap Lending I, LLC will agree to stipulate to a continuance of the auction and hearing presently scheduled for June 29 by at least 45 days, to afford the Debtor, Double Diamond and Crocs, Inc. time to conduct global mediation of all of their litigation claims.  In light of the time limitations for presenting Double Diamond's motion (discussed below), we require a response by no later than <u>Monday, June 25, 2018, at noon (Pacific Time)</u>, regarding the request for a stipulation to continue the June 29, 2018 auction and hearing.

B)  Concomitantly, <u>pursuant to Local Rule 9006, Double Diamond hereby requests that the parties herein advise as soon as possible, and no later than June 25, 2018, at noon (Pacific Time), whether they consent to a hearing on shortened time on a motion to continue the auction of the Debtor's assets or, in the alternative, for removing litigation claims from the list of assets being sold in the auction, or for the appointment of a chapter 11 trustee to analyze and determine the values and the best use of the litigation claims</u>.  The reason for the motion is that the sale of the litigation rights at the June 29, 2018 auction is not likely to generate any proceeds for distribution to the Debtor's unsecured creditors.  Double Diamond believes that removing the litigation rights from the auction will allow the Debtor to maximize estate assets for the benefit of unsecured creditors.

Unless all of the relevant parties are willing to stipulate to the continuance set forth in "A" above, Double Diamond intends to proceed with such motion for continuance (etc.).

We look forward to your prompt responses.

Thank you,

**Zev Shechtman**
**Danning, Gill, Diamond & Kollitz, LLP**
1900 Avenue of the Stars, 11th Floor
Los Angeles CA 90067-4402
(310) 277-0077 | (310) 277-5735 fax
ZShechtman@dgdk.com | www.dgdk.com



CONFIDENTIALITY
This e-mail message and any attachments thereto is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail message, you are hereby notified that any dissemination, distribution or copying of this e-mail message, and any attachments thereto is strictly prohibited. If you have received this e-mail message in error, please immediately notify me by telephone and permanently delete the original and any copies of this email and any prints thereof.

NOT INTENDED AS A SUBSTITUTE FOR A WRITING
Notwithstanding the Uniform Electronic Transactions Act or the applicability of any other law of similar substance and effect, absent an express statement to the contrary hereinabove, this e-mail message, its contents, and any attachments hereto are not intended to represent an offer or acceptance to enter into a contract and are not otherwise intended to bind the sender, Danning, Gill, Diamond & Kollitz, LLP, any of its clients, or any other person or entity.