Brigid M. Higgins, Esq. (SBN 5990)
bhiggins@blacklobello.law
**BLACK & LOBELLO**
10777 W. Twain Ave., 3rd Fl.
Las Vegas, NV 89135
Telephone: (702) 869-8801
Facsimile: (702) 869-2669

Saul S. Rostamian (California Bar Number 235292)
srostamian@winston.com
Admitted *Pro Hac Vice*
**WINSTON & STRAWN LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543
Telephone:   (213) 615-1700
Facsimile:    (213) 615-1750

Attorneys for Defendant,
*Optimal Investment Group, Inc.*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>U.S.A. DAWGS, INC.,<br><br>       Debtor, | **Case No. 18-10453-MKN**<br><br>Chapter 11<br><br>**DEFENDANT OPTIMAL INVESTMENT GROUP, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF AN ORDER:**<br><br>**(A) ENFORCING THE SALE ORDER AND GRANTING INJUNCTIVE RELIEF;**<br><br>**(B) DIRECTING GEMCAP LENDING I, LLC TO SHOW CAUSE AS TO WHY IT SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR WILLFUL VIOLATIONS OF THE SALE ORDER; AND**<br><br>**(C) GRANTING RELATED RELIEF INCLUDING AN AWARD OF ATTORNEYS' FEES**<br><br>Date:     February 13, 2019<br>Time:    9:30 A.M.<br>Place:    Foley Federal Building<br>           300 Las Vegas Boulevard South<br>           Courtroom: 2<br>           Las Vegas, NV  89101<br>Judge:   Hon. Mike K. Nakagawa |

## I. INTRODUCTION

GemCap's true fight is to enforce personal guarantees against the Mann parties, against whom it expressly preserved rights in the Sale Order; it is not with Optimal/DH, with respect to whom "GemCap acknowledges that the Sale Order includes releases effective as of the closing date of the asset purchase" (Opp. at 6:15-16) of the very claims GemCap is now asserting against it. Incredibly, at the same time that GemCap acknowledges that the Sale Order releases Optimal/DH of these claims, GemCap inexplicably makes the factually and legally untenable argument that Optimal/DH has somehow assumed the loan agreement between GemCap and the Debtor underlying the litigation claims (that was not an Assumed Liability or Assumed Contract) and correspondingly assumed more than $4 million in loan repayment obligations simply by completing the common transaction of selling a litigation claim to a third party. Therefore, in seeking to retroactively nullify a free and clear transfer, GemCap's argument turns the concept of a free and clear sale on its head, contravenes the Sale Order's express protections of Optimal/DH, and is unsupported by law. In short, GemCap is asking this Court to reject well-settled bankruptcy law and procedure in Section 363 sales, and deprive Optimal/DH of the benefits of its bargain guaranteed by express findings and provisions of the Sale Order and agreed to by GemCap.

First, GemCap's Opposition glaringly omits and fails to address the controlling language in the Sale Order flatly barring its claims against Optimal/DH. *See* Declaration of Saul S. Rostamian in Support of Motion to Enforce ("Rostamian Decl."), Exhibit 1, Sale Order ¶ 16. This language confirms that Optimal/DH purchased the Assets free and clear, and could not be sued for any claims related to the Assets. *Id*. The Sale Order also expressly provides that Optimal/DH did not and would not be assuming the underlying loan obligations owing from the Debtor to GemCap (which were not "Assumed Liabilities" or "Assumed Contracts"), and the Court made an express finding that without this specific protection, Optimal/DH would not have consummated the transaction. *Id*.; Sale Order ¶ S. Finally, GemCap expressly preserved its rights to pursue a subsequent purchaser of the Assets, but not to pursue Optimal/DH, which it agreed is a Releasee. Sale Order ¶ 16. The protections of the Sale Order alone are dispositive on this Motion, and any consideration of GemCap's arguments regarding phantom post-closing liabilities of Optimal/DH requires

1  disregarding the Sale Order.

