

_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
October 07, 2022

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | | |
|---|---|---|
| In re: | ) | Case No.: 18-10453-GS |
| | ) | Chapter 11 |
| U.S.A. DAWGS, INC., | ) | |
| | ) | Date:  June 28, 2022 |
| Debtor. | ) | Time:  1:30 p.m. |
| | ) | |

**MEMORANDUM REGARDING DOUBLE DIAMOND DISTRIBUTION, LTD.'S MOTION TO ALTER OR AMEND JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

Double Diamond Distribution, Ltd.'s (Double Diamond) has filed its Motion to Alter or Amend Judgment Under Federal Rule of Civil Procedure 60(b) (ECF No. 822) (Motion). It seeks to vacate the court's Order Approving First and Final Fee Application of Garman Turner Gordon LLP as Attorneys for Debtor, for the Allowance of Compensation for Professional Services Rendered and Reimbursement of Expenses (ECF No. 613) (Fee Order). The Fee Order approved Garman Turner Gordon's (GTG) request for attorney fees incurred as debtor's counsel in the amount of $418,609.00 and allowed costs of $31,819.09, but also held Double Diamond was immediately jointly and severally liable for these fees and costs.  The court entered the Fee Order on August 22, 2018. Double Diamond filed its Motion on March 4, 2022, after entry of an adverse decision entered by the Court of Queen's Bench in Saskatchewan, Canada, recognizing the Fee Order.  For the reasons stated below, the court holds that Double Diamond has not established cause for relief from the Fee Order under Fed. R. Civ. P. 60(b) (Rule 60(b)), made applicable by Fed. R. Bankr. P. 7024.

# Facts

Chapter 11 debtor-in-possession, U.S.A. Dawgs, Inc. (Dawgs or debtor) originally retained Garman Turner Gordon LLP (GTG) to represent it in negotiations with its secured lender, GemCap Lending I, LLC (GemCap). On January 22, 2018, GTG sent an engagement letter to Dawgs, addressed to Mann and David Kaplan, general counsel for Dawgs. The letter required a $10,000.00 retainer, but stated that "[i]n the event that a bankruptcy filing becomes necessary, we may require that an additional retainer be paid." ECF No. 837-1 at p. 2. Steven Mann signed this engagement letter on January 24, 2018, as the chief executive officer for Dawgs.

Days later, Dawgs decided to file for bankruptcy. Dawgs sought to retain GTG as debtor's counsel to represent it in connection with the chapter 11 bankruptcy filing. But GTG was concerned about the means for payment of its fees in bankruptcy as Dawgs had "few, if any, unencumbered assets." Gray Kozlowski Decl., ECF No. 837 at pp. 1-2, ¶ 3. Dawgs, acting through Mann and Kaplan, requested that GTG waive the pre-filing retainer. Instead, they agreed that Double Diamond would make monthly payments of $10,000.00 into GTG's retainer account and would guaranty payment of GTG's fees. Double Diamond was a non-debtor affiliate in which Mann was also the president and CEO, and Kaplan was also legal counsel. GTG agreed and incorporated these terms into a new engagement letter dated January 31, 2018. Mann signed the January 31, 2018 engagement letter on behalf of both Dawgs and Double Diamond that same day. Mann's signature for Double Diamond was to indicate that the obligations stated in the letter were "agreed to and accepted as to guarantee obligations." ECF No. 822-1 at p. 4.

Dawgs voluntarily filed its chapter 11 petition later on January 31, 2018.

The next day, February 1, 2018, GTG filed its application to be employed as counsel for the debtor in possession. In discussing compensation, GTG disclosed that Double Diamond had not only agreed to guaranty the legal fees, but also agreed to pay the law firm $10,000.00 per month into its retainer:

> As set forth in the Engagement Agreement, Double Diamond Distribution Ltd. ("Double Diamond"), an affiliate of Debtor, has guaranteed payment of all GTG's fees and expenses incurred in connection with the Chapter 11 Case, and agreed to pay, commencing February 10, 2018 and on the first day of every month thereafter, $10,000.00 to GTG to be held in retainer and applied to fees and expenses approved by this Court after application pursuant to Sections 330 and 331.

ECF No. 16 at p. 6.