2  <u>Second</u>, even if the Court disregards the releases and express exclusion of liabilities in the Sale Order, GemCap's Opposition fails to cite any legal authority supporting its argument that the subsequent sale of the litigation claims purchased free and clear makes Optimal/DH liable for indebtedness under the loan agreement.  Instead, GemCap strategically conflates two distinct legal concepts: the purchase of a litigation claim (a "chose in action"); and the assumption of a contract.  In doing so, GemCap argues that although Optimal/DH purchased the litigation claim free and clear (Opp. at 6:15-16), Optimal/DH, "by virtue of [sic] [its] post-Sale Order conduct and its affirmative acts to assert claims under the loan" somehow voluntarily assumed the obligations under the loan agreement because it purportedly took on the benefits of the loan agreement.  Opp. at 9: 11-12.  However, the "benefits" of the loan agreement would only be the cash advanced by GemCap to the Debtor, which Optimal/DH indisputably did not receive.  No legal authority whatsoever supports the idea that the sale of a litigation claim, or any claim for that matter, equates to the taking of benefits under an agreement such that the party selling the claim is now bound to the obligations of that agreement.

In truth, GemCap bid on the litigation claims at issue here and lost, and now its addition of Optimal/DH into its pre-existing lawsuit against the personal guarantors of the deficiency left on the debt is simply an impermissible effort to trample Optimal/DH's rights in GemCap's quest for another source of recovery beyond the Mann parties.  Optimal/DH should not be required to continue to expend resources enforcing its rights under the Sale Order and applicable law.[1]

## II.    ARGUMENT

**A.    GemCap's Opposition Strategically Ignores the Sale Order, Which Insulates Optimal/DH from Liability; However, GemCap May Still Enforce the Mann Guarantees.**

The Sale Order is clear that Optimal/DH purchased the assets free and clear of liabilities, and specifically negotiated the right to not be sued for any liabilities that were not expressly assumed.

---

[1] As a preliminary matter, GemCap's purported "Statement of Relevant Facts" should be disregarded in its entirety.  The Sale Order and Asset Purchase Agreement are clear and unambiguous and the record speaks for itself.  GemCap's revisionist history should be disregarded by the Court.

1  However, to obscure the dispositive point, GemCap's Opposition repeatedly cites to an incomplete
2  excerpt of paragraph 16 of the Sale Order.  *See* Opp. 4:20-24, 6:4-9.  Paragraph 16 of the Sale Order
3  (the "Direction to Release Claims") provides, in pertinent part, that on the Closing Date:

> Except to the extent included in Assumed Liabilities or the Retained Rights, or to enforce the [Asset Purchase Agreement], all entities ***hereby are forever barred, estopped and permanently enjoined from asserting any Claims related to the Assets or the transfer of the Assets***, in each case against the Prevailing Bidder or the Assets (the "Releasees")….
>
> []
>
> The Parties understand and agree that this Sale Order, including these releases, does not – and is not intended to – (a) vitiate or impair GemCap's rights or claims ***against the Debtor*** with respect to (i) GemCap's Allowed Secured Claim of $4.3 million (to the extent that such claim remains unsatisfied in full) and (ii) its rights and remedies under its Loan and Security Agreement dated October 24, 2012 with the Debtor, or (b) extend to claims against parties, entities, property or assets ***other than the Releasee***…."
>
> []
>
> Nor are these releases intended to, and they do not, shelter any of the ***non-Releasees*** from liability to GemCap as a result of an acquisition of assets of property ***after the entry of this Sale Order***.

16  Sale Order ¶ 16 (emphasis added).  Simply put, GemCap cannot sue Optimal/DH for any claims
17  related to the Assets, unless Optimal/DH agreed the liability was one of the Assumed Liabilities.  It
18  is undisputed Optimal/DH did not assume the liability of the GemCap loan agreement.