GTG attached a new engagement letter dated January 31, 2018, to its application. Again, GTG directed its letter to both Mann and Kaplan. GTG required a $10,000.00 retainer, but also memorialized the commitments from Double Diamond referenced in the application:

> Double Diamond Distribution Ltd. ("Double Diamond") guarantees payment of all fees and expenses incurred in the Matter, and, through its signature on this Engagement Letter, agrees to such guarantee and further agrees to pay, commencing February 1, 2018 and on the first day of every month thereafter, Ten Thousand Dollars ($10,000) to GTG to be held in retainer and applied to fees and expenses incurred as appropriate. To the extent any payment made by You is not honored, Double Diamond agrees to reimburse GTG within twenty-four hours' notice of such amounts.

ECF No. 16-1 at p. 2.

A substantial amount of time in the bankruptcy was devoted to the sale of Dawgs' assets.

On June 25, 2018, California counsel for Double Diamond filed a motion for permission to appear in the case, and designated local counsel to represent it within the bankruptcy. ECF Nos. 422 and 424. Double Diamond's counsel were actively involved in the sale of Dawgs' assets after their appearance in the bankruptcy.

On June 27, 2018, GTG sought leave to withdraw as counsel from Dawgs on an emergency basis. ECF No. 452. The court granted GTG leave to withdraw but ordered that withdrawal would become effective after entry of the order approving the sale of Dawgs' assets. That sale order was entered on July 20, 2018. ECF No. 553.

On July 21, 2018, GTG filed its fee application to approve fees of $418,609.00 and costs of $31,819.09. ECF No. 558. The application stated that GTG held a retainer balance of $25,178.03. The application prominently stated that Double Diamond had guaranteed the

3

debtor's liability to GTG.  It also noted the withdrawal from representation and the court's approval of the sale motion. As expected, the application is addressed to the reasonableness of the fees and expenses sought.  The application does not address the payment of its fees and costs. It did attach a proposed order, however, that recognized Double Diamond as jointly and severally liable for the approved fees and costs, and permitted GTG to attempt to recover its fees immediately.

On July 24, 2018, Dawgs, through its new counsel, sought to distribute the sale proceeds and dismiss or convert the case. ECF No. 561.  As described by GTG in its opposition to the present Motion, Dawgs "was careful to request that dismissal occur after the Court adjudicated the necessary fee applications, thereby allowing the professionals to apply any retainers to their allowed fees and for the Court to resolve any requests for surcharge." ECF No. 836 at p. 12 (citing ECF No. 561).  This included GTG.  As Mann stated in his declaration submitted in support of the motion to distribute the proceeds and dismiss the case: "It is the Debtor's intent not to submit the Order on the instant Motion unless and until all orders are entered on all of the professionals' fee applications, and so as to ensure that that the form of Order granting this Motion will clearly itemize any and all distributions from the escrow account." ECF No. 571 at p. 5, ¶ 21.  Mann also stated that the sale previously approved by the court liquidated its assets, and that "Debtor has little, if anything, in property of the estate that is of value, and thus that after making an appropriate distribution of any net remainder in escrow, net of escrow fees, to GemCap and/or any other claimants to the extent that they may surcharge or have other enforceable rights in those proceeds, that the case should be dismissed, or in the alternative, converted to chapter 7." *Id*. at ¶ 22.

Neither Dawgs, nor Double Diamond, objected to GTG's Fee Application. The debtor's lender, GemCap, did object.  GemCap argued that that Double Diamond should pay GTG's fees because the bankruptcy estate was administratively insolvent. ECF No. 589. GemCap directed the court's attention to Double Diamond's obligations to GTG under the January 31, 2018 engagement letter.  It objected to any payment of fees or costs to GTG from its collateral as an

4

improper surcharge. GemCap ultimately withdrew its objection to the fee application after GTG stipulated that it did not seek to surcharge the secured creditor's collateral. ECF No. 592.