19  Furthermore, the last paragraph of the quoted passage is critical.  GemCap acknowledges that
20  ***prior*** to entry of the Sale Order it was aware that Optimal/DH may sell the purchased assets to third
21  parties.  Opp. at 4:5-6, 17; 6:3-4.  Indeed, GemCap was so keenly aware of the potential sale of the
22  litigation claims, that it included a specific caveat in the Sale Order to allow it to proceed against
23  parties other than Optimal/DH, so called Non-Releasees, in the event the assets were sold.  Sale
24  Order ¶ 16.  However, Optimal/DH was expressly insulated from this liability.  That language is
25  unequivocal and clearly contemplates the sale of the assets (including the litigation claims) by
26  Optimal/DH after the entry of the Sale Order, in that it ***specifically preserves*** GemCap's rights to
27  make post-closing claims against ***non-Releasees*** "as a result of an acquisition of assets or property."
28  *Id.*  In fact, it was GemCap's concern over the potential sale of the litigation claims by Optimal/DH

3

to third parties, which GemCap attempted but was unable to purchase, that drove GemCap (whose counsel drafted the Sale Order) to include this specific carve out to the Release, which states that the Releases are not "intended to, and they do not, shelter any of the **non-Releasees** from liability to GemCap *as a result of an acquisition of assets of property after the entry of this Sale Order*." Sale Order ¶ 16 (emphasis added). This language preserved its claims against non-Releasees, just like Crocs preserved its Retained Rights to pursue patent infringement claims if infringing shoes were subsequently sold. However, GemCap did not preserve claims against Optimal DH; Optimal/DH is the Prevailing Bidder and a Releasee, and therefore is immune from such liability.

In this regard, GemCap acknowledges that it "heavily negotiated" (Opp. at 5:19) the Sale Order to protect its ability to pursue its claims against the *Debtor* under the loan agreement. Opp. at 5:23-26. As GemCap admits, the Sale Order—which was, by its own admission, drafted and submitted by GemCap's counsel—was "specifically drafted to make clear that the sale did not impair or impact GemCap's rights and remedies under the loan agreement with" the *Debtor*. Opp. at 6:3-4. There are also myriad other references in the Sale Order to GemCap's liens attaching to the proceeds of the sale. Sale Order ¶ U (GemCap "is adequately protected by having its claim attach to cash proceeds received from the Sale by Debtor's estate that are ultimately attributable to the property against which GemCap holds a lien."); *id*. at ¶ 6; *id*. at ¶ 16. GemCap can pursue any other remedies preserved under the Sale Order against the Debtor, and it can continue to pursue the Mann guarantors under the personal guarantees, but it cannot pursue Optimal/DH.

Indeed, this Court made an express finding that Optimal/DH "would not have entered into the [Asset Purchase Agreement] and would not consummate the Sale if the Sale to the Prevailing Bidder and the assignment of the Assumed Contracts to the Prevailing Bidder were not free and clear of all Claims other than the Retained Rights or if the Prevailing Bidder would, or *in the future* could, be liable for any of the Claims other than the Retained Rights." Sale Order ¶ S (emphasis added). GemCap's counsel was well aware of the impact of the Release, *and counsel even confirmed on the record that under the releases, GemCap could not sue Optimal/DH over its ownership of the assets*. See Rostamian Decl., **Exhibit 2**, Transcript, p. 44:18-22 (emphasis added). Despite this clear language, GemCap argues that its counsel's statements on the record are consistent

4

with the current lawsuit against Optimal/DH because it meant that it would not sue over Optimal/DH's **ownership** (Opp. at 11, fn4) but that Optimal/DH could not *do* anything with the assets, including selling the assets (which GemCap clearly knew and contemplated) without exposing itself to litigation from GemCap.

This characterization is not credible, it contravenes the language in the Sale Order and the express findings of the Court regarding Optimal/DH not consummating the transaction without protections against future lawsuits, and lacks good faith.[2]

### B. GemCap's Opposition Lacks a Single Legal Authority Equating the Sale of a Litigation Claim to the Assumption of the Loan Agreement Expressly Disclaimed by Optimal/DH.