The court heard Dawgs' motion to distribute and dismiss, as well as GTG's fee application, on August 21, 2018. The court entered the order approving the fee application on August 22, 2018. The Fee Order is in the form of the proposed order GTG attached to its fee application. Pertinent to the Motion, the Fee Order stated:

> E. A reasonable opportunity to object and to be heard with respect to the Application and the relief requested therein has been given to Debtor, Double Diamond, the Office of the United States Trustee, and all other interested persons and entities.
>
> F. Through its execution of the Engagement Letter, Double Diamond unconditionally guaranteed the payment of all fees and expenses incurred by GTG in its representation of Debtor in the Chapter 11 Case.
>
> G. Pursuant to the terms of the Engagement Letter, Debtor and Double Diamond are jointly and severally liable for payment of the Allowed Fees and Costs to GTG.

ECF No. 613 at p. 3.

Based on these findings, the court approved the fee application in the amounts of $418,609.00 in attorney fees and $31,819.09 in expenses, for a total of $450,428.09 in allowed fees and costs. *Id.* at p. 4. The court then ordered that: (1) the allowed fees and costs were immediately due and payable to GTG; and (2) "Debtor and Double Diamond are jointly and severally liable for the payment of the Allowed Fees and Costs to GTG." *Id.*

On August 30, 2018, the court entered its order granting the motion to distribute the sale proceeds and dismissing the chapter 11 case. ECF No. 624. Due to ongoing adversary actions and appeals, the main case was not actually closed until April 24, 2020. ECF No. 816.

Double Diamond did not appeal the Fee Order. Neither the debtor, nor Double Diamond, has made any payment on the fees and costs approved by the Fee Order.

GTG has spent the past several years attempting to collect fees and costs from Double Diamond under the Fee Order. Those efforts have focused on efforts to have the Fee Order recognized in Canada where GTG believed Double Diamond had assets. The record demonstrates numerous Canadian proceedings between the parties. Those actions have now been resolved against Double Diamond.

On March 3, 2022, Double Diamond filed its Motion seeking to set aside the Fee Order as it pertains to it. After oral argument, the matter was taken under submission.

**Analysis**

Double Diamond contends that it is entitled to relief from the Fee Order because "(1) the order is void because the court lacked subject matter jurisdiction; (2) even if the court had subject matter jurisdiction, its implicit interpretation of Nevada law was erroneous; (3) a serious violation of procedural rules that limit relief granted to an applicant to only those items that were actually pled in the application; and/or (4) mistake, inadvertence or any of the other grounds set forth in Rule 60(b)." ECF No. 822 at p. 2. Despite this statement, Double Diamond only develops three specific arguments: (1) the Fee Order was void for lack of subject matter jurisdiction; (2) the court erred in treating Double Diamond as a surety when it is only a guarantor of Dawgs' obligation to GTG; and (3) the Fee Order erroneously granted GTG relief beyond the scope of the fee application. As noted by Double Diamond, the question of subject matter jurisdiction is not subject to a time limitation. *Owens-Corning Fiberglass Corp. v. Ctr. Wholesale, Inc (In re Ctr. Wholesale, Inc).*, 759 F.2d 1440, 1447–48 (9th Cir. 1985) ("The rule requires that a 60(b)(4) motion 'be made within a reasonable time,' but if a judgment is void, a motion to set it aside may be brought at any time.") The other bases for relief under Rule 60(b), however, must be raised within a reasonable time. *See* Rule 60(c)(1).

**A.    The Fee Order is not void for lack of subject matter jurisdiction.**

The Supreme Court has instructed that "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid*

*Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citing *United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990)).  Double Diamond argues that the Fee Order is void as it applies to it because the bankruptcy court lacked subject matter jurisdiction.  But as the Supreme Court has also explained, "Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *Id.*  In *Espinosa*, 559 U.S. at 271, the Supreme Court quoted *United States* v. *Boch Oldsmobile, Inc.,* 909 F.2d 657, 661–662 (1st Cir. 1990), for the proposition that "'total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction, and ... only rare instances of a clear usurpation of power will render a judgment void." (brackets and internal quotation marks omitted).

It also bears repeating that "a motion under Rule 60(b)(4) is not a substitute for a timely appeal." *Espinosa*, 559 U.S. at 270; *see also In re Ctr. Wholesale, Inc.*, 759 F.2d at 1448 ("A judgment is not void merely because it is erroneous. It is void only if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or if the court acted in a manner inconsistent with due process of law.")