Even if the Court disregards the Sale Order, as it must do in order to even reach GemCap's theory of liability, that theory fails. Specifically, GemCap's legal theory is based on the faulty legal premise that selling litigation claims that were purchased free and clear is an assumption of the underlying contract because it is "performance" under such agreement. This is incorrect, and GemCap cites to no authority to support its proposition.

The assets at issue are litigation claims that the Debtor held against GemCap. Litigation claims—that is, the right to sue, or "chose in action"—are commonly sold as an asset in bankruptcy proceedings. *See e.g., In re Alaska Fishing Adventure, LLC*, 594 B.R. 883, 885 (Bankr. D. Alaska 2018); *In re Capriati Constr. Corp., Inc.*, 2018 WL 1404439, at *2 (B.A.P. 9th Cir. Mar. 20, 2018). However, GemCap argues that by selling the litigation claims to Mojave, Optimal/DH voluntarily accepted the benefit of the loan agreement between GemCap and Debtor. Opp. at 8:8-9, 15-17. To support this argument, GemCap cites to California Civil Code Sections 1589 and 3521. Opp. at 8:9-13. California Civil Code Sections 1589 provides that "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it…." Cal. Civ. Code § 1589.[3] More fully, this general proposition states that where the person accepting the benefit was

---

[2] Optimal/DH's statements prior to the Sale Order that Optimal/DH would be willing to close without purchase of the litigation claims if they were not saleable are completely irrelevant for the simple fact that the claims were saleable and Optimal/DH did in fact purchase the litigation claims.

[3] "As a corollary to section 1589, Civil Code section 3521 states that '[h]e who takes the benefit must bear the burden.'"

5

not a party to the original transaction, as is the case here, Section 1589 "requires the assignee of an executory contract to accept the burdens when **all the benefits of a full performance have inured to him**." *Fruitvale Canning Co. v. Cotton*, 115 Cal. App. 2d 622, 626 (1953), *disapproved of on other grounds by Lucas v. Hamm*, 56 Cal. 2d 583 (1961) (emphasis added).

Here, GemCap alleges that by selling a litigation claim, Optimal/DH obtained all the benefits of a full performance under the loan agreement. However, case law, and common sense, is clear that the benefit of a loan agreement is only the money lent, and the burden of a loan agreement is the repayment of the debt. *See Wachovia Bank, N.A. v. Chaparral Contracting, Inc.*, 2010 WL 2803016, at *3 (D. Nev. July 12, 2010) ("Wachovia [as the lender] fully performed its obligations under the Loan Agreements, namely, by funding the loan in the agreed-upon amount…."); *Nat'l Westminster Bank, U.S.A. v. Ross*, 130 B.R. 656, 675 (S.D.N.Y. 1991), *aff'd sub nom., Yaeger v. Nat'l Westminster*, 962 F.2d 1 (2d Cir. 1992) (finding that "having continued to accept the benefits of the agreement in the form of continuing advances from the Bank, RPC is now precluded from asserting any such breaches"). There is no question that Optimal/DH did not receive the money loaned by GemCap, that it did not make demands on GemCap to fund, and that it did not make any payments to GemCap. GemCap is very clear that the only "action" taken by Optimal/DH at issue here was the sale of the litigation claims to Mojave, and this is fatal to its argument in that no authority supports this leap of logic. Opp. at 9:11-12.[4]

The *Fruitvale* case, strategically not cited by GemCap (despite being cited in cases relied upon by GemCap), is instructive here. There, the plaintiff advanced $25,000 to the debtor to finance the debtor's box factory operations. *Fruitvale Canning Co.*, 115 Cal. App. 2d at 623-24. The debtor subsequently conveyed the box factory to the defendants. *Id*. The court rejected plaintiff's argument that the defendants assumed the repayment of the indebtedness of $25,000, because the "principal benefit to be derived by [the debtor] under his agreement with plaintiff was an advance of $25,000. This was retained by him and did not inure to the benefit of the defendants." *Id*. at 624-26. Similarly, here, the funds from GemCap's loan were retained by the Debtor, and therefore, it is

---

[4] GemCap seems to confuse the argument further by implying that the sale of the claim was somehow an assertion of that claim. That is clearly not the case.

dispositive that the benefit of the loan did not inure to Optimal/DH.