Double Diamond contends that the bankruptcy court was without subject matter jurisdiction to award fees against it because the dispute involved a debt owed by a third party (Double Diamond) to a non-debtor (GTG).  Double Diamond maintains that its liability to GTG is strictly a state court matter beyond the limits of bankruptcy jurisdiction.  It does not, however, provide any meaningful analysis of the matter. Not does it offer any explanation as to why it has waited more than three years to challenge the Fee Order.

Bankruptcy jurisdiction is statutorily established at 28 U.S.C. § 1334(b) and confers "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11."  The Bankruptcy Code requires professionals of the estate to be employed by the court and to obtain court approval of their fees and costs.  11 U.S.C. §§ 327, 330.  Moreover, 28 U.S.C. § 157(b)(1) designates matters concerning the administration of the

estate as core proceedings in which the bankruptcy court has the authority to enter final orders and judgments. "A matter may be a core proceeding even if state law may affect its outcome." *Morschauser v. Continental Cap. LLC (In re Devore Stop)*, 2022 WL 3372313, at *4 (B.A.P. 9th Cir. Aug. 16, 2022) (citing 28 U.S.C. § 157(b)(3)).

Claims that arise under the Bankruptcy Code are limited to those matters "created or determined by a statutory provision of title 11." *Devore Stop,* 2022 WL 3372313 at *5 (citing *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1136 (9th Cir. 2010)). GTG's claims against Double Diamond arose out of the fee agreement and guaranty, not the Bankruptcy Code. GTG's claims against Double Diamond did not arise under title 11.

"A proceeding 'arises in' a case under the Bankruptcy Code 'if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code.'" *Id.* (citing *Ray*, 624 F.3d at 1136). The underlying fee application arises in the bankruptcy under the Bankruptcy Code. The Bankruptcy Code governed GTG's employment and compensation as a professional of the bankruptcy estate. 11 U.S.C. §§ 327, 330. Double Diamond does not quarrel with the court's jurisdiction over the fee application as applied to Dawgs. Rather, it argues that the court was without jurisdiction to extend liability to it. In short, it argues that GTG could only seek relief for the allowance of its fees and costs, and to impose liability for those allowed fees and costs against Dawgs as the debtor. Double Diamond argues that any determination of its liability as a guarantor could only be pursued through a separate state court action, and only after Dawgs failed to pay the allowed fees and costs. But this identifies a possible error, not the manifest lack of subject matter jurisdiction necessary to declare the order void under Rule 60(b)(4).

As discussed above, the bankruptcy court clearly had subject matter jurisdiction to adjudicate the allowance of the fees. It also had jurisdiction to award those fees against the debtor under its approved contract with GTG. While the contract between GTG, the debtor, and Double Diamond is governed by state law, it would not have arisen but for the bankruptcy and

8

was subject to the provisions of the Bankruptcy Code. Throughout the bankruptcy, GTG was clear that Double Diamond would be responsible for payment of its allowed fees because Dawgs assets were fully encumbered. The sale of Dawgs' assets, and the distribution to GemCap on it's secured claim, confirmed this. Dawgs was left with no income or assets to pay GTG its fees. This was the reason for the motion to dismiss. Dawgs' inability to pay GTG's allowed fees and expenses was firmly established by the time GTG filed its fee application. Indeed, this is the only explanation to be drawn from the record for GTG's discussion of Double Diamond's liability for those fees within the fee application. The reality of the situation was understood as Double Diamond's liability for those fees caused GemCap to object to GTG's fee application. Throughout this process, Double Diamond was represented by counsel and never objected. Double Diamond's current briefing, filed more than three years after entry of the Fee Order, intimates that it was surprised by the imposition of immediate liability under the Fee Order. Its actions, and inactions, demonstrate that it did not challenge its immediately liability under the circumstances.