By contrast, the cases GemCap relies on are inapposite. <u>First</u>, *In re Old Carco LLC*, 582 B.R. 838, 840 (Bankr. S.D.N.Y. 2018) (permitting product liability claims against New Chrysler for "failure to warn the Decedents about the fuel tank design flaw") and *Roberts v. Gen. Motors LLC,* 2015 WL 7352277, at *5 (E.D. Mo. Nov. 20, 2015) (permitting product liability claims against New GM for failure to warn after the sale of a vehicle manufactured by Old GM) both involve post-sale tortious conduct by the buyer that gave rise to product liability claims for such conduct. Far from a product liability claim, GemCap does not—nor could it—allege tortious conduct post-sale by Optimal/DH that gives rise to the alleged liability under the loan agreement. Optimal/DH merely sold claims it had purchased free and clear to a third party, as was its right.

<u>Second</u>, *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) also involved a product liability claim that occurred post-closing. GemCap strategically omits the fact the court there expressly distinguished a product liability claim from "attempting to enforce a lien," and noted that the injured party did not have a chance to seek relief from the bankruptcy court "since the accident occurred after the bankruptcy proceeding had wound up." *Id.* at 163. Here, on the other hand, GemCap has not asserted a product liability claim but rather is, just like in *Zerand,* attempting to enforce its lien. And importantly, unlike the injured party in *Zerand*, GemCap's claim arose ***before*** the bankruptcy proceeding had wound up. Therefore, GemCap could have, but did not, obtain its desired preservation of claims against Optimal/DH in the Sale Order. GemCap did preserve its secured claims against non-Releasees, but not against Optimal/DH.[5]

<u>Third</u>, the court's holding in *Ninth Ave. Remedial Grp. v. Allis-Chalmers Corp.*, 195 B.R. 716, 732 (N.D. Ind. 1996) is totally off point. *Ninth Ave.* involved claims for contribution for environmental clean-up costs. *Id*. at 720. The plaintiff alleged that "[New] Clark [was] the successor of a company that arranged for the disposal of waste" and therefore liable. *Id*. at 734. The

---

[5] Significantly, by way of contrast, Crocs, Inc. ("Crocs") negotiated for certain express "Retained Rights" of the type that GemCap suggests it has. Sale Order ¶ R (defining "Retained Rights" as claims Crocs "may hold for patent infringement occurring post-Closing Date by any person including the Prevailing Bidder, or any defenses Crocs may have in respect of any litigation claims that are sold pursuant to the Sale…."). However, GemCap did not negotiate for such rights and such rights are not included in the Sale Order. The Court should not rewrite the Sale Order to include such rights.

court noted that "a sale free and clear does not include *future* claims that did not arise until after the bankruptcy proceedings concluded." *Id*. at 732 (emphasis added). The court found that a material fact existed as to whether New Clark was the successor company, and therefore, the court denied New Clark's motion for summary judgment. *Id*. at 735. Here, by contrast, GemCap does not allege successor liability, and more importantly, the amounts owing under the loan agreement were owing at the time of the Sale Order and GemCap had asserted a secured claim against the Debtor for such claims.