Moreover, Double Diamond's liability to GTG was not premised upon the guaranty alone. Rather, it committed to funding GTG's retainer on a monthly basis to pay Dawgs' attorney fees. That retainer was to pay GTG's approved fees and costs, and represented an immediate, existing obligation. GTG held only $21,178.03 in its retainer when it filed it fee application in July 2018. Pursuant to the terms of the engagement letter, Double Diamond should have funded seven monthly payments to GTG for $70,000 into its retainer by the time GTG filed its fee application, and an additional $10,000 by the time the application was heard in August. The record shows that Double Diamond breached that obligation. That direct, ongoing contractual obligation and liability was a material part of GTG's employment for the debtor approved by the court that arose in the bankruptcy apart from the guaranty.

Double Diamond argues that it only guaranteed Dawgs' attorney fees. GTG argues that the January 31, 2018 engagement letter created a suretyship. The court need not decide the exact contours of Double Diamond's obligation. The dispute as to the exact nature of the relationship

provided a colorable basis for jurisdiction. And even if Double Diamond was strictly a guarantor, its obligations still impacted the bankruptcy estate. At the very least, the monthly retainer obligation and liability for the allowed fees and expenses was "related to" the bankruptcy for jurisdictional purposes under § 1334(b). Within the Ninth Circuit, the test for related to jurisdiction is whether an action could conceivably affect the administration of Dawgs' bankruptcy. *Feitz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988). "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 457 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)) (emphasis in original). Double Diamond agreed not only to be liable for the debtor's legal fees but to fund GTG's fees through its monthly retainer payments. This impacted the creditors and the administration of the estate and was related to the bankruptcy for purposes of conferring jurisdiction under § 1334(b).

The bankruptcy court had jurisdiction over Double Diamond's obligations to an agent of the debtor under § 1334(b); either Double Diamond's liability arose in the bankruptcy or was related to the bankruptcy as it affected the estate's liabilities. Even if it did not, an order is void for lack of subject matter only in the exceptional case where there is no arguable basis for the exercise of jurisdiction. *Espinosa*, 559 U.S. at 271. Here, the court had a reasonable basis to believe that subject matter jurisdiction existed over GTG's fees and who was liable for them. Placed within the context the bankruptcy at the time of the fee application, Double Diamond had an existing monthly obligation to fund GTG's fees and did not contest its immediate liability for those fees. It is not manifestly apparent that this court lacked subject matter jurisdiction over all aspects of the fee application. Accordingly, the court must deny the Motion to the extent it contends that the Fee Order is void and relief is required under Rule 60(b)(4).

### B. Double Diamond has failed to raise the rest of its arguments for relief under Rule 60(b) in a reasonable time.

Double Diamond also argues that the bankruptcy court erred by holding it jointly and severally liable immediately with the debtor. It contends that the court confused its status as a guarantor with that of a surety. According to Double Diamond, it could not be held liable for the allowed fees and costs under the guaranty because it has never been given notice of Dawgs' breach of that obligation. Double Diamond also argues that relief from the Fee Order is required because the order imposed relief in excess of what was requested in the Fee Application.

These arguments raise potential errors by the court in entering the Fee Order to which Double Diamond did not object or appeal. They are not jurisdictional in nature. As such, Double Diamond was required to seek relief under Rule 60(b) within a reasonable time. Rule 60(c). The parties discuss in detail whether Double Diamond's requests for relief under Rule 60(b)(1) – (3) must be brought within one year specifically required under Rule 60(c). The court does not need to resolve that question because Double Diamond has not sought relief within a reasonable time even if it was excused from raising the issue within a year.

"What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (citing *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930-31 (5th Cir. 1976)). Double Diamond offers no reason why it did not object to the fee application, or at least to the form of the proposed order. As noted above, the logical inference is that it did not oppose the relief sought given Dawgs' financial reality and its contractual obligations.

Embedded in Double Diamond's Motion is the concept that it was taken by surprise by GTG's order imposing immediate liability on it jointly and severally with Dawgs. The court finds this implausible given what was happening in the case at that time. Moreover, there is no direct testimony from Mann to this effect. Rather, Double Diamond simply argues that it was error to impose liability on Double Diamond at that time. The time to address that error was in

opposition to the fee application, on a motion to alter or amend under Rule 59, or on appeal. But Double Diamond chose to litigate its liability in Canada for over three years before ultimately returning to this court to bring its current Motion under Rule 60(b).