<u>Fourth</u>, GemCap misguidedly relies on *Fanning v. Yoland Prods., Inc.*, 150 Cal. App. 2d 444, 451 (1957), another inapposite case. There, a production company assigned a personal service contract to a movie company. The actor performed under the contract and the court found that since the movie company had "accepted such benefits from the employment contract, it must also bear the burdens of that contract." *Id*. at 452. The benefit of a personal service agreement is performance of that service, which the movie company in *Fanning* received. Conversely here, the benefit of the loan agreement was the money lent to the Debtor, which Optimal/DH did not receive. *See Wachovia Bank,* 2010 WL 2803016, at *3; *Nat'l Westminster Bank*, 130 B.R. at 675. No machinations of the law will change the fact that Optimal/DH has not received the benefit of GemCap's performance under the contract—cash money—and therefore, has not assumed any underlying obligation to repay.

Apart from its reliance on wholly inapplicable case law, equally unavailing is GemCap's specious argument that by selling a litigation claim, Optimal/DH somehow performed under the underlying loan agreement between the Debtor and GemCap. GemCap's reliance on *Bes Enterprises, Inc. v. Natanzon*, 2006 WL 3498419 (D. Md. Dec. 4, 2006) is misplaced. There, the plaintiff alleged that the defendant had implicitly assumed a service contract where:

> [Acquisition] assumed and performed the contract between Plaintiff and [the debtor] ERN and performed all the services to be performed by ERN as if the ERN contract with Plaintiff were a contract between Plaintiff and [Acquisition]. [Acquisition] used the same name, address, phone numbers, forms and stationary [*sic*] as ERN in performing the contract. The owners, managers and employees of ERN were the same or substantially the same as those of [Acquisition]. [Acquisition] performs the same tasks as had ERN and charged Plaintiff fees in

        accordance with the terms of the ERN contract. ERN in turn ceased its operations.

*Id.* at *3. Here, Optimal/DH sold a litigation claim, it did not perform any tasks even arguably similar to the ones ERN performed in the *Bes Enterprises* case.[6]

      Moreover, GemCap's complaint that without holding Optimal/DH liable under the loan agreement, GemCap would be in the "patently prejudicial position of having to defend claims under a contract asserted by a party against which it would have no countervailing rights" (Opp. at 8:25-27) is unavailing. GemCap can assert any defenses it deems fit to the causes of action asserted by the party who bought the claims from Optimal/DH; it may not, however, claim that Optimal/DH now owes it money under the loan agreement for the act of having sold the litigation claim.

      Finally, GemCap argues in passing that perhaps its claims should be resolved by a California court. They should not; they should be decided by the Court that issued the Sale Order being contravened. In fact, GemCap does not, and cannot, contend that this Court lacks jurisdiction. Pursuant to paragraph 35 of the Sale Order, this Court "retain[ed] jurisdiction pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order, the Purchase Agreement…including, but not limited to, retaining jurisdiction to…protect the Prevailing Bidder against Claims…against the Debtor or the Assets of any kind or nature whatsoever attaching to the proceeds of the Sale." Sale Order ¶ 34.

      At bottom, GemCap's claims against Optimal/DH are precluded under 11 U.S.C. Section 363(f) and must be dismissed. GemCap's attempt to pull Optimal/DH into a dispute that GemCap knows full well does not involve Optimal/DH just makes Optimal/DH collateral damage over its disputes with the Debtor. It should be rejected.[7]

---

[6] To the extent GemCap is arguing some variety of successor liability, Optimal/DH hereby incorporates by this reference Section A of the Mann parties' Reply brief (D.E. 722).