Even if the court were to accept that Mann and Double Diamond were taken by surprise by the reach of the Fee Order, they were squarely placed on notice of the issues when GTG attempted to have the order recognized in Canada for purposes of executing on Double Diamond's assets. These efforts began in October 2018. The exhibits submitted by GTG in opposition to the Motion show that Double Diamond retained counsel in Canada in October 2018, to oppose GTG's efforts to have the Fee Order recognized. See ECF No. 837-1, Exhibit 8 at pp. 43-44. Double Diamond cannot argue surprise from the Fee Order thereafter. Rather than return to this court, it chose to litigate in Canada for several more years. Only after exhausting its ability to challenge recognition of the Fee Order in Canada did it return to this court to raise its claims of error. This is simply too late to raise issues that should have been raised in 2018. All such arguments, and the full implication of the Fee Order, were fully before Double Diamond when GTG began its proceedings in Canada.

It bears mention that Double Diamond's current efforts are ill-suited for relief under Rule 60(b) on the merits. Double Diamond never squarely addresses the specific basis for relief under Rule 60(b), except voidness of the Fee Order under Rule 60(b)(4). Rather, it simply argues that the imposition of immediate, joint and several liability was error. As explained above, given what was happening in the bankruptcy around the sale, GTG's withdrawal, the motion to disburse and dismiss, and GTG's fee application, Double Diamond's claims of legal error ring hollow. Dawgs had sold its assets, which were encumbered by GemCap, leaving nothing for administrative claimants such as GTG. This was expected, as reflected by GTG's insistence that Double Diamond guaranty payment of the fees and fund a retainer. The bankruptcy was to be dismissed. Dawgs could not make any payment to GTG on the allowed fees. GTG incorporated this into its fee application by prominently discussing Double Diamond's guaranty. And GTG attached its proposed order detailing the guaranty and imposing immediate liability on Double

Diamond.  There being no objection to the fee application, including the proposed order, the court was entitled to infer that Double Diamond consented to the relief.  The absence of any motion to amend the Fee Order under Rule 59(e) within the time allowed after the order was entered further reinforces that inference.

Double Diamond has never denied its liability under the engagement letter or its obligation to fund the GTG retainer.  More than three years after it chose not to object to entry of the Fee Order, it now argues that the Fee Order is void because it never received notice of Dawgs' default necessary to trigger its guaranty. ECF No. 822-4 at 7, ¶¶ 26-27.  Mann served as president and CEO of both Dawgs and Double Diamond.  He was fully aware that Dawgs had liquidated its assets, had no income, and had no ability to pay GTG's approved fees and expenses.  GTG's fee application and proposed order gave Mann and Double Diamond notice that it was seeking to hold Double Diamond immediately liable for its allowed fees.  Double Diamond was represented by both local and general counsel.  GTG presented the proposed order after a hearing, and this court entered that order which includes findings as to Double Diamond's liability and holds it immediately liable for the allowed fees and expenses.  Double Diamond has failed to present any evidence that it disagreed with the relief sought by GTG, including imposition of liability on Double Diamond, when the fee application was filed or entered.  As such, even if the court were to reach the merits Double Diamond has failed to establish a mistake, inadvertence, surprise, or excusable neglect to warrant relief under Rule 60(b)(1).  There is no new evidence under Rule 60(b)(2), much less such evidence that could not have been discovered at the time of the fee application.  Similarly, there is no developed argument or evidence of fraud under Rule 60(b)(3).  Finally, there is no evidence or argument establishing extraordinary circumstances existed that were beyond the Double Diamond's control that prevented it from taking timely action and which must be rectified to prevent or correct an erroneous judgment. *See Saxena v. Abud (In re Abud)*, 2015 WL 5178504, at *4 (B.A.P. 9th Cir. Sept. 3, 2015), *aff'd,* 677 F. App'x 436 (9th Cir. 2017) (citing *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.),* 503 F.3d 933, 941 (9th Cir. 2007)).

## Conclusion

Double Diamond attempts to relitigate the Fee Order. But it's efforts three years later to avoid liability are unavailing and do not constitute cause for relief under Rule 60(b). The court shall enter a separate order denying the Motion for the reasons stated above.

IT IS SO ORDERED.

* * * * *

Copies sent via CM/ECF ELECTRONIC FILING

# # #