[7] GemCap also argues half-heartedly that discovery is needed to resolve this issue. Not so. The relevant facts here are straightforward and undisputed, and not at all how they are characterized in GemCap's revisionist way. Optimal/DH was the Prevailing Bidder in the bankruptcy as to specific litigation claims the Debtor had against GemCap. Optimal/DH purchased the litigation claims free and clear and with a full release of all liability to GemCap, and subsequently sold the litigation claims to Mojave. The only post-sale act GemCap relies on is Optimal/DH's sale of the litigation claims to Mojave. The Court can (and should) conclude as a matter of law that this does not equate to an

**C.     The Court Should Impose Monetary Sanctions in the Form of Attorneys' Fees.**

GemCap is an experienced lender represented by experienced bankruptcy counsel, who "heavily" negotiated the provisions (Opp. at 5:18), including the Release, which provided that Optimal/DH took the assets free and clear of any liability to GemCap and that GemCap's claims against *only the Debtor* are preserved.  Prior to filing the Motion, Optimal/DH counsel met and conferred on several occasions with GemCap's counsel, noted the relevant language and authorities, and asked GemCap to dismiss the matter as against Optimal/DH before fees were expended to defend.  That GemCap made a business decision to try to involve another pocket in its quest for deficiency money from the Mann parties, and has refused to acknowledge the authorities directly contradictory to GemCap's theory, is fatal to GemCap's attempts to evade sanctions.  GemCap makes no attempt to explain how its theory is not dispelled by the Sale Order, and has not cited one case on point relative to assumption of the loan agreement despite Optimal/DH's express non-assumption of same.  There is nothing ambiguous about the Sale Order, and GemCap's claims demonstrate its willful contempt of that Order.

If GemCap believed it had a good faith belief that it could pursue these claims, especially in light of its representations to the Court that it would not sue the Optimal/DH and the unambiguous injunction provided for in the Sale Order, it should have first sought guidance from this Court to ensure it was not violating the injunction. GemCap knew that when it filed the Third Amended Complaint in California state court that it would cause Optimal/DH to expend significant resources in responding to its claims.

In summary, GemCap's commencement of the lawsuit against Optimal/DH is contempt of the Sale Order and tactically abusive, and has forced Optimal/DH to litigate and defend against meritless claims in multiple venues. Indeed, the express release and sale of the assets to Optimal/DH free and clear of liability to GemCap are meaningless if GemCap is permitted to re-litigate the application of the unequivocal and clear language of the Release. GemCap must not be permitted to violate the Sale Order or circumvent the priority scheme of the Bankruptcy Code by seeking

---

assumption of the obligations owing by the Debtor to GemCap under a loan agreement.

recovery from Optimal/DH on the loan agreement, and to that end, Optimal/DH seeks entry of an Order granting the Motion to Enforce.

Attorneys' fees are an appropriate sanction for GemCap's willful violation of this Court's orders. *See In re Vanaman*, 561 B.R. 106, 122 (Bankr. D. Nev. 2016); *accord In re Cont'l Airlines*, Inc., 236 B.R. 318, 330-331 (Bankr. D. Del. 1999) (holding that the party seeking to enforce a claim that was discharged by a confirmed plan was required to pay fees and costs incurred for knowingly and willfully violating the confirmation order). GemCap noticeably failed and has waived it opportunity to rebut Optimal/DH's arguments that as a result of GemCap's violation of the Sale Order it is entitled to recover its incurred attorneys' fees and costs. GemCap should not be heard now in opposition to the requested relief.

### III. CONCLUSION

Accordingly, Optimal/DH respectfully requests that this Court order that:

(1) GemCap is enjoined from pursuing claims against Optimal/DH in BC639646 or in any other matter or manner arising from Optimal/DH's purchase of the Assets, including but not limited to GemCap's Allowed Secured Claim and its rights and remedies under its loan and security agreement dated October 24, 2012 with Debtor;

(2) GemCap must show cause as to why it should not be held in contempt for its willful violation of the Sale Order;

(3) GemCap must pay Optimal/DH's attorneys' fees, costs, and expenses incurred as a result of such conduct in an amount determined by the Court.[8]

Dated: February 8, 2019         WINSTON & STRAWN LLP

By: /s/ *Saul S. Rostamian*
Saul S. Rostamian
Attorneys for Defendant,
Optimal Investment Group, Inc.

---

[8] Optimal/DH can provide further evidence on the amount, if necessary.

11